# EXHIBIT B

# PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION TO RECONSIDER MARCH 4, 2020 ORDER MODIFYING PRELIMINARY INJUNCTION

```
                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF COLUMBIA

IN RE:                              .    Case No. 19-00828
                                    .    Chapter 13
JASPREET KAUR ATTARIWALA,           .
                                    .    Washington, D.C.
              Debtor.               .    January 16, 2020
. . . . . . . . . . . . . . . . .

              HEARING ON MOTION FOR RELIEF FROM STAY
           BEFORE THE HONORABLE S. MARTIN TEEL, JR.
                  UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:           Law Offices
                          By:  DAVID E. LYNN, ESQ.
                          15245 Shady Grove Road
                          Suite 465 N
                          Rockville, MD 20850

For Creditor              Whiteford Taylor & Preston
Bioconvergence, LLC:      By: NELSON C. C0HEN, ESQ.
                          111 Rockville Pike, Ste. 800
                          Rockville, MD 20850
```

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.
_____

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083 - BRS-CT@SBCGLOBAL.NET

```
 1            THE COURT:  Thank you.
 2            MR. COHEN:  Thank you.
 3            Mr. Lynn?
 4            MR. LYNN:  Your Honor, I think it's important
 5   that the Court hear from the Debtor and so I would
 6   propose to have her testify briefly.
 7            THE COURT:  Well, where's the (phonetic)
 8   witness, Mr. Lynn?
 9     JASPREET KUAR ATTARIWALA, DEBTOR'S WITNESS, SWORN
10            THE CLERK:  (Inaudible.)
11            THE WITNESS:  My name is Jaspreet Kuar
12   Attariwala.
13                    DIRECT EXAMINATION
14   BY MR. LYNN:
15   Q.   And what is your address, please?
16   A.   1390 Kenyon Street, Northwest, Apartment 323,
17   Washington, D.C. 20010.
18   Q.   Did you formerly work for Singota?
19   A.   Yes.
20   Q.   From when and until when?
21   A.   From April of 2015 through December of 2018.
22   Q.   Why did you leave Singota?
23   A.   Because they refused to pay me my earned
24   commissions.
25   Q.   And how much was that?
```

1   A.   Thirty thousand dollars.
2   Q.   When you left Singota, did you take some
3   electronically-stored information with you?
4   A.   Yes.
5   Q.   Why?
6   A.   Because I thought it would help me get my wages
7   back that I earned, by showing the emails.
8   Q.   After you left Singota, where did you go to work?
9   A.   Emergent BioSolutions.
10  Q.   Doesn't Emergent compete with Singota?
11  A.   On some services yes, but there's major
12  differences between the companies.
13  Q.   What are the differences?
14           MR. COHEN:  Your Honor, I'd like to object at
15  this time as to the relevance of this line of
16  testimony.  I mean, these are all issues which were and
17  hopefully will soon again be before the court in
18  Indiana.  It really does not go to lifting the stay
19  or --
20           THE COURT:  I'll let Mr. Lynn try to finish
21  this up.  If it's irrelevant I can disregard it.
22           MR. COHEN:  Thank you.
23           THE COURT:  Go ahead, Mr. Lynn.
24           MR. LYNN:  I won't be long, Your Honor, but I
25  do intend to get to a point where I will address Mr.

1   A.   I don't plan on using it.  I don't have it.
2   Q.   Okay.  Are you in concert with anybody?  Are you
3   part of a conspiracy, or a scheme, or something like
4   that?
5   A.   No.
6   Q.   Okay.  What is it that you want going forward?
7   A.   I just want to earn a living.
8   Q.   If the Court grants relief from stay will you
9   continue litigating in Indiana?
10  A.   I have no money.  I am in so much debt with my
11  Indiana counsel.  No.
12  Q.   Okay.  Rebecca Green (phonetic), who was the
13  Plaintiff's expert, said some pretty damning things
14  about you; are you aware?
15  A.   I'm aware.
16  Q.   Okay.  Have you or your counsel ever had an
17  opportunity to cross-examine her, particularly about
18  some of her assumptions and conclusions?
19  A.   No.
20  Q.   Okay.  Thank you.
21       MR. LYNN:  That's all I have, Your Honor.
22       MR. COHEN:  I have no questions, Your Honor.
23       THE COURT:  Why can't you establish a LinkedIn
24  account now?
25       THE WITNESS:  Well, I'd be creating a brand