UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|                                                    |     |                          |
| -------------------------------------------------- | --- | ------------------------ |
| BIOCONVERGENCE LLC                                 | )   |                          |
|    d/b/a SINGOTA SOLUTIONS,          | )   |                          |
|                                                    | )   |                          |
|       Plaintiff,      | )   |                          |
|                                                    | )   |                          |
|       v.              | )   | No. 1:19-cv-01745-SEB-TAB |
|                                                    | )   |                          |
| JASPREET ATTARIWALA,                               | )   |                          |
| SIMRANJIT JOHNNY SINGH                             | )   |                          |
|    a/k/a SIMRANJIT J. ATTARIWALA     | )   |                          |
|    a/k/a SIM J. SINGH,               | )   |                          |
|                                                    | )   |                          |
|       Defendants.     | )   |                          |
|                                                    | )   |                          |
| JASPREET ATTARIWALA,                               | )   |                          |
|                                                    | )   |                          |
|       Counter Claimant, | )   |                          |
|                                                    | )   |                          |
|       v.              | )   |                          |
|                                                    | )   |                          |
| BIOCONVERGENCE LLC,                                | )   |                          |
|                                                    | )   |                          |
|       Counter Defendant. | )   |                          |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff BioConvergence, LLC d/b/a Singota Solutions ("Singota") initiated this

lawsuit in Monroe Superior Court (Indiana) against Defendant Jaspreet Attariwala on

February 27, 2019, alleging various causes of action including breach of contract and

violations of the Indiana Uniform Trade Secrets Act. Following the removal of the matter

to this Court, Singota amended its complaint to include Ms. Attariwala's husband,

Simranjit Johnny Singh a/k/a Simranjit J. Attariwala a/k/a Sim J. Singh ("Mr. Singh") as

1

a defendant. Now before the Court is Mr. Singh's Motion to Dismiss for Lack of Personal Jurisdiction. For the reasons set forth herein, Mr. Singh's Motion to Dismiss is GRANTED.

## Background

The Court is well versed with the prolix facts of this case, although this is our first review of Mr. Singh's role in this litigation, which, up to this point, has primarily focused on his wife's allegedly illicit retention of her former employer's trade secrets. Because each defendant's contacts with the forum must be assessed independently of one another for purposes of establishing personal jurisdiction, we review now only those facts relevant to the Court's authority to exercise personal jurisdiction over Mr. Singh, a resident of Washington, DC.

On February 27, 2019, Singota filed suit in state court against Ms. Attariwala, its former employee, claiming in part that Ms. Attariwala had violated the Indiana Uniform Trade Secrets Act and breached her employment contract. Singota alleged that Ms. Attariwala illicitly acquired Singota's confidential and trade secret information on the eve her resignation following her acceptance of a job with a competitor in December 2018. Singota sought a temporary restraining order and preliminary injunction to prevent Ms. Attariwala from misappropriating its trade secrets or using them for the benefit of her new employer. The state court granted Singota's request for a temporary restraining order on February 28, 2019, and entered a stipulated preliminary injunction on March 4, 2019. Mr. Singh twice accompanied his wife to court hearings in March 2019 to provide moral support but has not visited Indiana outside of his attendance at these hearings.

Per the directive of the state court's preliminary injunction order and its accompanying "inspection order," Ms. Attariwala, and all those in active concert or participation with her, were ordered to produce to Singota's forensic expert, Rebecca Green, all electronic accounts and storage devices in their possession, custody, or control, which contained Singota's confidential information. A MacBook computer was produced in response to these orders. At the time of production, Ms. Attariwala represented that this computer belonged to Mr. Singh, although it actually appears to have been jointly shared between Ms. Attariwala and Mr. Singh. [Dkt. 30, ¶ 68; Dkt. 65, at 4; Dkt. 77, at 5]. In analyzing the Macbook, Ms. Green received over 10,000 "hits" for potential Singota data. [*Id.*].

On April 30, 2019, Ms. Attariwala removed the case to federal court. Following removal, Singota reportedly continued to discover evidence of Ms. Attariwala's misappropriations, prompting Singota to move for a "further preliminary injunction" on October 10, 2019. With that motion, Singota sought an order supplementing the existing preliminary injunction entered by the state court. Singota specifically requested an order enjoining Ms. Attariwala from working for her current employer, who was Singota's direct competitor, as well as any other competitor, alleging that Ms. Attariwala had violated state court orders and was continuing to misappropriate Singota's trade secrets.

We granted Singota's motion and entered a preliminary injunction that, in summary: adopted the terms of the state court's preliminary injunction; enjoined Ms. Attariwala, and all those in active concert or participation with her, from possessing, transmitting, using, copying or disclosing to others Singota's confidential information or

trade secrets; and ordered Ms. Attariwala, and all those in active concert and participation with her, to produce to Singota's forensic expert all e-mail accounts, online storage accounts, and storage devices identified as outstanding. Ms. Attariwala was further enjoined from working for any competitor of Singota until she provided evidence in a proper verifiable form that she no longer possessed nor retained access to any of Singota's confidential information or trade secrets, although she has since been relieved of this restriction. [Dkt. 121, 122].

In the interim, on June 18, 2019, Singota amended its complaint to add Mr. Singh as a defendant. [Dkt. 30]. Singota's Amended Complaint avers as to Mr. Singh that "(t)his Court has personal jurisdiction over Singh because Singh's intentional tortious conduct to receive and wrongfully possess the Company data and property, and his conspiracy to aid Attariwala, harms the Company in Indiana and the Southern District of Indiana." [Dkt. 30, ¶ 7]. Singota's Amended Complaint also alleges that Mr. Singh has refused to return documents, data, and property belonging to Singota that were wrongfully shared with him by his wife. [*Id.* ¶ 9]. Mr. Singh's withholdings have occurred with the knowledge that harm would be felt in Indiana, and,, Singota claims, "his actions were and are intended to cause such harm." [*Id.* ¶ 10, 11]. Although Mr. Singh initially furnished his Macbook for review by Ms. Green,[1] he now refuses to "cooperate in returning additional Singota property and data in his possession, custody, or

---

[1] Although the Amended Complaint indicates that Mr. Singh furnished the laptop, Ms. Green's affidavit indicates that it is was Ms. Attariwala who facilitated this production. [Dkt. 65-3, ¶ 17].

control." By refusing to do so, "Singh is acting in concert and participation with Attariwala to harm [Singota] in Indiana and intends such harm." [*Id.* ¶¶ 13-14].

Singota has identified three primary contacts in support of its averments that gives this Court the authority to exercise personal jurisdiction over Mr. Singh.[2] Two relate to instances in which Ms. Attariwala emailed Singota documents to her husband. First on May 4, 2018, Ms. Attariwala emailed a confidential client agreement from her Singota email address to Mr. Singh's personal email account. Second, on June 19, 2018, Ms. Attariwala sent an email from an account shared with her husband (simandjessie@gmail.com) to her husband's email. This email contained a "a client manufacturing questionnaire containing highly confidential information relating to a Singota client." Singota contends, "There was no legitimate business reason for Attariwala to send [these emails] without authorization from her Singota email account[.]" [*Id.* ¶¶ 46-47].

Finally, Ms. Green's forensic analysis has established that Mr. Singh used the Singota computer provided by Singota to Ms. Attariwala. Logging into the Singota computer would have required a Singota-issued username and password. Presumably, Ms. Attariwala allowed her husband to use the Singota device, although she was not

---

[2] While Singota broadly seeks to attribute to Mr. Singh the existence of Singota data on the Macbook, it provides no support for that attribution. Although Mr. Singh was once represented as the Macbook's owner, this device appears to have been used jointly by the couple; it had user accounts for both husband and wife, and Ms. Attariwala had her work email and calendar stored on the computer. Since this device was obviously used by Ms. Attariwala for business purposes, Singota has presented *no other* argument as to why the Singota data on the Macbook should be attributed to Mr. Singh for the purposes of establishing personal jurisdiction.

authorized to do so. Once logged into the system, users can access Singota's email server, client relationship database server and file server, all of which were physically located in Indiana until November 2019, so long as the computer is connected to the internet. The Singota computer also allows users to access Singota's file servers containing trade-secret and confidential information upon completing an additional login. Of particular concern to Singota has been the fact that Mr. Singh accessed a cloud storage account related to his business from the Singota computer.[3] According to Singota, these circumstances raise concerns that Mr. Singh might have accessed Singota's trade secrets and confidential information, and then transferred that data to his cloud storage account. [*See generally* Dkt. 105].

Based on these contacts, Singota alleges that Mr. Singh has violated the Defend Trade Secrets Act 18 U.S.C. § 1832 *et seq*; violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq*; tortuously interfered with a business relationship; committed conversion and theft; intentionally received and retained stolen property; and conspired with Ms. Attariwala as she engaged in her unlawful actions. On August 8, 2019, Mr. Singh moved to dismiss the claims against him for lack of personal jurisdiction.

---

[3] Singota does not specify the date(s) on which this occurred. Whether this information is unknown to Singota is unclear, but likely, since Singota has previously been able to identify the precise date and time when files, accounts, or devices were accessed. For example, Ms. Green has identified the specific minute that Ms. Attariwala accessed a cloud storage account on this Singota computer. [Dkt. 85-2, at 107].

## Analysis

### I.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. While "[a] complaint need not include facts alleging personal jurisdiction," once "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) (*internal quotation marks and citations omitted*).When a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a *prima facie* case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.*

A determination of personal jurisdiction involves two steps. First, the federal court must determine whether the "long-arm" statute of the state in which it sits allows jurisdiction and, second, decide whether the exercise of jurisdiction comports with due process. *See NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A.*, 28 F.3d 572, 580 (7th Cir. 1994). Indiana's jurisdiction statute is Indiana Trial Rule 4.4(A). Trial Rule 4.4(A) provides as follows: "[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Accordingly, we have personal jurisdiction to the extent allowed by the Due Process Clause of the Fourteenth Amendment, which requires the defendant to have "minimum contacts" with the forum state. *See Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 549 (7th Cir. 2004).

Personal jurisdiction may be either specific or general. A court exercises specific jurisdiction over a defendant where the cause of action arises out of or relates to a defendant's purposefully established contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burger King Corp.*, 471 U.S. at 472, 105 S.Ct. 2174. General jurisdiction, on the other hand, does not require that the cause of action arise out of contacts with the forum state. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. 1868. General jurisdiction exists where the defendant's contacts with the forum "are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 117 (2014) (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919 (2011)).

When assessing personal jurisdiction, we take into account two additional factors: "First . . . each defendant's contacts with the forum State must be assessed individually. Second, the unilateral activity of parties other than the non-resident defendant cannot satisfy the requirement of the defendant's contacts with the forum state." *Purdue*, 338 F.3d at 784. (*quoting Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174)) (*internal quotations omitted*).

## II.  Discussion

Singota says it is asserting only specific jurisdiction over Mr. Singh.

A court may exercise specific jurisdiction over a defendant when "(1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in that state, and (2) the alleged

injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "The [purposeful direction] requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (*quoting Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984)). Additionally, specific jurisdiction is not appropriate "merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd*., 107 F.3d 1272, 1278 (7th Cir. 1997). *See also Advanced Tactical Ordnance Sys., LLC v Real Action Paintball, Inc.* 751 F.3d 96, 801 (7th Cir. 2014) ("[T]he relation between the defendant and the forum must arise out of contacts that the defendant himself creates with the forum.") (*internal quotations omitted*). Finally, the plaintiff must demonstrate that "requiring [the defendant] to defend against this lawsuit in the state 'does not offend traditional notions of fair play and substantial justice.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The purposeful-direction/purposeful availment inquiry "can appear in different guises." *Tamburo*, 601 F.3d at 702. In the context of intentional torts, the core of Singota's allegations against Mr. Singh, "the inquiry focuses on whether the conduct underlying the claim[s] was purposefully directed at the forum state." *Id.* Before evaluating whether the facts before us comport with this standard, we find it prudent to briefly review the Supreme Court's evolving precedents with respect to specific

jurisdiction in cases involving intentional torts, and the Seventh Circuit's interpretation thereof—which, we must add, was significantly overlooked by Singota in its briefing.

The Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) "provides some contours for the purposeful direction' requirement in the context of suits alleging intentional torts." *Tamburo*, 601 F.3d at 702. The *Tamburo* court extracted three requirements from *Calder* in assessing whether conduct was "purposefully directed" at the forum state: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." The *Tamburo* court recognized that "[a]s an analytical matter, *Calder*'s 'express aiming' inquiry overlaps with the question of whether the defendant knew the plaintiff would suffer the injury in the forum state," so we may review the two requirements together. *Tamburo*, 601 F. 3d at 703.

The main disagreement in the context of this motion between Singota and Mr. Singh concerns the second *Calder* requirement—whether Mr. Singh's conduct was "expressly aimed" at Indiana. As the *Tamburo* court explained, there has been a split among the Circuits as to how broadly to interpret this requirement. Seventh Circuit precedent itself has been "in some tension regarding the proper reading of *Calder*." *Id.* at 704. In light of the significant weight the *Calder* court gave to the "effects" of a foreign defendant's conduct within the forum, one line of cases interprets the "express aiming" element broadly, merely requiring that a defendant's conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state. *Id.* (*collecting cases.*) The second

10

line of cases is more demanding, requiring that the forum state be the "focal point of the tort." *Id.* at 705–06. These cases interpreted *Calder* to require a forum-state injury and "something more" to show purposeful direction at the forum state. *Id.*

The Seventh Circuit endorses the narrow reading of *Calder,* clarifying that "a defendant's intentional tort creates the requisite minimum contacts with a state only when the defendant expressly aims its actions at the state with the knowledge that they could cause harm to the plaintiff there." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex*, P.A., 623 F.3d 440, 445 (7th Cir. 2010); *Tamburo*, 601 F.3d at 706. Accordingly, we shall focus "on the relationship between the defendant's actions and the forum itself, not just on the relationship between those actions and the plaintiff's injury." *Tamburo*, 601 F.3d at 704-05. In this context, we shall assess the relationship between Mr. Singh's actions and Indiana, not just the relationship between Mr. Singh's actions and Singota's alleged harm. When evaluating the relationship between Mr. Singh and Indiana, our review includes a determination of whether his allegedly tortious conduct was "specifically directed" at this forum, or aimed at Singota "with the express purpose of causing injury" in this forum. *See id.*, at 704-06.

In providing this clarification, the Seventh Circuit departed from broader interpretations of the *Calder*'s "express aiming" requirement. *See id.*; *Mobile Anesthesiologists Chicago,* 623 F.3d at 445 (rejecting the view that *Calder* allowed "any plaintiff [to] hale any defendant into court in the plaintiff's home state . . . merely by asserting that the defendant has committed an intentional tort against the plaintiff.");

*Indiana Charitable Tr. for Ben. of Daughters of Charity of St. Vincent De Paul--Evansville v. Rees-Jones*, 2012 WL 2149830, at *6 (S.D. Ind. June 11, 2012) ("[I]t is clear that Seventh Circuit precedent requires not just a forum-state injury, but also " 'something more' directed at that state before jurisdiction over a foreign defendant may be considered proper.") *(citing* Tamburo, 601 F.3d at 706).

Since the issuance of the *Tamburo* and *Mobile Anesthesiologists* decisions, the Supreme Court has further limited *Calder's* reach by explaining that "[r]egardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 209 (2014). Accordingly, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* ("These same principles apply when intentional torts are involved.")

Pursuant to *Walden*, the Seventh Circuit has emphasized that "[k]nowing about a potential for harm in a particular state is not the same as acting in that state—and it takes the latter to permit personal jurisdiction[.]" *Ariel Investments, LLC v. Ariel Capital Advisors LLC*, 881 F.3d 520, 522 (7th Cir. 2018). Thus, personal jurisdiction exists only if the defendant has a "substantial connection" with the forum state that was of his own creation. *Id.* (*quoting Walden*, 134 S.Ct. at 1121-22).

Consistent with these holdings, we reject Singota's claim that the Seventh Circuit interprets *Calder* "broadly," an argument it supports with citation to a district court case decided before *Tamburo, Mobile Anesthesiologists*, *Walden*, and *Ariel.* Accordingly, we

shall proceed to evaluate the relationship between Mr. Singh's allegedly tortious conduct and this Indiana forum to determine whether he has specifically directed his allegedly tortious conduct at Indiana, or at Singota, with the express purpose of causing injury in Indiana.

Mr. Singh first argues that the primary contacts serving as the foundation of the allegations against him were those of his wife, Ms. Attariwala. Specifically, it was Ms. Attariwala who emailed Singota information to Mr. Singh, who did not have the "technical wizardry" to prevent the delivery thereof. Mr. Singh contends, "By adopting Singota's view, any plaintiff could create the contacts necessary for personal jurisdiction in any forum simply by emailing some information[.]" Mr. Singh's sole contribution to the dispute is merely his refusal to act. According to him, such a passive, non-affirmative act cannot qualify as "express aiming."

Singota rejoins that Mr. Singh's "continued, willful refusal to return" its confidential information knowing that "his refusal to do so is causing harm to Plaintiff" in Indiana satisfies the purposeful direction prong. Singota believes Mr. Singh's refusal is both "deliberate and tortious," and that they "knowingly and intentionally harm" Singota. Through his refusals, Mr. Singh has "clearly directed" his "intentional conduct" at Indiana.

Without requiring an in-depth analysis, these arguments on their face appear to be unavailing in light of the Supreme Court and Seventh Circuit's directives that a plaintiff's injury coupled with only the defendant's knowledge that his tortious conduct could cause this injury in the forum state is *not* sufficient to establish personal jurisdiction over the

defendant. *Ariel*, 881 F.3d at 522 ("The Supreme Court [in *Walden*] rejected [this] view and held that a defendant's knowledge and intent concerning a resident of State A do not justify compelling that person to defend himself there."). Nonetheless, we shall address Singota's reliance on this Court's decision in *Commissioning Agents, Inc. v. Long* as support for its claim that Mr. Singh's contacts qualify as "purposeful direction."

Our read of *Commissioning Agents* leaves us convinced, as Mr. Singh has argued, that that decision is readily distinguishable from the circumstances pending before us here. There, CAI, an Indiana corporation, alleged that defendant Robert Long, while employed for it, "lied to, defrauded, and stole from [the plaintiff] for the benefit of himself and [plaintiff's] competitors" proprietary information which he used on behalf of a competitor, HughGM, by working simultaneously for HughGM and CAI, and using CAI's proprietary information to steal business for HughGM's business. CAI further alleged that "HughGM was aware of Long's double-dealing and either actively encouraged it or deliberately turned a blind-eye to it." CAI brought suit in Indiana against Long and HughGM, neither of whom was an Indiana resident, alleging various intentional torts, including theft and receipt of stolen property, misappropriation of trade secrets, conversion, actual and constructive fraud, and tortious interference with business relationship. *Commissioning Agents, Inc. v. Long*, 143 F. Supp. 3d 775, 779, 2015 WL 6610200 (S.D. Ind. 2015).

Both defendants in *Commissioning Agents, Inc.* moved to dismiss for lack of personal jurisdiction. Our court held that specific jurisdiction existed over Long because his employment with CAI in Indiana was "precisely what made his alleged scheme of

fraud possible." His ability to log on to CAI's servers in Indiana and download

confidential proprietary information was "facilitated by [his] employment with CAI[.]"

The court further concluded that specific jurisdiction existed over HughGM on the

grounds that Long was serving as its agent when he allegedly committed his wrongdoings

in Indiana. Because "personal jurisdiction over an agent is sufficient to establish personal

jurisdiction over the principal," personal jurisdiction over HughGM was established with

respect to CAI's intentional tort claims. *Id.* at 792-95.

Singota sidesteps any discussion of the issue of how Mr. Singh's contacts—to wit,

his refusals to act—qualify as "expressed aiming." How his refusals to comply with the

court's preliminary injunctive orders could  properly be construed as purposely directed

at Indiana or Singota with the purpose of causing harm in Indiana also goes unexplained

by Singota.  Singota's argument that Mr. Singh intentionally harmed Singota based on his

knowledge that Singota is located in Indiana is "exactly the sort of allegation the Justices

deemed inadequate in Waldon," *Aerial*, 881. F. 3d at 522, because a "plaintiff cannot be

the only link between the defendant and the forum.  Rather, it is the defendant's conduct

that must form the necessary connection with the forum state that is the basis for its

jurisdiction." *Id.*

In lieu of properly addressing these legal principles, Singota has largely focused

on how Mr, Singh's refusals to comply have harmed it, without identifying how such

refusals meaningfully connect Mr. Singh to Indiana.  It summarily argues that Mr.

Singh's conduct is clearly directed at Indiana without citing any legal authorities that

support its theory of personal jurisdiction.  Despite the factor of express aiming serving

as the crucial element for establishing personal jurisdiction in intentional tort cases, Singota never attempts to apply the proper legal standards applicable to this component of our analysis. *Mobile*, 623 F. 3d at 445-46.

We find it significant that this case "began as a case about Attariwala's detailed, systemic raiding of her employer's confidential information" in *December 2018.* The purported transmission of confidential information to Mr. Singh occurred in May and June 2018—*months* before Ms. Attariwala landed her new position with a competitor and "raided" Singota's documents. Given this timeline, we are skeptical that Mr. Singh's refusals to allow unfettered access to his email accounts amounted to his purposeful attempt to cause harm in Indiana. We do not condone Ms. Attariwala's efforts to convey confidential employment documents by email to her husband. But it is a huge leap to go from those acts to Mr. Singh's refusals to comply with the court's preliminary injunction such that his refusals can only properly be viewed as a purposeful attempt by him to cause the alleged harms in Indiana. Singota, whose burden it is to establish personal jurisdiction, advances a theory that falters both on its flawed logic and on its lack of any supporting legal authority.

One additional form of conduct by Mr. Singh warrants discussion, that is, the claim that he accessed a cloud account on Ms. Attariwala's Singota computer, which gave him potentially the capacity to access Singota's servers in Indiana. Singota once again cites to *Commissioning Agents* as support for its assertion that "using a computer to connect over the internet to servers in another state can subject an individual to specific personal jurisdiction in that state." Singota also invokes case law from outside our

Circuit as additional support of this claim. *NetApp, Inc. v. Nimble Storage, Inc*., 41 F. Supp. 3d 816 (N.D. Cal. 2014) (finding that personal jurisdiction existed where an Australian resident accessed his employer's computer systems in California and obtained secure information without permission); *MacDermid, Inc. v. Deiter*, 702 F.3d 725 (2d Cir. 2012) (finding court in Connecticut had specific personal jurisdiction over plaintiff's former employee located in Canada based on employee's accessing of plaintiff's email server located in Connecticut to send plaintiff's confidential information to a personal email account); *Robert Diaz Assocs. Enterprises, Inc. v. Elete, Inc*., No. 03 CIV. 7758 (DFE), 2004 WL 1087468, at *5 (S.D.N.Y. May 14, 2004) ("My own research shows that when an unauthorized person 'hacks' into a computer to access, copy or steal files, then personal jurisdiction may be established where the victim's computer is physically located.").

Each of these cases is distinguishable, however, based on one fundamental difference. In each case, the plaintiffs proffered detailed allegations, often with supporting evidence, that the defendant had illicitly procured or used plaintiffs' confidential information and trade secrets by virtue of accessing the plaintiffs' private databases or services in the forum state. Here, there is *no* allegation or indication that Mr. Singh accessed Singota's servers when he used the Singota computer, nor that he illicitly acquired its trade secrets or confidential information. Instead, Singota merely speculates that, by using the computer, he *could* have accessed their servers in Indiana

and copied or saved their confidential information to his cloud account.[4] At no point in its briefing does Singota ever actually accuse Mr. Singh of the misconduct that allowed personal jurisdiction to be exercised in its referenced cases.

By the time Singota voiced its concerns regarding Mr. Singh's access to and possible use of the Singota computer, *extensive* expert discovery had been completed by Singota. In fact, by the time Singota  briefed this issue, it's expert auditor, Ms. Green, had conducted a sufficiently detailed analysis of the Singota computer to describe numerous instances in which Ms. Attariwala downloaded Singota's data, forwarded Singota data to personal devices, copied the data to other locations, and accessed cloud accounts from the Singota computer. [*See generally* Dkt. 85-2; Dkt. 95-1].  Despite an apparent capacity to muster detailed information with respect to any alleged malfeasances, Singota relies on speculation as to what Mr. Singh could or might have done.  We recognize that Singota has been required to conduct an extraordinary amount of discovery in an effort to ensure the protection of its trade secrets, but we cannot ignore that the nature of the allegations

---

[4] Singota does argue that the Macbook computer accessed Singota's email servers in Indiana. Assuming that the Macbook was Mr. Singh's property, Singota does *not* allege that Singh utilized his computer to connect to Singota's servers. Instead, this contact, once again, appears to be that of Ms. Attariwala, who connected to her email account on the Macbook and thereby accessed Singota's email server. Absent an allegation that Mr. Singh was the individual connecting to Ms. Attariwala's email account, or directing Ms. Attariwala to connect to her email account, we will not attribute this contact to him. We also note that while Mr. Singh was not authorized to use the Singota computer, it was Ms. Attariwala who had the duty to ensure the Singota computer was not used by unauthorized individuals but who nonetheless allowed her husband to use the device.

against Mr. Singh with respect to his use of the Singota computer are at best barebones and certainly highly speculative.[5]

Even if Mr. Singh's computer use bore some relationship to his refusal to furnish access to his email accounts, Singota's arguments in favor of the court's exercise of personal jurisdiction over him lack support from any cited legal authority. It is Singota's burden to establish a *prima facie case* of specific jurisdiction, yet Singota has failed to cite a single case that supports a finding that Mr. Singh's attenuated contacts with Indiana fulfill the "purposeful direction" prong.[6] More specifically, Singota has not explained how Mr. Singh's allegedly tortious conduct was "expressly aimed" at Indiana. Instead, it ties its argument to his knowledge that his intentional withholdings could cause harm to Singota in Indiana. This chain of factors does not calculate into the kind of contacts that substantially or meaningfully connect him to Indiana.

---

[5] Singota represents that it "continues with the assistance of Mrs. Green to search for further evidence that may disclose what Mr. Singota did with the Singota Surface issued to Mrs. Attariwala, including whether any of Singota's trade-secret, confidential, and proprietary information was uploaded into Mr. Attariwala's [] cloud storage account." Since the date this evidence was proferred on November 21, 2019, Singota has not submitted any further evidence with respect to this issue.

[6] We also reject Singota's arguments, made without citation to any authority, that Singh submitted to personal jurisdiction in Indiana by producing his Macbook for forensic analysis. Assuming *arguendo* the Macbook belonged to Mr. Singh and that he facilitated its production, we find this argument unavailing. If true, Mr.Singh's legal options would be to 1) produce his devices that fell within the parameters of the preliminary injunction and subject himself to personal jurisdiction in Indiana or 2) withhold his devices to avoid personal jurisdiction but risk being held in contempt for violating the preliminary injunction. We do not believe the law fairly applied would place Mr. Singh between such a rock and a hard place.

Accordingly, we hold that Singota has not sustained its burden to establish that Mr. Singh purposefully directed his conduct at Indiana. We need go no further and thus will forego discussion of the remaining requirements for specific jurisdiction.

We hasten to add here that nothing in this order limits the court's authority to enforce the terms of our Preliminary Injunction against Mr. Singh to the fullest extent necessary, if he is determined to be an "active concert and participation" with his wife in any current or future attempt to evade compliance with those terms. *Blockowicz v. Williams*, 630 F.3d 563, 566 (7th Cir. 2010) ("Rule 65(d)(2)(C) authorizes courts to enforce injunctions against third parties who have 'actual notice' of the injunction, and 'who are in active concert or participation' with the parties who are bound by the injunction."). *Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc*., 628 F.3d 837, 848 (7th Cir. 2010) ("[M]any cases hold that a nonparty may be held in contempt if he aids or abets an enjoined party in violating an injunction. This principle is codified in subsection (2)(C) of the rule, which provides that nonparties 'who are in active concert or participation with' a bound party are themselves bound and may be liable for aiding and abetting the party's contempt.") *Rockwell Graphic Sys., Inc. v. DEV Indus., Inc*., 91 F.3d 914, 920 (7th Cir. 1996) ("[A] nonparty's actions may render it susceptible to the injunction's effect.")

The gravamen of Singota's contention that this court is empowered to exercise personal jurisdiction over Mr. Singh is that he has acted in "active concert and

participation" with his wife's derelictions (*See* Am. Compl. ¶ 7: "This Court has personal jurisdiction over Singh because Singh's intentional tortious conduct to receive and wrongfully possess the Company's data and property, and his conspiracy to aid Attariwala, harms the Company in Indiana and the Southern District of Indiana."; *id.* ¶14 "By receiving the Company's data and property from Attariwala and by refusing to return it to the Company, Singh is acting in concert and participation with Attariwala to harm the Company in Indiana and intends such harm."; Dkt. 65, at 1: "Singh, in concert with Defendant Jaspreet Attariwala ("Attariwala"), wrongfully continues to possess stolen information belonging to Plaintiff."; *id.* at 4: "Singh's Motion to Dismiss ignores his active role in preventing Plaintiff from recovering the Confidential Information in his possession."; *see generally id.* at pages 13-17; *id.* at 22: "The undisputed evidence establishes that Singh has been on notice since March 4, 2019, that Attariwala and "those acting in concert or participation" with her have a court-ordered duty to turn over all account and account information contain the Company's confidential information[.]").

These allegations, if corroborated, might give rise to a contempt petition against Mr. Singh for contributing to or facilitating Attarwala's violations of the Preliminary Injunction. Conduct performed in "active concert and participation" with the primary target of a preliminary injunction to violate those restrictions is not the same behavior that establishes personal jurisdiction. In any event, Singota has not sought to enforce the Preliminary Injunction against Mr. Singh, and thus we will not speculate as to whether there are grounds to do so.

## **CONCLUSION**

Singota has failed to make a *prima facie* showing that this court has personal jurisdiction over Defendant Sim Singh. Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. 55] is **granted**.

IT IS SO ORDERED.

Date: _____3/23/2020_____              *Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jaspreet Attariwala
Simranjit Johnny Attariwala
1390 Kenyon St., NW Apt. 32
Washington, DC 20010

Justin A Allen
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
justin.allen@ogletree.com

Susan H. Jackson
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
susan.jackson@ogletree.com

Christopher C. Murray
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
christopher.murray@ogletreedeakins.com