# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| BIOCONVERGENCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JASPREET ATTARIWALA | ) | |
| | ) | Civil Action No. 1:19-cv-01745-SEB-TAB |
| Defendant. | ) | |
| | ) | |

## <u>DECLARATION OF CHRISTINA L. JACK</u>

Pursuant to 28 U.S.C. § 1746, I declare as follows:

1.     I am an adult, of sound mind and competent to testify to all matters contained in this Declaration.  All matters contained in this Declaration are of my personal knowledge.

2.     I am a paralegal with the firm of Ogletree Deakins Nash Smoak & Stewart, P.C., 111 Monument Circle, Suite 4600, Indianapolis, Indiana 46204.

3.     I am actively working on and am familiar with the above-captioned matter. I am one of the firm's employees responsible for maintaining the firm's file for this litigation, including correspondence, email, and pleadings.  This case file is created and maintained in the ordinary course of business. The following documents are contained in our case file.

4.     On March 28, 2019, Jody Butts sent an email to Rebecca Green.  A true and accurate copy of this email is attached hereto as **<u>Exhibit 1</u>**.

5.     Page 224 of Document 124-1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00828-ELG is attached hereto as **<u>Exhibit 2.</u>**

6. Page 218 of Document 124-1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00828-ELG is attached hereto as **Exhibit 3.**

7. Page 214 of Document 124-1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00828-ELG is attached hereto as **Exhibit 4.**

8. Page 208 of Document 124-1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00828-ELG is attached hereto as **Exhibit 5.**

9. Pages 185-208 of Document 124-1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00828-ELG is attached hereto as **Exhibit 6.**

10. Page 12 of Document 1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00282-SMT is attached hereto as **Exhibit 7.**

11. Document 69 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00282-SMT is attached hereto as **Exhibit 8.**

12. Document 132 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00282-SMT is attached hereto as **Exhibit 9.**

13. Pages 1, 20-26 of Document 124-1 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00828-ELG is attached hereto as **Exhibit 10.**

14. Pages 6 of Document 39 filed in the United States Bankruptcy Court for the District of Columbia, Case No. 19-00282-SMT is attached hereto as **Exhibit 11.**

15. Excerpt of the Transcript Telephonic Evidentiary Hearing Before Hon. Martin S. Teel, Jr. on Aug. 21, 2020 ("Confirmation Hearing") is attached hereto as **Exhibit 12.**

16. On September 9, 2019, Rebecca Green sent an email to Paul Jefferson. A true and accurate copy of this email is attached hereto as **Exhibit 13**.

17.    After receiving data from Rebecca Green on September 9, 2019, Attariwala's counsel failed to supplement Attariwala's responses to Singota's outstanding discovery requests.

18.    Attariwala's counsel also never asserted under the Inspection Order that any of the data Green provided to them on September 9, 2019, should be withheld from production to Singota's counsel.

19.    On May 25, 2019, Rebecca Green sent an email to Paul Jefferson.  A true and accurate copy of this email is attached hereto as **Exhibit 14.**

20.    On August 5, 2019, Rebecca Green sent an email to Paul Jefferson.  A true and accurate copy of this email is attached hereto as **Exhibit 15.**

21.    On November 25, 2019, Rebecca Green sent an email to Paul Jefferson.  A true and accurate copy of this email is attached hereto as **Exhibit 16**.

22.    On November 29, 2019, Rebecca Green sent an email to Paul Jefferson.  A true and accurate copy of this email is attached hereto as **Exhibit 17**.

23.    Rebecca Green provided the "Jessie Docs" folder to Singota's counsel after receiving no objection from Attariwala's counsel to her email dated November 29, 2019.

24.    On September 2, 2020, Jaspreet Attariwala sent an email to Christopher Murray. A true and accurate copy of this email is attached hereto as **Exhibit 18.**

25.    On February 14, 2020, David Lynn sent an email to Rebecca Green.  A true and accurate copy of this email is attached hereto as **Exhibit 19**.

26.    On February 19, 2020, Rebecca Green sent an email to David Lynn.  A true and accurate copy of this email is attached hereto as **Exhibit 20**.

27.    On March 5, 2020, David Lynn sent an email to Rebecca Green.  A true and accurate copy of this email is attached hereto as **Exhibit 21.**

28.     On May 20, 2020, Rebecca Green sent an email to David Lynn.  A true and accurate copy of this email is attached hereto as **Exhibit 22.**

29.     On May 21, 2020, David Lynn sent an email to Rebecca Green.  A true and accurate copy of this email is attached hereto as **Exhibit 23.**

30.     On September 11, 2020, Christopher Murray sent a letter David Lynn. A true and accurate copy of this letter is attached hereto as **Exhibit 24.**

31.     On September 16, 2020, Rebecca Green sent an email to David Lynn, Christopher Murray and Nelson Cohen.  A true and accurate copy of this email is attached hereto as **Exhibit 25.**

32.     On October 13, 2020, our office sent the Motion for Leave to Serve Subpoena by Alternative Means to the Clerk, United States District Court, District of Columbia.  A true and accurate copy of this motion is attached hereto as **Exhibit 26.**

33.     In June of 2019, Singota sought quotes from three vendors for reviewing the data so far collected from Attariwala, including Charles River Associates, HaystackID, and Epiq.  The estimates (in random order) were $79,660 plus additional hourly work to be determined, $99,125 to initially process data plus an undetermined amount to review it, and $385,517.

34.     On June 2, 2020, Cynthia Bedrick sent a letter to Christopher Murray.  A true and accurate copy of this letter is attached hereto as **Exhibit 27.**

35.     On October 20, 2020, Jaspreet Attariwala sent an email to Christopher Murray. A true and accurate copy of the email is attached hereto as **Exhibit 28**.

36.     On April 16, 2020, April 28, 2020 and May 7, 2020, Counsel for parties exchanged correspondence.  A true and accurate copy of the letters are attached hereto as **Exhibit 29**.

Further, declarant sayeth not.

I declare under penalty of perjury under the laws of the United States of America the foregoing is true and correct.

Date: <u>October 21, 2020</u>

_____

Christina L. Jack

# EXHIBIT 1

**From:** Jody.M.Butts <Jody.M.Butts@msth.com>
**Sent:** Thursday, March 28, 2019 3:25 PM
**To:** 'Rebecca Green'
**Cc:** Jackson, Susan H.; Erik C. Johnson; Murray, Christopher C.
**Subject:** RE: Screenshots and Email Addresses

Rebecca,

The two devices my client needs back as soon as possible are Sim's MacBook Pro (used for work) and Jessie's iPhone (used for her personal baking business), which were ranked 1 and 2 on the priority list previously provided. I have asked them to provide the information/documents that they need left on these devices for the time being, which is as follows:

For the MacBook Pro, Jessie and Sim need the following files:

- From Sim's Profile
    - Desktop folder contents;
    - iPhoto library file and pictures; and
    - Adobe Lightroom library file.

- Jessie Profile
    - Desktop folder contents;
    - Any and all files related to Honey Ji / Honey Jis / Sweet Jis; and
    - There should be a folder called Personal that has tax documents and maybe Honey Ji information - not certain if it is in documents, desktop, or somewhere else on the hard drive.

For Jessie's iPhone, Jessie needs the following:
- Notes;
- Photos; and
- Contacts.

Any information/documentation not referenced above may be removed from the MacBook Pro and iPhone and saved elsewhere for the time being.

In response to your email below, Sim Singh and Sim Attariwala are the same. Regarding the email accounts, we are checking with our client regarding ownership of the accounts and will respond in a separate email regarding the same.

Please let us know as soon as possible when you anticipate being able to return the MacBook Pro and iPhone with the information/documentation requested above. Also, if you have any questions, please let us know.

Thanks,
Jody



Jody M. Butts
Partner

Direct: 317.825.5186
Office: 317.825.5110
Mobile: 317.604.7377
Fax: 317.825.5144

McNeely Stephenson

www.msth.com          Jody.M.Butts@msth.com

2150 Intelliplex Drive, Suite 100
Shelbyville, IN 46176

**From:** Rebecca Green [mailto:rgreen@theESIteam.com]
**Sent:** Tuesday, March 26, 2019 8:55 AM
**To:** Jackson, Susan H. ; Erik C. Johnson ; Murray, Christopher C. ; Jody.M.Butts
**Subject:** Screenshots and Email Addresses

Attached are screenshots of the 3 user accounts, including an expansion of the Desktop, Documents, and Downloads subfolders. If you need screenshots of anything else, just let me know.

As I mentioned, I have over 10,000 hits on either Singota, BioC, or BioConvergence. That result is before the email has finished parsing so the hit count could increase.

There are over 3 million emails on the MacBook. I have several emails from Jessie.saini@singota.com to various email accounts on this MacBook.

Can you help me understand who owns them and the likelihood of finding any Singota hits within them; maybe, we can prioritize the email accounts to clear based on what will likely have zero Singota hits? Here is a list of email accounts that I have found, thus far, on the MacBook.

simjsingh@gmail.com
simjsingh@outlook.com
sim@sikhcoalition.org
sattariwala@gmail.com
simesq@icloud.com
sjs297@georgetown.edu
lawgiq@gmail.com
s0llemnis@hotmail.com
contact@simjsingh.com
info@attariwala.com
info@honeyji.com
simandjessie@gmail.com

Can you verify if Sim Attariwala and Sim J. Singh are the same person?

All the Best,
Rebecca Green
Electronic Discovery & Digital Forensics

2

317-527-0002 (voice)

NOTICE: If received in error, do not read, copy, or distribute and, please, delete immediately. Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

NOTICE: This electronic mail transmission is for the use of the named individual or entity to whom it is directed and may contain information that is privileged or confidential. It is not to be transmitted to or received by anyone other than the named addressee (or a person authorized to deliver it to the named addressee). It is not to be copied or forwarded to any unauthorized persons. If you have received this electronic mail transmission in error, delete it from your system without copying or forwarding it, and notify the sender of the error by replying via email, so that our address record can be corrected.

IRS Circular 230 disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any tax advice contained in this communication (including any attachments) was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

# EXHIBIT 2

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

March 01, 2019 through March 29, 2019
Primary Account: ■■■■■ 5786



| CUSTOMER SERVICE INFORMATION | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00085352 DRE 111 212 09019 NNNNNNNNNNN  1 000000000 69 0000
JASPREET K ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541

## We updated our disclosures

On March 17, 2019, we published an updated version of our Deposit Account Agreement and the document explaining our Additional Banking Services and Fees. You can get the latest agreements at chase.com/disclosures, at a branch or by request when you call us. Here's what you should know:

- We're using a payment network that supports real-time payments. When you send or receive a real-time payment, you confirm that you're not acting on the behalf of someone who is not a U.S. citizen or resident. (General Account Terms, Section I, Rules governing your account)

- We've reduced the Chase wire fee to send an international wire in a foreign currency to $5 per transfer when you use chase.com or the Chase Mobile ® app. As a reminder, there is no Chase wire fee when your transfer is equal to $5,000 U.S. dollars or more. Also, there is never a Chase wire fee to send a wire from a Chase Premier Plus Checking$^{SM}$ with enhanced military benefits, Chase Sapphire $^{SM}$ Checking, or Chase Private Client Checking$^{SM}$ account.

Please call us at the number on this statement if you have any questions.

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | 5786 | $4,283.66 | $4,373.72 |
| Chase Private Client Savings | 9681 | 40,054.45 | 40,055.67 |
| Chase Private Client Savings | 3749 | 25.48 | 25.48 |
| **Total** | | **$44,363.59** | **$44,454.87** |
| **TOTAL ASSETS** | | **$44,363.59** | **$44,454.87** |

# EXHIBIT 3



**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

March 30, 2019 through April 30, 2019
Primary Account: ████ 5786

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00085814 DRE 111 212 12119 NNNNNNNNNNN  1 000000000 69 0000
JASPREET K ATTARIWALA
OR SIMRANJIT J ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541

## We want to remind you about the overdraft service options that are available for your personal checking account(s)

We've included information on the last page of this statement to remind you about our overdraft services and associated fees. You can find more information about these services and ways to avoid overdraft fees at **chase.com/overdraft-services** .

If you have questions, please call us anytime at the number on your statement.

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | ████ 5786 | $4,373.72 | $27,586.22 |
| Chase Private Client Savings | ████ 9681 | 40,055.67 | 18,056.96 |
| Chase Private Client Savings | ████ 3749 | 25.48 | 25.48 |
| **Total** | | **$44,454.87** | **$45,668.66** |
| **TOTAL ASSETS** | | **$44,454.87** | **$45,668.66** |

# EXHIBIT 4

**CHASE PRIVATE CLIENT**

May 01, 2019 through May 31, 2019

Primary Account: ████████**5786**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | | AMOUNT |
|------|-------------|--|--|--------|
| 05/03 | Cangene Biopharm Payroll | PPD ID: ███6514 | | $2,919.28 |
| 05/17 | Cangene Biopharm Payroll | PPD ID: ███6514 | | 2,919.27 |
| 05/17 | Concur      Expense | PPD ID: ███3052 | | 90.48 |
| 05/23 | Online Transfer From Sav ...9681 Transaction#: ███5667 | | | 10,000.00 |
| 05/31 | Cangene Biopharm Payroll | PPD ID: ███6514 | | 2,919.28 |
| 05/31 | Interest Payment | | | 0.15 |
| **Total Deposits and Additions** | | | | **$18,848.46** |

## CHECKS PAID

| CHECK NO. | DESCRIPTION | DATE PAID | AMOUNT |
|-----------|-------------|-----------|--------|
| 1241 ^ | | 05/07 | $7,500.00 |
| 1242 | Check # 1242    Amex Payment    Check Pymt    Arc ID: Citichcktc | 05/20 | 84.80 |
| 1243 ^ | | 05/21 | 2,000.00 |
| **Total Checks Paid** | | | **$9,584.80** |

If you see a description in the Checks Paid section, it means that we received only electronic information about the check, not the original or an image of the check. As a result, we're not able to return the check to you or show you an image.

^ An image of this check may be available for you to view on Chase.com.

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | | AMOUNT |
|------|-------------|--|--|--------|
| 05/01 | Lowes Cc      Lws Epay ███ | Web ID: ███72103 | | $115.00 |
| 05/01 | Potomac Electric Utilitypymt 50011682122 | Web ID: ███7880 | | 46.87 |
| 05/02 | HSA Bank      Plan Contr | PPD ID: ███4250 | | 100.00 |
| 05/06 | Caliber Home Loa Draft Pmt | PPD ID: ███1491 | | 2,266.53 |
| 05/06 | Kenyon Square CO ACH    202-483-8282  Web ID: 1███3620 | | | 621.42 |
| 05/13 | 05/11 Payment To Chase Card Ending IN 8315 | | | 599.69 |
| 05/13 | Quickpay With Zelle Payment To Honey Ji's Corp. ███2655 | | | 500.00 |
| 05/13 | Nordstrom      Payment ███ | Web ID: ███2131 | | 216.10 |
| 05/13 | American Express ACH Pmt    W6958 | Web ID: ███2111 | | 35.00 |
| 05/20 | Verizon Wireless Payments | PPD ID: ███4794 | | 132.38 |
| 05/20 | Allstate Assuran Ck4Inspymt | PPD ID: ███0962 | | 74.10 |
| 05/23 | 05/23 Payment To Chase Card Ending IN 4367 | | | 1,208.41 |
| 05/24 | 05/24 Domestic Wire Transfer Via: First Financial Bk/042200910 A/C: Mcneely Stephenson Ref: Invoice #71400 ███ | | | 25,000.00 |
| 05/30 | Potomac Electric Utilitypymt 50011682122 | Web ID: ███7880 | | 57.17 |
| 05/31 | American Express ACH Pmt    W8092 | Web ID: ███2111 | | 343.69 |
| **Total Electronic Withdrawals** | | | | **$31,316.36** |

## OTHER WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 05/24 | 05/24 Withdrawal | $300.00 |
| **Total Other Withdrawals** | | **$300.00** |

Attariwala - Chase Bank statements 2018 - 2019 -- 031

# EXHIBIT 5

**CHASE PRIVATE CLIENT**

June 29, 2019 through July 31, 2019

Primary Account: ■■■■■■■**5786**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/05 | Manual CR-Bkrg | $20,000.00 |
| 07/05 | Online Transfer From Sav ...9681 Transaction#: ■■■■ 0788 | 5,000.00 |
| 07/08 | Online Transfer From Sav ...9681 Transaction#: ■■■■ 8875 | 1,500.00 |
| 07/12 | Cangene Biopharm Payroll PPD ID: ■■■6514 | 2,919.33 |
| 07/15 | Purchase Return 07/13 Target T- 3100 14th St Washington DC Card 0244 | 211.99 |
| 07/26 | Cangene Biopharm Payroll PPD ID: ■■■6514 | 2,919.32 |
| 07/26 | Cangene Biopharm Direct-Pay PPD ID: ■■■6753 | 34.52 |
| 07/31 | Interest Payment | 0.05 |
| **Total Deposits and Additions** | | **$32,585.21** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/05 | Card Purchase With Pin 07/05 The Home Depot #2583 Washington DC Card 0244 | $3,718.16 |
| 07/08 | Card Purchase With Pin 07/07 Village Shops S Fairfax Stati VA Card 0244 | 20.59 |
| 07/08 | Card Purchase With Pin 07/07 Target T- 3100 14th St Washington DC Card 0244 | 539.80 |
| 07/08 | Card Purchase 07/07 Domino's 4328 703-734-7080 DC Card 0244 | 28.02 |
| 07/29 | Card Purchase 07/26 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$4,706.57** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/02 | HSA Bank Plan Contr PPD ID: ■■■4250 | $100.00 |
| 07/02 | Potomac Elec Res UTIL Pmnt 7900063 Web ID: ■■■0160 | 77.58 |
| 07/05 | 07/05 Payment To Chase Card Ending IN 8315 | 187.27 |
| 07/05 | 07/05 Online Payment ■■■ To Barclays Bank Delaware | 1,316.02 |
| 07/05 | 07/05 Online Payment ■■■ To Lowe's | 1,094.19 |
| 07/05 | 07/05 Domestic Wire Transfer Via: Suntrust Atl/061000104 A/C: Suntrust Bank Gaithersburg MD 208771000 US Ref: For The Account of:David E. Lynn, LLC For Maryland Legal Service ■■■■ | 1,000.00 |
| 07/05 | 07/05 Domestic Wire Transfer Via: First Financial Bk/042200910 A/C: First Financial Bank Columbus IN 472011000 US Ref: Mcneely Stephenson Acct Number: 72377June/July Payment ■■■■ | 2,600.00 |
| 07/05 | Caliber Home Loa Draft Pmt PPD ID: ■■■1491 | 2,266.53 |
| 07/05 | American Express ACH Pmt PPD ID: ■■■2111 | 1,700.00 |
| 07/08 | 07/07 Payment To Chase Card Ending IN 0745 | 86.87 |
| 07/08 | 07/08 Online Payment ■■■ To Sallie Mae Sl Borrower 615 | 5,413.25 |
| 07/08 | 07/08 Domestic Wire Transfer Via: First Financial Bk/042200910 A/C: Mcneely Stephenson Ref: Advance Payment For Deposition Expensesinvoice #72377 ■■■■ | 2,000.00 |
| 07/08 | Caliber Home Loa Draft Pmt Web ID: ■■■1491 | 6,799.59 |
| 07/08 | Kenyon Square CO ACH 202-483-8282 Web ID: ■■■3620 | 621.42 |
| 07/08 | Citi Card Online Payment Web ID: ■■■ | 152.96 |
| 07/08 | Caliber Home Loa Draft Pmt Web ID: ■■■1491 | 3.50 |
| 07/09 | Kenyon Square CO ACH 202-483-8282 Web ID: ■■■3620 | 1,864.26 |
| 07/16 | Banana R Cc Bantelpay Tel ID: ■■■2103 | 66.86 |
| 07/18 | Verizon Wireless Payments PPD ID: ■■■4794 | 100.69 |
| 07/26 | 07/26 Payment To Chase Card Ending IN 0745 | 260.20 |

# EXHIBIT 6

**CHASE PRIVATE CLIENT**

November 30, 2019 through December 31, 2019

Primary Account: ▓▓▓▓5786

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | | AMOUNT |
|------|-------------|---|---|--------|
| 12/03 | Manual CR-Bkrg | | | $12,200.37 |
| 12/03 | Cangene Biopharm Direct-Pay | PPD ID: ▓6753 | | 2,182.19 |
| 12/03 | Cangene Biopharm Direct-Pay | PPD ID: ▓6753 | | 139.20 |
| 12/13 | Cangene Biopharm Payroll | PPD ID: ▓6514 | | 2,949.63 |
| 12/27 | Cangene Biopharm Payroll | PPD ID: ▓6514 | | 2,951.00 |
| 12/31 | Interest Payment | | | 0.07 |
| **Total Deposits and Additions** | | | | **$20,422.46** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 12/02 | Recurring Card Purchase 11/29 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | $400.00 |
| 12/09 | Recurring Card Purchase 12/06 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 12/16 | Recurring Card Purchase 12/13 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,200.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | | AMOUNT |
|------|-------------|---|---|--------|
| 12/02 | 11/30 Payment To Chase Card Ending IN 8315 | | | $250.00 |
| 12/02 | American Express ACH Pmt   W6994 | Web ID: ▓2111 | | 500.00 |
| 12/02 | Citi Card Online Payment ▓▓▓3525 Web ID: Citictp | | | 250.00 |
| 12/03 | 12/03 Payment To Chase Card Ending IN 4367 | | | 2,598.46 |
| 12/03 | 12/03 Online Payment▓2472 To Capital One | | | 1,325.48 |
| 12/03 | HSA Bank      Plan Contr | PPD ID: ▓4250 | | 100.00 |
| 12/03 | Potomac Elec Res UTIL Pmnt 5023722 | Web ID: ▓0160 | | 42.19 |
| 12/05 | Caliber Home Loa Draft Pmt | PPD ID: ▓1491 | | 2,288.89 |
| 12/06 | 12/06 Online Payment▓8842 To Synchrony Bank | | | 899.99 |
| 12/06 | Kenyon Square CO ACH ▓8282  Web ID: ▓3620 | | | 621.42 |
| 12/09 | Jpms LLC      Receipt | PPD ID: ▓4093 | | 14.05 |
| 12/10 | Allstate Assuran Ck4Inspymt | PPD ID: ▓0962 | | 113.10 |
| 12/16 | 12/16 Online Realtime Transfer To Bana 0854 Transaction#: 8▓6143 Reference#: 8973416143Rx | | | 1,168.40 |
| 12/16 | 12/16 Domestic Wire Transfer Via: Suntrust Atl/061000104 A/C: David E. Lynn, LLC Imad: ▓ | | | 7,930.00 |
| 12/16 | Applecard Gsbank Payment   455077 | Web ID: ▓999 | | 1,500.00 |
| 12/17 | 12/17 Online Payment ▓▓407 To Swami Consulting Rachana Parrish | | | 160.00 |
| 12/17 | Fedloanservicing Stdnt Loan ▓ | Tel ID: ▓0803 | | 2,000.00 |
| 12/18 | Verizon Wireless Payments | PPD ID: ▓794 | | 102.40 |
| 12/30 | Potomac Elec Res UTIL Pmnt 8857072 | Web ID: ▓0160 | | 50.87 |
| **Total Electronic Withdrawals** | | | | **$21,915.25** |

**CHASE PRIVATE CLIENT**

November 30, 2019 through December 31, 2019

Primary Account: **5786**

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC



**JPMorgan Chase Bank, N.A. Member FDIC**



**CHASE PRIVATE CLIENT**

November 30, 2019 through December 31, 2019

Primary Account ████████ **5786**



## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

Account Number: ███████ 9681

OR SIMRANJIT J ATTARIWALA

### SAVINGS SUMMARY

|  | AMOUNT |
|---|---|
| **Beginning Balance** | **$2,484.09** |
| Deposits and Additions | 0.09 |
| **Ending Balance** | **$2,484.18** |
|  |  |
| Annual Percentage Yield Earned This Period | 0.04% |
| Interest Paid This Period | $0.09 |
| Interest Paid Year-to-Date | $7.00 |

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
|  | **Beginning Balance** |  | **$2,484.09** |
| 12/31 | Interest Payment | **0.09** | 2,484.18 |
|  | **Ending Balance** |  | **$2,484.18** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

Account Number: ████████ 3749

OR SIMRANJIT J ATTARIWALA

### SAVINGS SUMMARY

|  | AMOUNT |
|---|---|
| **Beginning Balance** | **$27.14** |
| **Ending Balance** | **$27.14** |
|  |  |
| Annual Percentage Yield Earned This Period | 0.00% |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

November 01, 2019 through November 29, 2019
Primary Account: ████ 5786

| **CUSTOMER SERVICE INFORMATION** | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00088573 DRE 111 212 33419 NNNNNNNNNNN   1 000000000 69 0000

JASPREET K ATTARIWALA
OR SIMRANJIT J ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541



## CONSOLIDATED BALANCE SUMMARY

**ASSETS**

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | ████ 5786 | $5,983.88 | $7,688.19 |
| Chase Private Client Savings | ████ 9681 | 2,484.01 | 2,484.09 |
| Chase Private Client Savings | ████ 3749 | 27.14 | 27.14 |
| **Total** | | **$8,495.03** | **$10,199.42** |

| **TOTAL ASSETS** | | **$8,495.03** | **$10,199.42** |
|---|---|---|---|

## CHASE PRIVATE CLIENT CHECKING

JASPREET K ATTARIWALA

OR SIMRANJIT J ATTARIWALA

Account Number: ████ 5786

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$5,983.88** |
| Deposits and Additions | 9,278.53 |
| ATM & Debit Card Withdrawals | -1,600.00 |
| Electronic Withdrawals | -5,974.22 |
| **Ending Balance** | **$7,688.19** |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.04 |
| Interest Paid Year-to-Date | $0.56 |

Your account ending in 9681 is linked to this account for overdraft protection.

**CHASE PRIVATE CLIENT**

November 01, 2019 through November 29, 2019

Primary Account: ▮▮▮▮ **5786**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | | AMOUNT |
|------|-------------|---|---|-------:|
| 11/01 | Cangene Biopharm Payroll | PPD ID: ▮▮▮6514 | | $2,916.98 |
| 11/14 | Cangene Biopharm Direct-Pay | PPD ID: ▮▮6753 | | 243.02 |
| 11/15 | Remote Online Deposit | 1 | | 219.25 |
| 11/15 | Cangene Biopharm Payroll | PPD ID: ▮▮6514 | | 2,949.62 |
| 11/29 | Cangene Biopharm Payroll | PPD ID: ▮▮6514 | | 2,949.62 |
| 11/29 | Interest Payment | | | 0.04 |
| **Total Deposits and Additions** | | | | **$9,278.53** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|-------:|
| 11/04 | Recurring Card Purchase 11/01 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | $400.00 |
| 11/12 | Recurring Card Purchase 11/08 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 11/18 | Recurring Card Purchase 11/15 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 11/25 | Recurring Card Purchase 11/22 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,600.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | | AMOUNT |
|------|-------------|---|---|-------:|
| 11/04 | HSA Bank Plan Contr | PPD ID: ▮▮4250 | | $100.00 |
| 11/05 | Caliber Home Loa Draft Pmt | PPD ID ▮▮1491 | | 2,266.53 |
| 11/06 | 11/06 Payment To Chase Card Ending IN 8315 | | | 1,411.78 |
| 11/06 | American Express ACH Pmt W1288 | Web ID: ▮▮2111 | | 1,071.79 |
| 11/06 | Kenyon Square CO ACH | 202-483-8282 Web ID: ▮▮3620 | | 621.42 |
| 11/19 | Allstate Assuran Ck4Inspymt | PPD ID: ▮▮0962 | | 74.10 |
| 11/20 | Verizon Wireless Payments | PPD ID: ▮▮4794 | | 102.40 |
| 11/26 | Macys Payment | PPD ID: ▮▮ | | 326.20 |
| **Total Electronic Withdrawals** | | | | **$5,974.22** |

**CHASE PRIVATE CLIENT**

November 01, 2019 through November 29, 2019

Primary Account: ███████ **5786**

---

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:

- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

---

**CHASE PRIVATE CLIENT**

November 01, 2019through November 29, 2019

Primary Account: ████████5786



## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

OR SIMRANJIT J ATTARIWALA

Account Number: ██████9681

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$2,484.01** |
| Deposits and Additions | 0.08 |
| **Ending Balance** | **$2,484.09** |
| Annual Percentage Yield Earned This Period | 0.04% |
| Interest Paid This Period | $0.08 |
| Interest Paid Year-to-Date | $6.91 |

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | **Beginning Balance** | | **$2,484.01** |
| 11/29 | Interest Payment | **0.08** | 2,484.09 |
| | **Ending Balance** | | **$2,484.09** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

OR SIMRANJIT J ATTARIWALA

Account Number: ██████3749

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$27.14** |
| **Ending Balance** | **$27.14** |
| Annual Percentage Yield Earned This Period | 0.00% |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**CHASE PRIVATE CLIENT**

This Page Intentionally Left Blank

**CHASE PRIVATE CLIENT**

October 01, 2019 through October 31, 2019

Primary Account: ████████ **5786**



## Overdraft and Overdraft Fee Information for Your Chase Checking Account

### What You Need to Know About Overdrafts and Overdraft Fees

An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway. We can cover your overdrafts in two different ways:

1.  We have standard overdraft practices that come with your account.
2.  We also offer overdraft protection through a link to a Chase savings account, which may be less expensive than our standard overdraft practices. You can contact us to learn more.

This notice explains our standard overdraft practices.

- **What are the standard overdraft practices that come with my account?**

    We **do** authorize and pay overdrafts for the following types of transactions:
    - Checks and other transactions made using your checking account number
    - Recurring debit card transactions

    We **do not** authorize and pay overdrafts for the following types of transactions, unless you ask us to (see below):
    - Everyday debit card transactions

    We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. If we do not authorize and pay an overdraft, your transaction will be declined.

- **What fees will I be charged if Chase pays my overdraft?**

    Under our standard overdraft practices:
    - If we pay an item, we'll charge you a $34 Insufficient Funds Fee per item. This fee is not charged if your account balance at the  end of the business day is overdrawn by $5 or less, or for items that are $5 or less.
    - We won't charge more than three Insufficient Funds Fees per day, for a total of $102.

- **We waive fees for some account types:**

    - For Chase Sapphire[SM] Checking accounts, we waive the Insufficient Funds and Returned Item fees if items(s) are presented or withdrawal request(s) are made against an account with insufficient funds on four or fewer business days in the past 12 months.
    - For Chase Private Client Checking[SM] accounts, we waive the Chase overdraft fees.

- **What if I want Chase to authorize and pay overdrafts on my everyday debit card transactions?**

    If you or a joint account owner would like to change your selection, sign in to chase.com to update your account settings, or call us at 1-800-935-9935 (or collect at 1-713-262-1679 if outside the U.S.), or visit a Chase branch. We accept operator relay calls.

**CHASE PRIVATE CLIENT**

October 01, 2019 through October 31, 2019

Primary Account: ███████5786

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

Account Number: ███████3749

OR SIMRANJIT J ATTARIWALA

### SAVINGS SUMMARY

|  | AMOUNT |
|---|---|
| **Beginning Balance** | **$27.14** |
| **Ending Balance** | **$27.14** |
| Annual Percentage Yield Earned This Period | 0.00% |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared.  Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly.  If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:**  Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement.  If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you.  For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A.  Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

**CHASE PRIVATE CLIENT**

October 01, 2019 through October 31, 2019

Primary Account: ▓▓▓▓▓▓**5786**



## ELECTRONIC WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 10/07 | Caliber Home Loa Draft Pmt        PPD ID: ▓▓▓1491 | 2,266.53 |
| 10/07 | Kenyon Square CO ACH   ▓▓▓ ▓▓▓ 8282   Web ID: ▓▓▓ 3620 | 621.42 |
| 10/09 | County of Ffx   Pp-Echgov   ▓▓▓1910 Web ID: ▓▓ 7833 | 1,036.12 |
| 10/18 | Verizon Wireless Payments       PPD ID: ▓▓▓ 4794 | 102.38 |
| 10/21 | 10/19 Payment To Chase Card Ending IN 8315 | 1,000.00 |
| 10/21 | 10/19 Payment To Chase Card Ending IN 0745 | 334.66 |
| 10/21 | American Express ACH Pmt   W6832     Web ID: ▓▓▓ 2111 | 750.00 |
| 10/21 | Citi Card Online Payment   ▓▓▓▓▓▓ 9413 Web ID: ▓▓▓ | 750.00 |
| 10/25 | Nordstrom       Payment            Tel ID: ▓▓ 3366 | 375.16 |
| 10/25 | Macys       Payment            PPD ID: ▓▓▓ | 250.00 |
| 10/30 | Potomac Elec Res UTIL Pmnt 8998856     Web ID: ▓▓ 0160 | 56.20 |
| **Total Electronic Withdrawals** | | **$10,220.63** |

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA                                          Account Number: ▓▓▓▓▓ 9681

OR SIMRANJIT J ATTARIWALA

## SAVINGS SUMMARY

| | AMOUNT |
|------|--------|
| **Beginning Balance** | **$3,483.90** |
| Deposits and Additions | 0.11 |
| Electronic Withdrawals | -1,000.00 |
| **Ending Balance** | **$2,484.01** |
| | |
| Annual Percentage Yield Earned This Period | 0.04% |
| Interest Paid This Period | $0.11 |
| Interest Paid Year-to-Date | $6.83 |

## TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| | **Beginning Balance** | | **$3,483.90** |
| 10/28 | 10/27 Online Transfer To Chk ...5786 Transaction#: ▓▓ 6123 | -1,000.00 | 2,483.90 |
| 10/31 | Interest Payment | 0.11 | 2,484.01 |
| | **Ending Balance** | | **$2,484.01** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**CHASE PRIVATE CLIENT**

October 01, 2019 through October 31, 2019

Primary Account: ████████ 5786

## CHASE PRIVATE CLIENT CHECKING

JASPREET K ATTARIWALA                                      Account Number: ████████ 5786

OR SIMRANJIT J ATTARIWALA

## CHECKING SUMMARY

|  | AMOUNT |
|---|---|
| **Beginning Balance** | **$9,957.73** |
| Deposits and Additions | 7,946.78 |
| ATM & Debit Card Withdrawals | -1,700.00 |
| Electronic Withdrawals | -10,220.63 |
| **Ending Balance** | **$5,983.88** |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.06 |
| Interest Paid Year-to-Date | $0.52 |

Your account ending in 9681 is linked to this account for overdraft protection.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 10/03 | Cangene Biopharm Direct-Pay | PPD ID: ████ 6753 | $756.22 |
| 10/04 | Cangene Biopharm Payroll | PPD ID: ████ 6514 | 2,916.98 |
| 10/17 | Cangene Biopharm Direct-Pay | PPD ID: ████ 6753 | 128.08 |
| 10/18 | Cangene Biopharm Payroll | PPD ID: ████ 6514 | 2,916.97 |
| 10/28 | Online Transfer From Sav ...9681 Transaction#: ████ 6123 | | 1,000.00 |
| 10/31 | Cangene Biopharm Direct-Pay | PPD ID: ████ 6753 | 228.47 |
| 10/31 | Interest Payment | | 0.06 |
| **Total Deposits and Additions** | | | **$7,946.78** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/07 | Recurring Card Purchase 10/04 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | $400.00 |
| 10/15 | Recurring Card Purchase 10/11 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 10/21 | Recurring Card Purchase 10/18 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 10/28 | ATM Withdrawal      10/27 3100 14th St Nw Washington DC Card 7355 | 100.00 |
| 10/28 | Recurring Card Purchase 10/25 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,700.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 10/02 | 10/02 Payment To Chase Card Ending IN 8315 | $1,000.00 |
| 10/02 | HSA Bank      Plan Contr      PPD ID: ████ 4250 | 100.00 |
| 10/02 | Potomac Elec Res UTIL Pmnt 5981571      Web ID: ████ 0160 | 78.16 |
| 10/04 | Quickpay With Zelle Payment To Honey Ji's Corp. ████ 0562 | 1,000.00 |
| 10/07 | Quickpay With Zelle Payment To Honey Ji's Corp. ████ 9418 | 500.00 |

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

October 01, 2019 through October 31, 2019

Primary Account: ████████5786



### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00087883 DRE 111 212 30519 NNNNNNNNNNN 1 000000000 69 0000

JASPREET K ATTARIWALA
OR SIMRANJIT J ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541

**We want to remind you about the overdraft service options that are available for your personal checking account(s)**

We've included information on the last page of this statement to remind you of our overdraft services and associated fees. You can find more information about these services and ways to avoid overdraft fees at **chase.com/overdraft-services** .

If you have questions, please call us at the number on your statement.

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | ████████5786 | $9,957.73 | $5,983.88 |
| Chase Private Client Savings | ████████9681 | 3,483.90 | 2,484.01 |
| Chase Private Client Savings | ████████3749 | 27.14 | 27.14 |
| **Total** | | **$13,468.77** | **$8,495.03** |
| | | | |
| **TOTAL ASSETS** | | **$13,468.77** | **$8,495.03** |

**CHASE PRIVATE CLIENT**

August 31, 2019 through September 30, 2019

Primary Account: ▆▆▆▆▆▆5786

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

OR SIMRANJIT J ATTARIWALA

Account Number: ████████3749

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$25.48** |
| Deposits and Additions | 1.66 |
| **Ending Balance** | **$27.14** |
| | |
| Annual Percentage Yield Earned This Period | 0.00% |

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | **Beginning Balance** | | **$25.48** |
| 09/03 | Cash Redemption | **1.66** | 27.14 |
| | **Ending Balance** | | **$27.14** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC



**JPMorgan Chase Bank, N.A. Member FDIC**

**CHASE PRIVATE CLIENT**

August 31, 2019 through September 30, 2019

Primary Account ▮▮▮▮▮▮**5786**



## ELECTRONIC WITHDRAWALS *(continued)*

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 09/09 | Citi Card Online Payment ▮▮▮▮ 0104 Web ID: Citictp | 25.00 |
| 09/10 | Allstate Assuran Ck4Inspymt       PPD ID: ▮▮▮▮0962 | 113.10 |
| 09/18 | Verizon Wireless Payments       PPD ID: ▮▮▮▮4794 | 102.38 |
| 09/20 | 09/20 Payment To Chase Card Ending IN 4466 | 123.29 |
| 09/20 | American Express ACH Pmt   W4382       Web ID: ▮▮▮▮2111 | 500.00 |
| 09/25 | Citi Card Online Payment ▮▮▮▮ 2596 Web ID: ▮▮▮▮ | 500.00 |
| 09/25 | Macys       Payment       PPD ID: ▮▮▮▮ | 100.00 |
| **Total Electronic Withdrawals** | | **$4,476.72** |

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA                          Account Number: ▮▮▮▮9681

OR SIMRANJIT J ATTARIWALA

## SAVINGS SUMMARY

| | AMOUNT |
|---|--------|
| **Beginning Balance** | **$1,057.84** |
| Deposits and Additions | 2,426.06 |
| **Ending Balance** | **$3,483.90** |
| | |
| Annual Percentage Yield Earned This Period | 0.04% |
| Interest Paid This Period | $0.06 |
| Interest Paid Year-to-Date | $6.72 |

## TRANSACTION DETAIL

| DATE | DESCRIPTION | | AMOUNT | BALANCE |
|------|-------------|---|--------|---------|
| | **Beginning Balance** | | | **$1,057.84** |
| 09/23 | Remote Online Deposit | 1 | **2,426.00** | 3,483.84 |
| 09/30 | Interest Payment | | **0.06** | 3,483.90 |
| | **Ending Balance** | | | **$3,483.90** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**CHASE PRIVATE CLIENT**

August 31, 2019through September 30, 2019

Primary Account: ▮▮▮▮▮**5786**

## CHASE PRIVATE CLIENT CHECKING

JASPREET K ATTARIWALA

Account Number: ▮▮▮▮▮5786

OR SIMRANJIT J ATTARIWALA

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$1,575.58** |
| Deposits and Additions | 14,858.87 |
| ATM & Debit Card Withdrawals | -2,000.00 |
| Electronic Withdrawals | -4,476.72 |
| **Ending Balance** | **$9,957.73** |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.03 |
| Interest Paid Year-to-Date | $0.46 |

Your account ending in 9681 is linked to this account for overdraft protection.

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 09/05 | Cangene Biopharm Direct-Pay | PPD ID:▮▮▮6753 | $138.49 |
| 09/06 | Remote Online Deposit 1 | | 1,200.00 |
| 09/06 | Cangene Biopharm Payroll | PPD ID:▮▮▮6514 | 2,918.89 |
| 09/12 | Cangene Biopharm Direct-Pay | PPD ID:▮▮▮6753 | 74.87 |
| 09/20 | Cangene Biopharm Payroll | PPD ID:▮▮▮6514 | 2,918.90 |
| 09/25 | Irs Treas 310 Tax Ref | PPD ID:▮▮▮6170 | 6,726.00 |
| 09/25 | Cangene Biopharm Direct-Pay | PPD ID: ▮▮▮6753 | 881.69 |
| 09/30 | Interest Payment | | 0.03 |
| **Total Deposits and Additions** | | | **$14,858.87** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 09/03 | Recurring Card Purchase 08/30 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | $400.00 |
| 09/09 | Recurring Card Purchase 09/06 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 09/16 | Recurring Card Purchase 09/13 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 09/23 | Recurring Card Purchase 09/20 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 09/30 | Recurring Card Purchase 09/27 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$2,000.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|---|---|---|---|
| 09/03 | 09/02 Payment To Chase Card Ending IN 8315 | | $25.00 |
| 09/04 | HSA Bank Plan Contr | PPD ID: ▮▮▮4250 | 100.00 |
| 09/05 | Caliber Home Loa Draft Pmt | PPD ID▮▮▮1491 | 2,266.53 |
| 09/06 | Kenyon Square CO ACH 202-483-8282 Web ID:▮▮▮ | | 621.42 |

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218- 2051

August 31, 2019 through September 30, 2019
Primary Account: ███████ **5786**



| CUSTOMER SERVICE INFORMATION | |
| --- | --- |
| Web site: | **Chase.com** |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00086950 DRE 111 212 27419 NNNNNNNNNNN  1 000000000 69 0000

JASPREET K ATTARIWALA
OR SIMRANJIT J ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541

## Good news! We're making it easier to get a replacement account number if your account is compromised.

Starting November 17, 2019, if your account is compromised, we can simply issue you a replacement account number without the hassle of closing your existing account and opening a new one. This will allow you to continue using your existing debit card.

We've updated our Deposit Account Agreement to explain this change:

*We can assign and transfer your account information and documentation to a replacement account number at our discretion. We may make this assignment when your account is reported compromised by you or any signer. If we issue you a replacement account number, this Deposit Account Agreement governing you and your account will continue to apply, without interruption, as if you retained the discontinued account number.*

Please call us at the number at the top of this statement if you have any questions.

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
| --- | --- | --- | --- |
| Chase Private Client Checking | ████ 5786 | $1,575.58 | $9,957.73 |
| Chase Private Client Savings | ████ 9681 | 1,057.84 | 3,483.90 |
| Chase Private Client Savings | ████ 3749 | 25.48 | 27.14 |
| **Total** | | **$2,658.90** | **$13,468.77** |
| | | | |
| **TOTAL ASSETS** | | **$2,658.90** | **$13,468.77** |

**CHASE PRIVATE CLIENT**

August 01, 2019 through August 30, 2019
Primary Account: ▉▉▉▉5786

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.
For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
• Your name and account number
• The dollar amount of the suspected error
• A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.
We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation.

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC

 **JPMorgan Chase Bank, N.A. Member FDIC**

**CHASE PRIVATE CLIENT**

August 01, 2019 through August 30, 2019

Primary Account: ██████████5786

---

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

Account Number: ███████9681

OR SIMRANJIT J ATTARIWALA

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$1,057.81** |
| Deposits and Additions | 0.03 |
| **Ending Balance** | **$1,057.84** |
| | |
| Annual Percentage Yield Earned This Period | 0.03% |
| Interest Paid This Period | $0.03 |
| Interest Paid Year-to-Date | $6.66 |

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|
| | **Beginning Balance** | | **$1,057.81** |
| 08/30 | Interest Payment | 0.03 | 1,057.84 |
| | **Ending Balance** | | **$1,057.84** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

---

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

Account Number: ███████3749

OR SIMRANJIT J ATTARIWALA

### SAVINGS SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$25.48** |
| **Ending Balance** | **$25.48** |
| | |
| Annual Percentage Yield Earned This Period | 0.00% |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**CHASE PRIVATE CLIENT**

August 01, 2019 through August 30, 2019

Primary Account: ███████**5786**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 08/02 | Cangene Biopharm Direct-Pay | PPD ID:███6753 | $37.74 |
| 08/09 | Cangene Biopharm Payroll | PPD ID:███6514 | 2,919.33 |
| 08/19 | Cangene Biopharm Direct-Pay | PPD ID:███6753 | 319.74 |
| 08/23 | Cangene Biopharm Payroll | PPD ID:███6514 | 2,919.32 |
| 08/23 | Cangene Biopharm Direct-Pay | PPD ID:███6753 | 1,181.66 |
| 08/23 | Cangene Biopharm Direct-Pay | PPD ID:███6753 | 46.18 |
| 08/30 | Interest Payment | | 0.04 |
| **Total Deposits and Additions** | | | **$7,424.01** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 08/05 | Recurring Card Purchase 08/02 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | $400.00 |
| 08/12 | Recurring Card Purchase 08/09 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 08/19 | Recurring Card Purchase 08/16 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| 08/26 | Recurring Card Purchase 08/23 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$1,600.00** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | | AMOUNT |
|------|-------------|---|--------|
| 08/02 | HSA Bank Plan Contr | PPD ID:███4250 | $100.00 |
| 08/05 | Caliber Home Loa Draft Pmt | PPD ID:███1491 | 2,266.53 |
| 08/05 | American Express ACH Pmt W4030 | Web ID:███2111 | 500.00 |
| 08/06 | Kenyon Square CO ACH 202-483-8282 | Web ID:███3620 | 621.42 |
| 08/20 | Verizon Wireless Payments | PPD ID:███4794 | 101.08 |
| 08/20 | Allstate Assuran Ck4Inspymt | PPD ID:███0962 | 74.10 |
| 08/26 | Macys Payment | PPD ID:███ | 27.00 |
| 08/27 | American Express ACH Pmt W0620 | Web ID:███ | 88.00 |
| 08/30 | 08/30 Payment To Chase Card Ending IN 4367 | | 5,500.00 |
| 08/30 | Potomac Elec Res UTIL Pmnt 7963957 | Web ID:███ | 91.17 |
| **Total Electronic Withdrawals** | | | **$9,369.30** |

**CHASE PRIVATE CLIENT**

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

August 01, 2019 through August 30, 2019

Primary Account: ██████ 5786

### CUSTOMER SERVICE INFORMATION

| | |
|---|---|
| Web site: | **Chase.com** |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |



00087457 DRE 111 212 24319 NNNNNNNNNNN  1 000000000 69 0000

JASPREET K ATTARIWALA
OR SIMRANJIT J ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541

## CONSOLIDATED BALANCE SUMMARY

### ASSETS

| Checking & Savings | ACCOUNT | BEGINNING BALANCE THIS PERIOD | ENDING BALANCE THIS PERIOD |
|---|---|---|---|
| Chase Private Client Checking | ████ 5786 | $5,120.87 | $1,575.58 |
| Chase Private Client Savings | ████ 9681 | 1,057.81 | 1,057.84 |
| Chase Private Client Savings | ████ 3749 | 25.48 | 25.48 |
| **Total** | | **$6,204.16** | **$2,658.90** |

| TOTAL ASSETS | | **$6,204.16** | **$2,658.90** |
|---|---|---|---|

## CHASE PRIVATE CLIENT CHECKING

JASPREET K ATTARIWALA

OR SIMRANJIT J ATTARIWALA

Account Number: ██████ 5786

## CHECKING SUMMARY

| | AMOUNT |
|---|---|
| **Beginning Balance** | **$5,120.87** |
| Deposits and Additions | 7,424.01 |
| ATM & Debit Card Withdrawals | -1,600.00 |
| Electronic Withdrawals | -9,369.30 |
| **Ending Balance** | **$1,575.58** |
| | |
| Annual Percentage Yield Earned This Period | 0.01% |
| Interest Paid This Period | $0.04 |
| Interest Paid Year-to-Date | $0.43 |

Your account ending in 9681 is linked to this account for overdraft protection.

**CHASE PRIVATE CLIENT**

June 29, 2019 through July 31, 2019

Primary Account: ██████**5786**

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA

Account Number: ████ 3749

OR SIMRANJIT J ATTARIWALA

## SAVINGS SUMMARY

|  | AMOUNT |
|---|---|
| **Beginning Balance** | **$25.48** |
| **Ending Balance** | **$25.48** |
| Annual Percentage Yield Earned This Period | 0.00% |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR ELECTRONIC FUNDS TRANSFERS:** Call us at 1-866-564-2262 or write us at the address on the front of this statement (non-personal accounts contact Customer Service) immediately if you think your statement or receipt is incorrect or if you need more information about a transfer listed on the statement or receipt.

For personal accounts only: We must hear from you no later than 60 days after we sent you the FIRST statement on which the problem or error appeared. Be prepared to give us the following information:
- Your name and account number
- The dollar amount of the suspected error
- A description of the error or transfer you are unsure of, why you believe it is an error, or why you need more information.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days (or 20 business days for new accounts) to do this, we will credit your account for the amount you think is in error so that you will have use of the money during the time it takes us to complete our investigation

**IN CASE OF ERRORS OR QUESTIONS ABOUT NON-ELECTRONIC TRANSACTIONS:** Contact the bank immediately if your statement is incorrect or if you need more information about any non-electronic transactions (checks or deposits) on this statement. If any such error appears, you must notify the bank in writing no later than 30 days after the statement was made available to you. For more complete details, see the Account Rules and Regulations or other applicable account agreement that governs your account. Deposit products and services are offered by JPMorgan Chase Bank, N.A. Member FDIC



**JPMorgan Chase Bank, N.A. Member FDIC**

CHASE PRIVATE CLIENT

June 29, 2019 through July 31, 2019
Primary Account: ████████5786



## ELECTRONIC WITHDRAWALS (continued)

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/26 | 07/26 Payment To Chase Card Ending IN 8315 | 469.05 |
| 07/29 | Allstate Ins CO  Ins Prem          PPD ID:████9665 | 919.88 |
| 07/29 | Citi Card Online Payment         ████Web ID: C████ | 106.18 |
| 07/31 | Potomac Elec Res UTIL Pmnt  3867320        Web ID:████0160 | 99.89 |
| **Total Electronic Withdrawals** | | **$29,306.19** |

## CHASE PRIVATE CLIENT SAVINGS

JASPREET K ATTARIWALA                                    Account Number: ████████9681

OR SIMRANJIT J ATTARIWALA

### SAVINGS SUMMARY

| | AMOUNT |
|--|--------|
| **Beginning Balance** | **$7,557.72** |
| Deposits and Additions | 0.09 |
| Electronic Withdrawals | -6,500.00 |
| **Ending Balance** | **$1,057.81** |
| | |
| Annual Percentage Yield Earned This Period | 0.04% |
| Interest Paid This Period | $0.09 |
| Interest Paid Year-to-Date | $6.63 |

### TRANSACTION DETAIL

| DATE | DESCRIPTION | AMOUNT | BALANCE |
|------|-------------|--------|---------|
| | **Beginning Balance** | | **$7,557.72** |
| 07/05 | 07/05 Online Transfer To Chk ...5786 Transaction#:████0788 | -5,000.00 | 2,557.72 |
| 07/08 | 07/08 Online Transfer To Chk ...5786 Transaction#:████8875 | -1,500.00 | 1,057.72 |
| 07/31 | Interest Payment | 0.09 | 1,057.81 |
| | **Ending Balance** | | **$1,057.81** |

You earned a higher interest rate on your Chase Private Client Savings account during this statement period because you had a qualifying Chase Private Client Checking account.

**CHASE PRIVATE CLIENT**

June 29, 2019 through July 31, 2019

Primary Account: ██████ **5786**

## DEPOSITS AND ADDITIONS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/05 | Manual CR-Bkrg | $20,000.00 |
| 07/05 | Online Transfer From Sav ...9681 Transaction#: ████ 0788 | 5,000.00 |
| 07/08 | Online Transfer From Sav ...9681 Transaction#: ████ 8875 | 1,500.00 |
| 07/12 | Cangene Biopharm Payroll          PPD ID: ████6514 | 2,919.33 |
| 07/15 | Purchase Return          07/13 Target T- 3100 14th St Washington DC Card 0244 | 211.99 |
| 07/26 | Cangene Biopharm Payroll          PPD ID: ████6514 | 2,919.32 |
| 07/26 | Cangene Biopharm Direct-Pay          PPD ID: ████6753 | 34.52 |
| 07/31 | Interest Payment | 0.05 |
| **Total Deposits and Additions** | | **$32,585.21** |

## ATM & DEBIT CARD WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/05 | Card Purchase With Pin  07/05 The Home Depot #2583 Washington DC Card 0244 | $3,718.16 |
| 07/08 | Card Purchase With Pin  07/07 Village Shops S Fairfax Stati VA Card 0244 | 20.59 |
| 07/08 | Card Purchase With Pin  07/07 Target T- 3100 14th St Washington DC Card 0244 | 539.80 |
| 07/08 | Card Purchase          07/07 Domino's 4328 703-734-7080 DC Card 0244 | 28.02 |
| 07/29 | Card Purchase          07/26 Mcneely Stephenson Tho 800-5755711 IN Card 7355 | 400.00 |
| **Total ATM & Debit Card Withdrawals** | | **$4,706.57** |

## ELECTRONIC WITHDRAWALS

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
| 07/02 | HSA Bank          Plan Contr          PPD ID: ████4250 | $100.00 |
| 07/02 | Potomac Elec Res UTIL Pmnt  7900063          Web ID: ████0160 | 77.58 |
| 07/05 | 07/05 Payment To Chase Card Ending IN 8315 | 187.27 |
| 07/05 | 07/05 Online Payment ████ To Barclays Bank Delaware | 1,316.02 |
| 07/05 | 07/05 Online Payment ████ To Lowe's | 1,094.19 |
| 07/05 | 07/05 Domestic Wire Transfer Via: Suntrust Atl/061000104 A/C: Suntrust Bank Gaithersburg MD 208771000 US Ref: For The Account of:David E. Lynn, LLC For Maryland Legal Service | 1,000.00 |
| 07/05 | 07/05 Domestic Wire Transfer Via: First Financial Bk/042200910 A/C: First Financial Bank Columbus IN 472011000 US Ref: Mcneely Stephenson Acct Number: 72377June/July Payment | 2,600.00 |
| 07/05 | Caliber Home Loa Draft Pmt          PPD ID: ████1491 | 2,266.53 |
| 07/05 | American Express ACH Pmt          PPD ID: ████2111 | 1,700.00 |
| 07/08 | 07/07 Payment To Chase Card Ending IN 0745 | 86.87 |
| 07/08 | 07/08 Online Payment ████ To Sallie Mae SI Borrower 615 | 5,413.25 |
| 07/08 | 07/08 Domestic Wire Transfer Via: First Financial Bk/042200910 A/C: Mcneely Stephenson Ref: Advance Payment For Deposition Expensesinvoice #72377 ████ | 2,000.00 |
| 07/08 | Caliber Home Loa Draft Pmt          Web ID: ████1491 | 6,799.59 |
| 07/08 | Kenyon Square CO ACH          202-483-8282  Web ID: ████3620 | 621.42 |
| 07/08 | Citi Card Online Payment          Web ID: ████ | 152.96 |
| 07/08 | Caliber Home Loa Draft Pmt          Web ID: ████1491 | 3.50 |
| 07/09 | Kenyon Square CO ACH          202-483-8282  Web ID: ████3620 | 1,864.26 |
| 07/16 | Banana R Cc          Bantelpay          Tel ID: ████2103 | 66.86 |
| 07/18 | Verizon Wireless Payments          PPD ID: ████4794 | 100.69 |
| 07/26 | 07/26 Payment To Chase Card Ending IN 0745 | 260.20 |

# EXHIBIT 7

# LOCAL OFFICIAL FORM NO. 10

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

In re )
**Jaspreet Kaur Attariwala** ) Case No.
_____ )
) Chapter **13**
Debtor(s). )

### DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U .S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

☐ **Flat Fee**

For legal services, I have agreed to accept ............................................... $ _____

Prior to the filing of this statement I have received ............................... $ _____

Balance Due ............................................................................................ $ _____

☑ **Hourly Fee**

For legal services, I have agreed to accept and received a retainer of ...... $ **16,430.00**

The undersigned shall bill against the retainer at an hourly rate of _____ $ **495.00**
[Or attach firm hourly rate schedule.] as such rate may change over time based on periodic increases.
Debtor has agreed to pay all approved fees and expenses exceeding the amount of the retainer, subject to those fees and expenses being approved by the court (when court approval is required) for work performed in a chapter 11 case or chapter 13 case. Payments of fees and expenses exceeding the retainer, other than payment of amounts approved for payment by court order, will be disclosed by a supplemental Rule 2016(b) statement.

☐ **_Pro Bono_ Representation**

I have agreed to provide services without compensation

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The debtor ☑ has ☐ has not agreed to reimburse expenses.

2. The source of the compensation paid to me was:
☑ Debtor ☐ Other (specify):

3. The source of compensation to be paid to me is:
☑ Debtor ☐ Other (specify):

3. With respect to the compensation described herein:

☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

# EXHIBIT 8

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

IN RE:                                                   :
                                                             :
JASPREET ATTARIWALA                  :          Case No. 19-00828
                                                             :          (Chapter 13)
                                    Debtor              :

### SUPPLEMENTAL STATEMENT PURSUANT TO RULE 2016(b)

Pursuant to Section 329 of the Bankruptcy Code and Rule 2016(b) of the Federal Rules

of Bankruptcy Procedure, undersigned counsel for the Debtor supplements the prior Rule

2016(b) statement filed in this case, as follows:

1.       Counsel agreed to represent the Debtor in this case on an hourly fee basis at

counsel's customary hourly rates.

2.       Members of the Debtor's family have paid counsel an additional $15,037.00 on

account of the fees and costs of this case.

3.       Counsel has not agreed to share any portion of the funds disclosed in this

statement.

Dated:  May 19, 2020                          Respectfully submitted,

                                                             _/s/ David E. Lynn_____
                                                             David E. Lynn - D.C. Bar No. 360397
                                                             15245 Shady Grove Road, Suite 465 North
                                                             Rockville, MD  20850
                                                             (301) 255-0100
                                                             *davidlynn@verizon.net*

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on _May 19, 2020_, a copy of the foregoing was filed
electronically, causing service on all those who have requested electronic notices in this case.

                                                             _/s/ David E. Lynn_____
                                                             David E. Lynn

# EXHIBIT 9

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| JASPREET ATTARIWALA | : | Case No. 19-00828 |
| | : | (Chapter 13) |
| Debtor | : | |

### SUPPLEMENTAL STATEMENT PURSUANT TO RULE 2016(b)

Pursuant to Section 329 of the Bankruptcy Code and Rule 2016(b) of the Federal Rules of Bankruptcy Procedure, undersigned counsel for the Debtor supplements the prior Rule 2016(b) statement filed in this case, as follows:

1.     Counsel agreed to represent the Debtor in this case on an hourly fee basis at counsel's customary hourly rates.

2.     The Debtor's parents have paid counsel an additional $10,000.00 on account of the fees and costs of this case.

3.     Counsel has not agreed to share any portion of the funds disclosed in this statement.

Dated:  October 9, 2020                    Respectfully submitted,

                                             _/s/ David E. Lynn_____
                                             David E. Lynn - D.C. Bar No. 360397
                                             15245 Shady Grove Road, Suite 465 North
                                             Rockville, MD  20850
                                             (301) 255-0100
                                             _davidlynn@verizon.net_


### CERTIFICATE OF SERVICE

   I HEREBY CERTIFY that on  October 9, 2020 , a copy of the foregoing was filed electronically, causing service on all those who have requested electronic notices in this case.

                                             _/s/ David E. Lynn_____
                                             David E. Lynn

# EXHIBIT 10

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **JASPREET ATTARIWALA,** | ) | **Case No.: 19-00828-SMT** |
| | ) | |
| **Debtor.** | ) | **Chapter 13** |
| | ) | |
| | ) | |

### BIOCONVERGENCE LLC D/B/A SINGOTA SOLUTIONS LLC'S EXPEDITED MOTION TO STAY ENTRY OF ORDER CONFIRMING CHAPTER 13 PLAN

BioConvergence LLC d/b/a Singota Solutions ("Singota"), by its undersigned counsel, respectfully moves this Court to stay entry of its order confirming the Chapter 13 plan of the Debtor, Jaspreet Attariwala (the "Debtor"), pending the Debtor's full compliance with Singota's discovery requests and resolution of Singota's pending motion to compel the production of documents. Debtor's schedules and limited document production to date – including new documents produced by Debtor on August 31, 2020 – raise the possibility that Debtor has concealed assets and engaged in bankruptcy fraud in filing her petition. Singota respectfully submits that confirmation of Debtor's plan is premature while evidence remains outstanding relevant to these issues.

First, Singota requested the production of relevant documents on March 4, 2020. *See Notice of Deposition Duces Tecum* (the "Discovery Request") attached as **Exhibit A**. Debtor produced some documents at her deposition on March 11, 2020, but that production omitted many tax documents, all banking statements, and other responsive and relevant documents. *See* Documents stamped Attariwala – Bates Nos. 0001-0143, attached as **Exhibit B**. Despite Singota's requests that Debtor supplement her document production, she failed to do so before this Court

| (a) ST | (b) Lived in State From | (c) Lived in State To | (d) Enter Total Tax Rate | (e) State Tax Rate (%) | (f) Local Tax Rate (%) | (g) State Table Amount | (h) Local Sales Taxes | (i) Prorated or Total Amount |
|---|---|---|---|---|---|---|---|---|
| IL | 01/01/18 | 12/31/18 | 7.7500 | 6.2500 | 1.5000 | 783. | 189. | 972. |

**Exhibit B**, Bates No. 062. However, as noted above, Debtor has represented in this bankruptcy case that she has only lived in Washington D.C. and Virginia in the 3 years before filing her bankruptcy petition on December 17, 2019. *See supra* ¶ 11.

45. Similarly, the 2017 federal income tax form that Debtor produced for her company, Honey Ji's, is unsigned and bears the date April 24, 2019, which appears to be inaccurate. The form shows in relevant part:



**Exhibit B**, Bates No. 0084.

## F. Discrepancies in the Chase checking and savings account statements produced by Debtor

46. Although Singota had requested documents such as Debtor's bank account statements in March, Debtor failed to produce *any* of these statements until August 31, 2020 – ten days *after* this Court conducted its hearing on August 21, 2020, on Singota's objections to confirmation of Debtor's Chapter 13 plan. *See* Doc. 102. Debtor provided no explanation for withholding these relevant documents for the past five months. And although Debtor also

identified Bank of America accounts and multiple retirement accounts on her schedules, she has still not produced statements for any of those accounts. *See supra* ¶¶ 19 & 21.

47.     Due to Debtor's belated production of these Chase bank statements, Singota, the Trustee, and the Court were unable to consider them in reviewing the reasonableness and good-faith basis of Debtor's Chapter 13 plan.

48.     The statements produced by Debtor cover 3 accounts held by her at Chase bank: two savings accounts (ending in account numbers 9681 and 3749, respectively) and one checking account (ending in account number 5786).  *See* **Exhibit C**, Bates Stamped "Attariwala - Chase Bank statements 2018 – 2019" at 001 - 104. These bank statements cover the period from to December 30, 2017, through December 31, 2019. **One of these accounts – one of the two savings accounts – was *omitted* from Debtor's schedules filed in this case. *See supra* at ¶ 21 (listing only one savings account at Chase).**

49.     The Chase bank statements produced by Debtor raise a number of questions and concerns.

50.     First, the statements show Debtor's address as being in Illinois. For instance, the most recent statement for the period through December 31, 2019, shows in relevant part as follows:

**CHASE PRIVATE CLIENT**
JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218-2051

November 30, 2019 through December 31, 2019
Primary Account:

**CUSTOMER SERVICE INFORMATION**

| | |
|---|---|
| Web site: | Chase.com |
| Service Center: | **1-888-994-5626** |
| Deaf and Hard of Hearing: | 1-800-242-7383 |
| International Calls: | 1-713-262-1679 |

00089534 DRE 111 212 00120 NNNNNNNNNNN  1 000000000 69 0000

JASPREET K ATTARIWALA
OR SIMRANJIT J ATTARIWALA
8907 MANGO AVE
MORTON GROVE IL 60053-2541

*See* **Exhibit C** at 001. This address is inconsistent with Debtor's representation in this case that she has only resided in Washington D.C. and Virginia for the 3 years before filing bankruptcy. *See supra* ¶¶ 4, 5 & 11.

51.     Second, the Debtor's bank statements show that she is a "Chase Private Client." *Id.* According to online marketing materials for Chase, its private client services are available only to clients with at least $250,000 in deposits and investments. *See* https://chaseprivateclient.chase.com/banking#:~:text=To%20enjoy%20the%20benefits%20of,or %20business%20deposits%20and%20investments ("Chase Private Client is available to individuals who maintain an average daily balance of $250,000 or more in any combination of qualifying identified deposits and investments"). However, despite being a Chase Private Client, Debtor has not produced records of deposits and investments with an average daily balance of $250,000. *See* **Exhibit C** at 001 - 104.

52.     Third, Debtor's Chase bank statements also show that Debtor has transferred over $60,000.00 into her checking account from an undisclosed brokerage account. Debtor's produced statements show at least 3 substantial transfers.

53.     First, on February 21, 2018, Debtor transferred $30,000 into her checking account from an undisclosed brokerage account. Her statements show:

**CHASE PRIVATE CLIENT**

February 01, 2018 through February 28, 2018
Primary Account: ▮▮▮▮▮▮▮▮▮

**DEPOSITS AND ADDITIONS**

| 02/21 | Jpms | Brokerage  Manual CR-Bkrg  PPD ID: ▮▮▮▮▮▮▮ | 30,000.00 |

*See* **Exhibit C**, at 098. "Jpms" on Debtor's Chase bank statement appears to stand for "J.P. Morgan Securities LLC." *See* https://www.jpmorgan.com/securities ("This website provides information

about the brokerage and investment advisory services provided by J.P. Morgan Securities LLC ('JPMS')").

54.     Second, on July 5, 2019, Debtor transferred another $20,000 into her checking account, again from an undisclosed brokerage account.  Her statements show:

**CHASE PRIVATE CLIENT**

June 29, 2019 through July 31, 2019
Primary Account: ▮▮▮▮▮▮▮▮▮

| DEPOSITS AND ADDITIONS | |
| --- | --- |
| DATE    DESCRIPTION | AMOUNT |
| 07/05    Manual CR-Bkrg | $20,000.00 |

*See* **Exhibit C** at 025.

55.     Third, on December 3, 2019 – just 14 days before Debtor filed her bankruptcy petition – Debtor transferred another $12,200.37 into her checking account, again from an undisclosed brokerage account.  Her statements show:

**CHASE PRIVATE CLIENT**

November 30, 2019 through December 31, 2019
Primary Account: ▮▮▮▮▮▮▮▮▮

| DEPOSITS AND ADDITIONS | |
| --- | --- |
| DATE    DESCRIPTION | AMOUNT |
| 12/03    Manual CR-Bkrg | $12,200.37 |

In addition, Debtor's same statement appears to show a charge of $14.05 incurred to "Jpms, LLC," which, as noted above, appears to be J.P. Morgan Securities LLC.  The statement shows:

| ELECTRONIC WITHDRAWALS | | | | |
| --- | --- | --- | --- | --- |
| 12/09   Jpms LLC | Receipt | PPD ID: ▮▮▮▮▮▮ | | 14.05 |

*See* **Exhibit C** at 002. Again, Debtor did not disclose any accounts with J.P. Morgan Securities in her schedules filed in this case.

56.     Fourth, Debtor's belatedly produced bank statements also show a number of unusual and likely improper preferential payments. On December 17, 2019 – the same day Debtor filed her bankruptcy petition – Debtor made a $2,000 payment towards a student loan.  Her bank statements show:

CHASE PRIVATE CLIENT

November 30, 2019 through December 31, 2019
Primary Account: ████████

| 12/17 | Fedloanservicing Stdnt Loan ████ | Tel ID: 9102000803 | 2,000.00 |

*See* **Exhibit C** at 002. It is unclear what student loan Debtor paid, and this payment does not appear to be in the ordinary course of Debtor's financial affairs.

57.     In addition, Debtor has repeatedly transferred funds to Honey Ji's, the S Corp. in which Debtor has a 100% interest. Although Debtor has represented in this Case that Honey Ji's has not been in operations since late 2018, Debtor made transfers to Honey Ji's in 2019 and 2018 as follows:

- October 4, 2019: $1,000

- October 7, 2019: $500

- May 13, 2019: $500

- January 9, 2019: $1,000

- December 28, 2018: $1,000

- November 6, 2018: $500

- October 19, 2018: $500

- October 4, 2018: $250

- October 3, 2018: $1,500

- September 17, 2018: $500

- September 4, 2018: $500

- August 15, 2018: $1,500

- August 3, 2018: $250

- July 27, 2018: $2,500

- July 25, 2018: $5

*See* **Exhibit C** at 013, 031, 050, 055, 063, 068, 071, 076.  It is unclear where this money went in light of Honey Ji's lack of operations.  Debtor has failed to produce any banking statements or other financial records for her Honey Ji's business.

58.     Fifth, Debtor's recently produced bank records show a number of deposits from unidentified sources that appear on her statements only as "Remote Online Deposit."  These include deposits as follows:

- September 6, 2019: $1,200

- September 23, 2019: $2,426

- December 26, 2018: $1,261.62

- October 15, 2018: $1,526.99

*See* **Exhibit C**, at 016, 017, 054, 065. It is unclear from the evidence so far produced by Debtor where these payments came from.

59.     Finally, at the time Debtor filed her Petition, Debtor's attorney, Mr. Lynn, filed a *Disclosure of Compensation to Attorney for Debtor*, disclosing that Debtor had paid Mr. Lynn a retainer of $16,430.00 in or about December 2019. Doc. 1 at PDF p. 12 of 18.  The bank statements recently produced by Debtor show that Debtor made a wire transfer to Mr. Lynn of $7,930 on December 16, 2019.  They show:

CHASE PRIVATE CLIENT

November 30, 2019 through December 31, 2019
Primary Account: ███████████████

| 12/16 | 12/16 Domestic Wire Transfer Via: Suntrust ███████████ David E. Lynn, LLC Imad: 1216B1Qgc08C006175 Trn: ████████ | 7,930.00 |
|---|---|---|

*See* **Exhibit C** at 002. However, subtracting this $7,930 wire-transfer payment from the total $16,430 retainer that Debtor paid Mr. Lynn leaves $8,500 that Debtor must have drawn from another source. The bank statements that Debtor produced do not appear to reflect this additional $8,500 payment from Debtor to Mr. Lynn, suggesting that Debtor may have access to another account that she did not disclose in her bankruptcy schedules and for which she has not produced statements.

**G.**      **Singota's pending motion to compel and objections to Chapter 13 plan**

60.      As noted above, Singota has moved to compel Debtor to produce additional evidence relevant to her financial affairs and, more specifically, to whether she has filed and pursued this bankruptcy case in good faith. *See* Doc. 92.

61.      On May 6, 2020, with the Debtor's production still outstanding, Singota emailed Debtor's counsel, identifying the outstanding documents, which included:

    1. Full and complete copies of the Debtor's tax returns for 2017, 2018 and 2019.  Although the Debtor produced some partial tax returns, they were incomplete, not signed and mis-dated.
    2. Tax returns for Honeyji's
    3. Credit card statements
    4. Bank statements and cancelled checks
    5. Documents regarding the termination of her employment from Emergent Biosolutions, Inc
    6.  The appraisal for the Debtor's engagement ring
    7. Documents regarding the termination of the Debtor's employment at Merrill Corporation, to include any documents that relate to money paid to her after the termination of her employment.

*See* Doc. 92, **Exhibit D**.

# EXHIBIT 11

| Debtor 1 | **Jaspreet Kaur Attariwala** | | Case number *(if known)* | 19-00828 |

| | | | |
|---|---|---|---|
| 17.3. | **Checking** | Bank of America checking. Owned by the Debtor and her husband. | $816.23 |
| 17.4. | **Savings** | Bank of America savings account. Owned by the Debtor and her husband. | $38.21 |

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ☑ No
    ☐ Yes.................   Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and joint venture**
    ☐ No
    ☑ Yes. Give specific information about them...................
    
| Name of entity: | % of ownership: | |
|---|---|---|
| **Honey Ji cheesecake business. Inactive since late 2018.** | 100% % | $0.00 |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ☑ No
    ☐ Yes. Give specific information about them
        Issuer name:

21. **Retirement or pension accounts**
    *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
    ☐ No
    ☑ Yes. List each account separately.

| Type of account: | Institution name: | |
|---|---|---|
| **401(k)** | 401(k) account, in custody of Principal. Amount shown is approximate. | $5,500.00 |
| **IRA** | Individual retirement account, in custody of JP Morgan Chase. Account No. . . . 8645. | $94,150.64 |
| **Roth IRA** | Roth IRA, in custody of JP Morgan Chase. Account No. . . . 1978. | $27,912.71 |
| **401(k)** | 401(K) retirement account, in custody of John Hancock. Amount shown is approximate. | $15,500.00 |

22. **Security deposits and prepayments**
    Your share of all unused deposits you have made so that you may continue service or use from a company
    *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
    ☑ No
    ☐ Yes. ....................   Institution name or individual:

23. **Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
    ☑ No
    ☐ Yes.............   Issuer name and description.

24. **Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
    26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
    ☑ No

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                   Best Case Bankruptcy

# EXHIBIT 12

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x

IN RE:                          Bankruptcy Petition No:
                                19-00828-SMT

JASPREET ATTARIWALA,

                      Debtor,

- - - - - - - - - - - - - - x
                                Washington, D.C.
                                Friday, August 21, 2020
                                9:30 a.m.

_____

TRANSCRIPT OF TELEPHONIC EVIDENTIARY HEARING
HELD BEFORE THE HONORABLE MARTIN S. TEEL, JR.
UNITED STATES DISTRICT JUDGE

_____

APPEARANCES:

        For the Debtor: DAVID E. LYNN, ESQ.
                        15245 Shady Grove Rd., Suite 465 N
                        Rockville, MD 20850
                        (301) 255-0100


        For BioConvergence: NELSON C. COHEN, ESQ.
                        Whiteford Taylor & Preston L.L.P.
                        111 Rockville Pike, Suite 800
                        Rockville, Maryland 20852
                        (301) 804-3618




        Court Reporter:     Lisa Walker Griffith, RPR
                            U.S. District Courthouse
                            Room 6507
                            Washington, D.C.  20001
                            (202) 354-3247

1  able to make those payments?

2  　　　　MS. ATTARIWALA:  I have significantly cut down my

3  expenses in order to make the payment.

4  　　　　MR. LYNN:  Are you continuing to look for

5  employment?

6  　　　　MS. ATTARIWALA:  Yes.

7  　　　　MR. LYNN:  If it were necessary, for a short period

8  of time, could you make plan payments out of exempt assets,

9  such as your retirement account?

10 　　　　MS. ATTARIWALA:  I could.

11 　　　　MR. LYNN:  Have you missed any of the plan

12 payments, whatsoever, that have come due since this case was

13 filed?

14 　　　　MS. ATTARIWALA:  No.

15 　　　　MR. LYNN:  I have nothing further, Your Honor.

16 　　　　MR. COHEN:  I'm sorry, Your Honor, I keep trying to

17 talk without taking it off of mute.  Nelson Cohen on behalf

18 of Singota.

19 　　　　Isn't it true, Ms. Attariwala, that you've

20 testified in the past that the reason you filed this

21 bankruptcy was because of the litigation pending against you

22 by Singota?

23 　　　　MS. ATTARIWALA:  No.

24 　　　　MR. COHEN:  You deny that fact?

25 　　　　MS. ATTARIWALA:  I never said that.

# EXHIBIT 13

| | |
|---|---|
| **From:** | Rebecca Green <rgreen@theESIteam.com> |
| **Sent:** | Monday, September 9, 2019 11:57 AM |
| **To:** | Paul.L.Jefferson; Murray, Christopher C. |
| **Cc:** | Erik C. Johnson; Cynthia.A.Bedrick; Jody.M.Butts; Allen, Justin A.; Jackson, Susan H. |
| **Subject:** | Singota v. Attariwala - Attariwala ESI Delivery to MSTH |

As shown in the Proof of Delivery below, Attariwala ESI, marked Attorney's Eyes Only, was delivered to Jody Butts at the MSTH Shelbyville Office.  The passwords have been sent to the MSTH counsel via a separate email.

## Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1Z5Y63F10169887578

**Service**
UPS Next Day Air®

| **Delivered On** | **Received By** |
|---|---|
| 09/09/2019 10:14 A.M. | MCCFARLAND |
| **Delivered To** | **Left At** |
| SHELBYVILLE, IN, US | Inside Delivery |

On the external drive contained in the box marked Western Digital For MAC, is a full image of the MacBook produced in this matter. The image can be read by multiple E-Discovery tools and, for your convenience, a copy of FTK Imager is contained on the non-MAC External Drive.

The other (non-MAC) drive is encrypted with Bitlocker and the password has been provided to MSTH attorneys.  On that drive are the following folders and sub-folders:

- ⌄ 📁 Attariwala OnLine Accounts
  - › 📁 Google Drive A
  - › 📁 Google Drive B
  - 📁 Attariwala Seagate E01 Image
  - 📁 Attariwala Surface
  - ⌄ 📁 Attariwala USB Images
    - 📁 BioC_A
    - 📁 BioC_B
    - 📁 Kingston
    - 📁 LifeSciences
    - 📁 SanDisk_A
    - 📁 SanDisk_B
    - 📁 SanDisk_C
    - 📁 Singota
  - › 📁 FTK Imager

Google Drive A is the jsaini1@gmail.com account collected via Google Archive on 3/28/2019 with the Google Defaults.  Google Drive B is the jsaini1@gmail.com account collected via Google Archive on 4/4/2019 with ALL Options selected.

The rest of the items are self-explanatory by their folder title.  These are image files which can be read using FTK Imager; also included.

To use FTK Imager, launch the application using the FTK Imager.exe file and then select File | Add Evidence File.  Then choose Image File and navigate to the folder | file you wish to review.  You can use FTK Imager to view the Google Drive folders as well. The process is one of expanding folders and clicking on file names to see  them in the preview pane.

All the Best,
Rebecca Green
Electronic Discovery & Digital Forensics
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 14

| | |
|---|---|
| **From:** | Rebecca Green <rgreen@theESIteam.com> |
| **Sent:** | Saturday, May 25, 2019 10:46 PM |
| **To:** | paul.l.jefferson@msth.com; Jody.M.Butts; Erik C. Johnson |
| **Cc:** | Murray, Christopher C.; Jackson, Susan H.; Kistler, Dayna M. |
| **Subject:** | Attariwala Production For MSTH's Review |

I have sent to the three MSTH attorneys a separate email with access to a Microsoft OneDrive Share.



In that Share you will have access to read the following items:



==JSA-0000001 THROUGH JSA-0000390== is the first Batch of Documents for your review using the protocol from Monroe County. I have marked them Attorneys Eyes Only since I have not seen a Protective Order.

These were items harvested from the Jsaini1@gmail.com account.

There were 16 items which were challenging to generate as a PDF. Therefore, I have included them in the Folder labeled *Batch 01 – Unable to PDF* and the following are their file names. Note that when a file name is duplicative, then the number in the brackets (e.g. [61024]) is simply the ID number from my database.

1

All Contacts.vcf

Approved Leadsheet 2018 USA.xlsx

Approved Leadsheet 2018 USA[61024].xlsx

Illinois and Michigan 13 MAR 2015 Leads BioPharmguy.xlsx

Illinois and Michigan 13 MAR 2015 Leads BioPharmguy[2677].xlsx

Illinois and Michigan 13 MAR 2015 Leads BioPharmguy[60948].xlsx

jsaini1@gmail.com.ics

Leads Biopharm insight US companies 2018.xls

Leadsheet 2018 contacts Canada.xlsx

Leadsheet 2018 contacts USA.xlsx

Leadsheet USA lyo 2018.xlsx

MyActivity.html

MyActivity[6268].html

MyActivity[7717].html

MyActivity[7721].html

partneringONE_companies_30.12.2015.xls

Please let me know by Friday, May 31, 2019 at 8:00AM if any of these items should be withheld from Plaintiff's counsel. Otherwise, I will release these items shortly thereafter on Friday, May 31, 2019.

Additional batches will follow. Don't hesitate to let me know if you have any questions or concerns.

Kind Regards,
Rebecca Green

The ESI Team
 -   Electronic Discovery and Digital Forensics

Nationwide ESI Services Offered
317-527-0002 (voice)

NOTICE: If received in error, do not read, copy, or distribute and, please, delete immediately. Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 15

| **From:** | Rebecca Green <rgreen@theESIteam.com> |
|---|---|
| **Sent:** | Monday, August 5, 2019 9:29 PM |
| **To:** | Paul.L.Jefferson; Murray, Christopher C. |
| **Cc:** | Erik C. Johnson; Cynthia.A.Bedrick; Jody.M.Butts; Jackson, Susan H.; Kistler, Dayna M. |
| **Subject:** | Singota v. Attariwala |

Uploaded to each of your respective OneDrive shares in this matter are the following file listings:



USB_Singota.E01.csv

USB_SanDisk_C.E01.csv

USB_SanDisk_B.E01.csv

USB_SanDisk_A.E01.csv

USB_LifeSciences.E01.csv

USB_Kingston.E01.csv

USB_BioC_B.E01.csv

USB_BioC_A.E01.csv

Seagate_Ext_HD.E01.csv

Tomorrow I will be uploading more files and will send follow-up emails when the uploads are completed.

Thank you.  Let me know if you have any questions.

All the Best,
Rebecca Green
Electronic Discovery & Digital Forensics
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 16

| **From:** | Rebecca Green <rgreen@theESIteam.com> |
| **Sent:** | Monday, November 25, 2019 10:33 AM |
| **To:** | Paul.L.Jefferson; Erik C. Johnson; Jody.M.Butts |
| **Cc:** | Murray, Christopher C.; Allen, Justin A.; Jackson, Susan H. |
| **Subject:** | Leads-Emergent - Document Production |
| **Attachments:** | Leads - Emergent_.xlsx |

Attached is the Leads – Emergent Document harvested from Ms. Attariwala's Google Docs.

I was able to successfully open it in Excel.  However, you will get the following message:

> Excel completed file level validation and repair. Some parts of this workbook may have been repaired or discarded.
> Removed Records: Formula from /xl/worksheets/sheet5.xml part

Since this spreadsheet contains contact information (vs. formulas); this message seems innocuous.

Kind Regards,
Rebecca Green

The ESI Team
- Electronic Discovery and Digital Forensics

Nationwide ESI Services Offered
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 17

**From:** Rebecca Green <rgreen@theESIteam.com>
**Sent:** Friday, November 29, 2019 1:05 PM
**To:** Paul.L.Jefferson; Jody.M.Butts; Erik C. Johnson
**Cc:** Murray, Christopher C.; Allen, Justin A.; Jackson, Susan H.
**Subject:** Release of Files to Ogletree Deakins

Paul,

Chris Murray has requested a copy of the Jessie Docs folder.  I sent that information to your firm (Jody Butts' attention) via an external hard drive on September 9, 2019.  Since that time, I have not received any objections from you regarding those files.

Please confirm receipt of this email.  Chris Murray has asked that I release the Jessie Docs folder from the Seagate external drive, which is known to contain Singota ESI.  I intend to release those files at 1:00 PM on Monday, December 2, 2019 because I have received no objections from you.

Thank you in advance for your immediate response to confirm receipt of this email.

Kind Regards,
Rebecca Green

The ESI Team
- Electronic Discovery and Digital Forensics

Nationwide ESI Services Offered
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 18

| | |
|---|---|
| **From:** | Jessie Attariwala <jattariwala6@gmail.com> |
| **Sent:** | Wednesday, September 2, 2020 3:03 PM |
| **To:** | Murray, Christopher C. |
| **Subject:** | Re: SINGOTA - ATTARIWALA - Your discovery to Rebecca Green |

*[Caution: Email received from external source]*

Chris,

1. I will withdraw the deposition request until Ms. Green files her expert disclosures.
2. As to whether or not Ms. Green considers herself as doing business in Washington, D.C., that is for Ms. Green to say. Please provide me with evidence that validates your contention and her position of such.
3. My understanding is that the expense order is a pre-petition debt.
4. I intend to oppose your motion to quash the written discovery served onto Ms. Green on August 19, 2020 for the following reasons. I have asked for you to specifically detail which request for production you have an issue with. I have not received an answer other than your generalized accusations. There are reasonable methods in which Singota could protect its confidential and trade secret information within discovery production. What would be your proposal for that?

~Jaspreet Attariwala

On Wed, Sep 2, 2020 at 11:22 AM Murray, Christopher C. <christopher.murray@ogletree.com> wrote:

Dear Ms. Attariwala,

We are required to inform the Court whether our motion to quash will be opposed.  Please let me know if you intend to oppose our motion.

Thank you,

Chris Murray

**Christopher C. Murray | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
111 Monument Circle, Suite 4600 | Indianapolis, IN 46204 | Telephone: 317-916-2522 | Fax: 317-916-9076
christopher.murray@ogletree.com | www.ogletree.com | Bio

**From:** Murray, Christopher C.
**Sent:** Tuesday, September 1, 2020 8:08 PM
**To:** 'Jessie Attariwala' <jattariwala6@gmail.com>

**Cc:** Kistler, Dayna M. <dayna.kistler@ogletreedeakins.com>; Allen, Justin A. <justin.allen@ogletreedeakins.com>; Jack, Christina <Christina.Jack@ogletreedeakins.com>
**Subject:** RE: SINGOTA - ATTARIWALA - Your discovery to Rebecca Green

Dear Ms. Attariwala:

1.    The email you sent me on August 17, 2020, at 3:30 PM did not contain a subpoena or a notice of deposition.  The email is attached for your reference.

2.    As I've noted below and in my other email today, Singota will not accept service of papers by email if you do not consent to service by email as well.

3.    We dispute your contention that Ms. Green is doing business in Washington D.C.

4.    The state court orders, including the Expenses Order, remain in effect.  Your bankruptcy applies only to debts incurred prior to the filing of your petition on December 17, 2019.

5.    You cannot properly obtain copies of Singota's confidential and trade secret information, which you are barred from possessing, by obtaining copies of that information from Ms. Green or any other third-party.  Your attempting to do so violates the Judge Barker's preliminary injunction and the state court's preliminary injunction and attempts to circumvent the inspection order and expenses orders.

6.    The case management order sets the deadlines for Ms. Green and any other expert to produce their reports and make the required disclosures under Federal Rule of Civil Procedure 26.

We will file a motion to quash your subpoenas to Ms. Green tomorrow if you do not withdraw them.

Sincerely,

Chris Murray

**Christopher C. Murray | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
111 Monument Circle, Suite 4600 | Indianapolis, IN 46204 | Telephone: 317-916-2522 | Fax: 317-916-9076
christopher.murray@ogletree.com | www.ogletree.com | Bio

**From:** Jessie Attariwala <jattariwala6@gmail.com>
**Sent:** Friday, August 28, 2020 2:21 PM
**To:** Murray, Christopher C. <Christopher.Murray@ogletreedeakins.com>
**Subject:** Re: SINGOTA - ATTARIWALA - Your discovery to Rebecca Green

**[Caution: Email received from external source]**

Chris,

On August 12, 2020 you wrote to me stating Singota's objection to the August 7th, 2020 subpoena served onto Ms. Green and further requested me to withdraw it immediately. I promptly followed the rule and served notice to Singota shortly thereafter. Singota did not waive the 7 day notice period and I again served Ms. Green on August 19, 2020. Singota has had a copy of the request for production since at least August 11 and it is really telling that Singota waited until the last minute to notify me of the objections and are expecting a pro-se defendant to respond with such little time to request attorneys fees.

Nonetheless, below in blue are my responses and questions to your objections.

1. You failed to serve your deposition subpoena on Singota. We only received a copy of it from Ms. Green. You must serve us with copies of all discovery and filings as required by Federal Rule of Civil Procedure 5(a)(1). In addition, Federal Rule of Civil Procedure 30(b)(1) requires that "A party who wants to depose a person by oral questions must give reasonable written notice to every other party." The contents of the required notice are set forth in Rule 30. A naked subpoena does not satisfy the requirements of Rule 30. *See, e.g.*, Cole v. City of New York, No. 10 CIV. 5308 BSJ KNF, 2012 WL 1138570, at *4 (S.D.N.Y. Apr. 5, 2012) (a copy of a deposition subpoena duces tecum is not a substitute for the "reasonable written notice," required by Rule 30 to be provided to the parties prior to the service of that subpoena).

Your subpoena to Ms. Green did not include a notice of deposition and fails to satisfy the requirements of Rule 30. In addition, your subpoena purports to require her deposition by "Zoom." However, Rule 30(b)(4) requires you to obtain our stipulation or a court order allowing a deposition by remote means, which you have not done.

(On a side note, you and Singota have typically been serving one another by email. This arrangement is acceptable to Singota but you and Singota must formally agree in writing that each party will accept service by email. Please see Federal Rule of Civil Procedure 5(b)(2)(E). We will confirm Singota's consent to accept service of your filings and discovery by email if you confirm your consent to receive our filings and discovery by email. Please confirm your consent.)

3

In addition, your subpoena to Ms. Green for the production of documents identifies the place of production as your address in Washington, D.C.  Rule 45(c)(2) requires that any production of documents be within "100 miles of where the person resides, is employed, or regularly transacts business in person." To our knowledge, Ms. Green does not live, is not employed, and does not regularly transact business within 100 miles of Washington D.C.

On August 17, 2020 at 3:30pm, I served Singota a notice of a deposition and subpoena that would be served onto Ms. Green on August 24th, 2020. The service was made onto Green by email and certified mail. Singota failed to point out any deficiencies such as a lack of subpoena attachment. Please see the attached subpoena for your reference.

The deposition will be conducted remotely via Zoom, do you consent the deposition to be conducted by Zoom?

Ms. Green is doing business in DC as she has accepted my check for payment of services, has also received my devices and accounts, and will likely continue to seek payment for services from me. She is regularly conducting businesses as it relates to this matter and is representing herself in a Bankruptcy Court suit against her. Would your office be willing to accept production where I can arrange for pickup?

2.     In addition, Ms. Green serves as a testifying expert for Singota.  Federal Rule of Civil Procedure 26 and the case management plan entered in this case govern expert disclosures and discovery. Under Rule 26(b)(4)(A), you may not take Ms. Green's deposition until after she has served her expert disclosures required under Rule 26(A)(2)(a).  Moreover, under Rule 26(b)(4)(E), you must pay for Ms. Green's reasonable fees in responding to your discovery, including preparing for and attending any deposition.  You have not made any arrangements to pay for Ms. Green's fees.  You are also required to pay for her expenses under the order entered by the state court on March 18, 2019, which you have not done or arranged to do. We believe you may not use a deposition subpoena to try to obtain information from her in circumvention of your obligations under that expenses order.

The State Court order you are referring to are claims on her fees.  Due to my Bankruptcy confirmation on August 24, 2020, I am not currently obliged to pay at this time. A deposition subpoena can hardly be seen as a circumvention to my obligations. Furthermore, Ms. Green never responded to any of my emails requesting discovery and deposition and she could have informed me of such fee requirements on at least two occasions. I also did not hear from you when I served Singota notice of such discovery and deposition on at least two occasions. That said, what are her fees for attending and preparing a deposition? Also when does she plan to serve her expert disclosures?

3.     Your written discovery requests to Ms. Green go far beyond Ms. Green's opinions and "the facts or data considered by [Ms. Green] in forming them." Rule 26(a)(2)(B). They also go well beyond the scope of Rule 26(b)(1) by seeking evidence that is not relevant and unduly burdensome. They also place an undue burden and expense on Ms. Green in violation of Rule 45(d)(1) by, among other things, purporting to require her to do work without your arranging to pay her compensation. Moreover, some of your requests apparently seek to circumvent the preliminary injunctions, expenses order, and protective order in this case by seeking the production of data and documents that you may not possess under those various orders, which we believe would be in contempt of the Court's orders.

What specifically are your objections? See my above response regarding payment. The discovery requests are something I am entitled to and necessary to resolve facts in dispute.

4.     Many of your written discovery requests to Ms. Green also violate Rule 26(b)(4)(C), which protects communications between Singota's counsel and Ms. Green except with respect to certain defined exceptions.

In detail and with specificity, what are your objections?

~ Jaspreet Attariwala

On Thu, Aug 27, 2020 at 5:44 PM Murray, Christopher C. <christopher.murray@ogletree.com> wrote:

Dear Ms. Attariwala:

Ms. Green has informed us that on August 24, 2020, you served a subpoena for her deposition on September 10, 2020.  She has also informed us that on August 19, 2020, you served a subpoena on her for the production of documents by September 9, 2020.

We object to these subpoenas for the following reasons and request that you withdraw them:

1.     You failed to serve your deposition subpoena on Singota. We only received a copy of it from Ms. Green. You must serve us with copies of all discovery and filings as required by Federal Rule of Civil Procedure

5(a)(1). In addition, Federal Rule of Civil Procedure 30(b)(1) requires that "A party who wants to depose a person by oral questions must give reasonable written notice to every other party." The contents of the required notice are set forth in Rule 30. A naked subpoena does not satisfy the requirements of Rule 30.  *See, e.g.*, Cole v. City of New York, No. 10 CIV. 5308 BSJ KNF, 2012 WL 1138570, at *4 (S.D.N.Y. Apr. 5, 2012) (a copy of a deposition subpoena duces tecum is not a substitute for the "reasonable written notice," required by Rule 30 to be provided to the parties prior to the service of that subpoena).

Your subpoena to Ms. Green did not include a notice of deposition and fails to satisfy the requirements of Rule 30.  In addition, your subpoena purports to require her deposition by "Zoom." However, Rule 30(b)(4) requires you to obtain our stipulation or a court order allowing a deposition by remote means, which you have not done.

(On a side note, you and Singota have typically been serving one another by email.  This arrangement is acceptable to Singota but you and Singota must formally agree in writing that each party will accept service by email. Please see Federal Rule of Civil Procedure 5(b)(2)(E).  We will confirm Singota's consent to accept service of your filings and discovery by email if you confirm your consent to receive our filings and discovery by email.  Please confirm your consent.)

In addition, your subpoena to Ms. Green for the production of documents identifies the place of production as your address in Washington, D.C.  Rule 45(c)(2) requires that any production of documents be within "100 miles of where the person resides, is employed, or regularly transacts business in person." To our knowledge, Ms. Green does not live, is not employed, and does not regularly transact business within 100 miles of Washington D.C.

2.     In addition, Ms. Green serves as a testifying expert for Singota.  Federal Rule of Civil Procedure 26 and the case management plan entered in this case govern expert disclosures and discovery. Under Rule 26(b)(4)(A), you may not take Ms. Green's deposition until after she has served her expert disclosures required under Rule 26(A)(2)(a).  Moreover, under Rule 26(b)(4)(E), you must pay for Ms. Green's reasonable fees in responding to your discovery, including preparing for and attending any deposition.  You have not made any arrangements to pay for Ms. Green's fees.  You are also required to pay for her expenses under the order entered by the state court on March 18, 2019, which you have not done or arranged to do. We believe you may not use a deposition subpoena to try to obtain information from her in circumvention of your obligations under that expenses order.

3.     Your written discovery requests to Ms. Green go far beyond Ms. Green's opinions and "the facts or data considered by [Ms. Green] in forming them." Rule 26(a)(2)(B). They also go well beyond the scope of Rule 26(b)(1) by seeking evidence that is not relevant and unduly burdensome. They also place an undue burden and expense on Ms. Green in violation of Rule 45(d)(1) by, among other things, purporting to require her to do work without your arranging to pay her compensation. Moreover, some of your requests apparently seek to circumvent the preliminary injunctions, expenses order, and protective order in this case by seeking the

production of data and documents that you may not possess under those various orders, which we believe would be in contempt of the Court's orders.

4.   Many of your written discovery requests to Ms. Green also violate Rule 26(b)(4)(C), which protects communications between Singota's counsel and Ms. Green except with respect to certain defined exceptions.

We demand that you withdraw both of these subpoenas for the reasons set forth above. If you fail to do so by  3 P.M, tomorrow, Friday, August 28, 2020 , we will move to quash them and will seek reimbursement of our fees for doing so.

Sincerely,

Chris Murray

**Christopher C. Murray | Ogletree, Deakins, Nash, Smoak & Stewart, P.C.**
111 Monument Circle, Suite 4600 | Indianapolis, IN 46204 | Telephone: 317-916-2522 | Fax: 317-916-9076
christopher.murray@ogletree.com | www.ogletree.com | Bio

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

*This transmission is intended only for the proper recipient(s). It is confidential and may contain attorney-client privileged information. If you are not the proper recipient, please notify the sender immediately and delete this message. Any unauthorized review, copying, or use of this message is prohibited.*

# EXHIBIT 19

**Subject:**                          FW: Jaspreet Attariwala

**From:** David Lynn <davidlynn@verizon.net>
**Sent:** Friday, February 14, 2020 4:02 PM
**To:** Rebecca Green <rgreen@theESIteam.com>
**Cc:** 'Cohen, Nelson C.' <ncohen@wtplaw.com>
**Subject:** Jaspreet Attariwala

Ms. Green:
I am Ms. Attariwala's bankruptcy attorney.
She wishes access to her "Honey Ji" information so that she may restart that business.
To do that, she would require:
1.      Access to her Facebook and Instagram accounts, which are the social media on which the business relies.
2.      Renewed control over honeyjiiscorp@gmail.com to resume contact with vendors and customers.
3.      Access to Dropbox and Box - info@honeyji.com, which contain recipes, accounting, etc.
I made that request of Singota's attorneys, who asked me to contact you directly.
Thank you.
David Lynn

**CONFIDENTIALITY NOTICE**:  This e-mail is intended only for the person to whom it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  If you are not the intended recipient, you are hereby notified that reading, distributing, copying, re-transmitting or any other publication of this e-mail is prohibited.  If you have received this e-mail in error, please destroy it and notify us at (301) 255-0100.

# EXHIBIT 20

**Subject:**                          FW: Jaspreet Attariwala

**From:** Rebecca Green <rgreen@theESIteam.com>
**Sent:** Wednesday, February 19, 2020 3:40 PM
**To:** David Lynn <davidlynn@verizon.net>
**Cc:** 'Cohen, Nelson C.' <ncohen@wtplaw.com>; Murray, Christopher C. <christopher.murray@ogletree.com>
**Subject:** RE: Jaspreet Attariwala

As I recall the protocol filed in this matter states that no account or device can be returned until the protocol work is complete (collecting, examining, removing ESI that does not belong to her, etc.).  That work was suspended when Ms. Attariwala refused to replenish the retainer; nearly a year ago.

Chris Murray might be able to give further insight, but I believe the court ordered a $55,000 payment to be deposited with the court to continue the work.  I have copied him on this email.

I would need Singota's approval to carve out just the items below into a separate protocol and my standard retainer of $5,000 would be due to get started.  It is possible that I could complete the work within the retainer, but given I have not examined some of these accounts (because work was suspended when the retainer was depleted), I cannot be certain of that fact until I see the volume.

Since I do not work for free, I would not be willing to do any work until my standard retainer is paid.

I hope this provides some insight to your options for next steps.

All the Best,
Rebecca Green
Electronic Discovery & Digital Forensics
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

**From:** David Lynn <davidlynn@verizon.net>
**Sent:** Friday, February 14, 2020 4:02 PM
**To:** Rebecca Green <rgreen@theESIteam.com>
**Cc:** 'Cohen, Nelson C.' <ncohen@wtplaw.com>
**Subject:** Jaspreet Attariwala

Ms. Green:
I am Ms. Attariwala's bankruptcy attorney.
She wishes access to her "Honey Ji" information so that she may restart that business.
To do that, she would require:
1.     Access to her Facebook and Instagram accounts, which are the social media on which the business relies.
2.     Renewed control over honeyjiscorp@gmail.com to resume contact with vendors and customers.
3.     Access to Dropbox and Box - info@honeyji.com, which contain recipes, accounting, etc.
I made that request of Singota's attorneys, who asked me to contact you directly.
Thank you.
David Lynn

**CONFIDENTIALITY NOTICE**:  This e-mail is intended only for the person to whom it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  If you are not the intended recipient, you are hereby notified that reading, distributing, copying, re-transmitting or any other publication of this e-mail is prohibited.  If you have received this e-mail in error, please destroy it and notify us at (301) 255-0100.

# EXHIBIT 21

**Subject:**                              FW: Jaspreet Attariwala

**From:** David Lynn <davidlynn@verizon.net>

**Sent:** Thursday, March 5, 2020 7:09:28 PM

**To:** Rebecca Green <rgreen@theESIteam.com>

**Cc:** 'Cohen, Nelson C.' <ncohen@wtplaw.com>

**Subject:** Jaspreet Attariwala

Ms. Green:

As you know, I represent Jaspreet Attariwala in her Chapter 13 bankruptcy pending before the United States Bankruptcy Court for the District of Columbia.

I am writing directly to you, rather than through Singota's counsel, at their express direction.

Ms. Attariwala requires access to certain things relating to her "Honey Ji" baking business which is important to her ability to generate income in light of her termination by Emergent.

Specifically, this is what she needs:

• Facebook account – manages the profile page for Honey Ji for advertising and taking online orders

• Instagram – manages the profile page for Honey Ji for marketing

• Email account for Honeyjiscorp@gmail.com which is linked to info@honeyji.com, which includes correspondence with vendors and contracts.  Access to that account is necessary to continue such correspondence.

• "Box" account.  I believe that on page 18 of your third report, there is a list of the Honey Ji Folder Documents in the "Box" account. The "Box" account appears to show that it is clearly labeled.

***None of these files/accounts*** should implicate Singota or anything that is the subject of the litigation in Indiana.

Sections 542 and 543 of the Bankruptcy Code (11 U.S.C. §§ 542 & 543) provide for the turnover of property to a debtor's bankruptcy estate.

Those sections require the turnover to the bankruptcy estate of property of the debtor and property that may be used by the trustee, or that the debtor may claim as exempt.

In a Chapter 13 case, the debtor has the rights of a trustee with respect to use of property, pursuant to Sections 1303 and 1304 of the Bankruptcy Code.

Kindly provide the things requested above to us immediately, failing which we shall have to request the Bankruptcy Court to enter an order to that effect, in which case we would also request an award of attorney's fees and costs for having to do so.

I trust that will not be necessary.

Thank you.

David Lynn

**CONFIDENTIALITY NOTICE**:  This e-mail is intended only for the person to whom it is addressed and may contain information that is privileged, confidential or otherwise protected from disclosure.  If you are not the intended recipient, you are hereby notified that reading, distributing, copying, re-transmitting or any other publication of this e-mail is prohibited.  If you have received this e-mail in error, please destroy it and notify us at (301) 255-0100.

# EXHIBIT 22

| From: | Rebecca Green <rgreen@theESIteam.com> |
|---|---|
| Sent: | Wednesday, May 20, 2020 4:58 PM |
| To: | David Lynn |
| Subject: | Attariwala Bankruptcy Matter/Green Response |
| Attachments: | 537617313.pdf; 2019-03-04 - Order for Inspection of Computers.PDF; 2019-03-04 - Order Issued - Stipulated Preliminary Injunction.PDF; Doc. 122 - Preliminary Injunction.PDF; 2019-03-18 - Supplemental Order Following Preliminary Injunction Hearing.PDF; Re: Jaspreet Attariwala |

Mr. Lynn,

I have received the attached document in the matter where you are representing Ms. Attariwala in the Bankruptcy court.  I understand I'm required to respond by May 27.

Would you please let me know if you will agree to a 30 day extension for me to respond?  I am in the process of obtaining counsel.

In addition, I hope we could use the extra time to try to resolve this matter.

First, I wanted to make sure you are aware that I was appointed by the Indiana state court as an "officer of the court" to handle the collection and review of ESI in the litigation there.  The orders are attached in case Ms. Attariwala did not provide them to you.  As you'll see in the Stipulated Preliminary Injunction, the Court ordered that "Ms. Green, acting as an officer of the court, shall conduct an inspection of these devices, media, accounts, and computers in accordance with the Agreed Order for Inspection of Computers and Electronic Information Storage Devices entered in this action and incorporated herein by reference."

I am struggling with how I can comply with the Indiana Court's order and your request to return to Ms. Attariwala the data I was ordered to collect and analyze.

I suggest the easiest way to resolve this matter is simply to follow the Agreed Order for Inspection of Computers and Electronic Information Storage Devices, which, as far as I know, still governs how I am required to handle the devices, accounts, and information produced to me in the Indiana litigation.

I think this approach would solve both of our problems by allowing me to continue to comply with the Indiana court orders and provide a way for Ms. Attariwala to get back the data and documents she says she wants returned.  (Also for your information, this was how we have handled these issues in the past, for example, when Ms. Attariwala asked me earlier in this case to look for tax records she believed were on one of her computers. I assume you are not aware that I had discussions about this with Ms. Attariwala's counsel in Indiana back in March and April of 2019.)

What I would need from you is a very detailed list of whatever documents Ms. Attariwala would like returned.  I will then have to analyze those documents to ensure they do not contain Singota's ESI and will have to follow the other steps outlined in the Inspection Order.

Obviously, the more documents or accounts Ms. Attariwala asks for, the more time and cost it will take for me to review and prepare them for return.  If it is simply a few PDF, Excel, or Word documents, and if she can tell me where they are located, I might be able to complete this work in just a few hours for a few thousand dollars. (My 2020 hourly rate is $550.)  On the other hand, if she wants the return of entire email or cloud accounts, the cost could become quite high because that would require me to spend a lot of time attempting to identify Singota ESI.  As you may not be aware, my work in the Indiana case found that Ms. Attariwala had Singota ESI intermingled with her own data in many accounts

1

and on many devices, including ones that relate to HoneyJi.  For example, I found Singota data on the Microsoft Surface computer that Ms. Attariwala said she purchased in November 2018 for use for the Honey Ji business.

As a fellow professional, I am sure you will also understand that I will need a retainer from Ms. Attariwala (or from Honey Ji) before I can start performing this work. Ms. Attariwala provided me a $5000 retainer in March of 2019 but she would not replenish it at that time after it had been exhausted. I'm not willing to get "into a hole" again doing this type of work, which I'm sure you can understand is reasonable.

I would be willing to start this work for the same retainer we used before of $5000. I will also obviously be happy to provide you detailed billing records.

To summarize, here are two general approaches I see for resolving these issues:

Option #1  - Ms. Attariwala identifies specific documents, and I analyze them under the Inspection Order
   a)  Ms. Attariwala identifies the specific ESI she seeks including location and file / folder names.
   b)  I extract that information
   c)  I review the ESI to ensure no Singota ESI is contained within the requested information as required by the Inspection Order
       a.  For items where I am unable to determine if the ESI is not Singota's ESI, then Singota's counsel reviews that specific ESI.
   d)  Ms. Attaiwala creates new accounts and acquires new devices and receives a copy of the cleared ESI on a USB device.
   e)  Cost: if we are talking about just a few documents that I can easily identify, collect, and review, perhaps well under $5,000. Obviously, the more data requested, the more time required for me to analyze.

Option #2 – Ms. Attariwala identifies entire Devices and Accounts, and I analyze them under the Inspection Order
   a)  For Devices, the above steps in Option #1 are applied.
   b)  For Accounts, Singota's ESI is identified and removed as required by the Inspection Order
   c)  Cost: this approach would require significantly more time. We can talk about cost estimates for specific accounts and/or devices if you'd like.

As I mentioned, my retainer for this work would be $5,000 and my hourly rate is $550 per hour to conduct the work.

Please let me know if you'll agree to the extension of time.  In addition, please let me know your thoughts on this proposed resolution. I hope you can understand that I must comply with the orders appointing me as an officer of the court and setting out how I am required to handle this data.


Kind Regards,
Rebecca Green

The ESI Team
 -   Electronic Discovery and Digital Forensics

Nationwide ESI Services Offered
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 23

**Subject:**                        FW: Attariwala Bankruptcy Matter/Green Response

**From:** David Lynn <davidlynn@verizon.net>

**Sent:** Thursday, May 21, 2020 6:31:41 PM

**To:** Rebecca Green <rgreen@theESIteam.com>

**Cc:** 'Cohen, Nelson C.' <ncohen@wtplaw.com>

**Subject:** RE: Attariwala Bankruptcy Matter/Green Response

Ms. Green:

I'm responding to your message from yesterday afternoon, which I have carefully read.

All things being equal, it is my policy to acquiesce when another party requests extra time for a particular reason. However, in this case all things are not equal.

You have known of our request for the return of the Honey Ji material at least since my e-mail to you of March 5, 2020, to which I do not believe I received a response. (Please correct me if I am wrong.)

Ms. Attariwala is required to demonstrate to the Bankruptcy Court her earning capacity.  Part of that requires access to the Honey Ji material.

I mailed the Bankruptcy Court papers to you at the end of April.  You've had almost three weeks already to obtain counsel.

You've referred me to the Order for Inspection of Computers and Electronic Information Storage Devices and to the Preliminary Injunction Orders entered by the Circuit Court of Monroe County, Indiana.  I observe that those Orders were entered more than one year ago, after which the files and accounts we have requested were turned over to you.

You have acknowledged that Ms. Attariwala previously paid you $5,000 and Singota has told the Bankruptcy Court that *it* has paid you $141,539.88.

I conclude that you have had ample time and money to review the "Honey Ji" material for any Singota-related material. Surely by now you know precisely where the Honey Ji data and related accounts are located.

I can't find any provision of bankruptcy law that allows you to withhold the Honey Ji material.  If you have authority to the contrary, please refer me to it.

If my position appears a bit hard to you, perhaps it would have been less so had you replied to my March 5, 2020 e-mail. Bankruptcy law allows for ***damages*** to be assessed against a person or entity who refuses to turn over property of a bankruptcy estate.  I hope you will not leave that as our only remedy.

Respectfully,

David Lynn

**From:** Rebecca Green <rgreen@theESIteam.com>

**Sent:** Wednesday, May 20, 2020 4:58 PM

**To:** David Lynn <davidlynn@verizon.net>

**Subject:** Attariwala Bankruptcy Matter/Green Response

Mr. Lynn,

I have received the attached document in the matter where you are representing Ms. Attariwala in the Bankruptcy court.  I understand I'm required to respond by May 27.

Would you please let me know if you will agree to a 30 day extension for me to respond?  I am in the process of obtaining counsel.

In addition, I hope we could use the extra time to try to resolve this matter.

First, I wanted to make sure you are aware that I was appointed by the Indiana state court as an "officer of the court" to handle the collection and review of ESI in the litigation there.  The orders are attached in case Ms. Attariwala did not provide them to you.  As you'll see in the Stipulated Preliminary Injunction, the Court ordered that "Ms. Green, acting as an officer of the court, shall conduct an inspection of these devices, media, accounts, and computers in accordance with the Agreed Order for Inspection of Computers and Electronic Information Storage Devices entered in this action and incorporated herein by reference."

I am struggling with how I can comply with the Indiana Court's order and your request to return to Ms. Attariwala the data I was ordered to collect and analyze.

I suggest the easiest way to resolve this matter is simply to follow the Agreed Order for Inspection of Computers and Electronic Information Storage Devices, which, as far as I know, still governs how I am required to handle the devices, accounts, and information produced to me in the Indiana litigation.

I think this approach would solve both of our problems by allowing me to continue to comply with the Indiana court orders and provide a way for Ms. Attariwala to get back the data and documents she says she wants returned.  (Also for your information, this was how we have handled these issues in the past, for example, when Ms. Attariwala asked me earlier in this case to look for tax records she believed were on one of her computers. I assume you are not aware that I had discussions about this with Ms. Attariwala's counsel in Indiana back in March and April of 2019.)

2

What I would need from you is a very detailed list of whatever documents Ms. Attariwala would like returned.  I will then have to analyze those documents to ensure they do not contain Singota's ESI and will have to follow the other steps outlined in the Inspection Order.

Obviously, the more documents or accounts Ms. Attariwala asks for, the more time and cost it will take for me to review and prepare them for return.  If it is simply a few PDF, Excel, or Word documents, and if she can tell me where they are located, I might be able to complete this work in just a few hours for a few thousand dollars. (My 2020 hourly rate is $550.)  On the other hand, if she wants the return of entire email or cloud accounts, the cost could become quite high because that would require me to spend a lot of time attempting to identify Singota ESI.  As you may not be aware, my work in the Indiana case found that Ms. Attariwala had Singota ESI intermingled with her own data in many accounts and on many devices, including ones that relate to HoneyJi.  For example, I found Singota data on the Microsoft Surface computer that Ms. Attariwala said she purchased in November 2018 for use for the Honey Ji business.

As a fellow professional, I am sure you will also understand that I will need a retainer from Ms. Attariwala (or from Honey Ji) before I can start performing this work. Ms. Attariwala provided me a $5000 retainer in March of 2019 but she would not replenish it at that time after it had been exhausted. I'm not willing to get "into a hole" again doing this type of work, which I'm sure you can understand is reasonable.

I would be willing to start this work for the same retainer we used before of $5000. I will also obviously be happy to provide you detailed billing records.

To summarize, here are two general approaches I see for resolving these issues:

Option #1  - Ms. Attariwala identifies specific documents, and I analyze them under the Inspection Order

   a)   Ms. Attariwala identifies the specific ESI she seeks including location and file / folder names.

   b)   I extract that information

   c)   I review the ESI to ensure no Singota ESI is contained within the requested information as required by the Inspection Order

      a.   For items where I am unable to determine if the ESI is not Singota's ESI, then Singota's counsel reviews that specific ESI.

   d)   Ms. Attaiwala creates new accounts and acquires new devices and receives a copy of the cleared ESI on a USB device.

   e)   Cost: if we are talking about just a few documents that I can easily identify, collect, and review, perhaps well under $5,000. Obviously, the more data requested, the more time required for me to analyze.

Option #2 – Ms. Attariwala identifies entire Devices and Accounts, and I analyze them under the Inspection Order

    a)   For Devices, the above steps in Option #1 are applied.

    b)   For Accounts, Singota's ESI is identified and removed as required by the Inspection Order

    c)   Cost: this approach would require significantly more time. We can talk about cost estimates for specific accounts and/or devices if you'd like.

As I mentioned, my retainer for this work would be $5,000 and my hourly rate is $550 per hour to conduct the work.

Please let me know if you'll agree to the extension of time.  In addition, please let me know your thoughts on this proposed resolution. I hope you can understand that I must comply with the orders appointing me as an officer of the court and setting out how I am required to handle this data.

Kind Regards,

Rebecca Green

The ESI Team

   -   Electronic Discovery and Digital Forensics

Nationwide ESI Services Offered

317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 24

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone:  317-916-1300
Facsimile:  317-916-9076
www.ogletreedeakins.com

# Ogletree
# Deakins

Christopher C. Murray
317-916-2522
christopher.murray@ogletree.com

September 11, 2020

<u>**Via Email and U.S. Mail**</u>
David E. Lynn
15245 Shady Grove Road, Suite 465N
Rockville, MD  20850

RE:    In re: Jaspreet Attariwala, Debtor
   Case No.: 19-00828-SMT

Dear Mr. Lynn:

  As you know, we represent Bioconvergence LLC d/b/a Singota Solutions in its litigation with your client, Jaspreet Attariwala, in the matter pending as *BioConvergence, LLC d/b/a Singota Solutions v. Attariwala et al.*, Case No. 1:19-cv-01745 (S.D. Ind.) ("Indiana Federal Court" or "Indiana Litigation").  This letter responds to your recent request for an estimate from Rebecca Green for providing certain accounts to Ms. Attariwala purportedly related to Honey Ji's, Inc.

## I.  <u>Your Request to Ms. Green to return or release certain Honey Ji's-related accounts</u>

  You have asked Ms. Green for an estimate of the amount of time and the expense required for her to collect, review, and potentially release to Ms. Attariwala the following accounts under the Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") entered in the Indiana Litigation:

   1.  Honey Ji files from "Box" cloud account, which Rebecca Green mapped in her report of December 3, 2019:



Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville ▪ Houston Indianapolis ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis ▪ Montréal (Canada) ▪ Morristown Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland, ME ▪ Portland, OR ▪ Raleigh ▪ Richmond St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

September 11, 2020
Page 2

    2.      Debtor's Facebook account (used for marketing).

    3.      Honey Ji's Instagram account (used for marketing):

https://www.instagram.com/honeyjidesserts/?hl=en [instagram.com]

    4.      E-mail account *honeyjiscorp@gmail.com*

**II.**    **The Indiana Court Orders that govern Ms. Green's review of Ms. Attariwala's accounts**

As you know, the Stipulated Preliminary Injunction entered by the Monroe Circuit Court ("Indiana Stated Court") on March 4, 2019:

    (5)    **order[ed] that within twenty-four (24) hours after the issuance of this order, Attariwala**, and anyone acting in concert or participation with her, **shall make available for inspection by Rebecca Green of The ESI Team any and all personal computers, hard drives, or other electronic storage devices and media devices, including servers, email accounts, cloud accounts, cell phones, smart phones, and tablets, used to store electronic information in her possession, custody or control, including, but not limited to, all computers, devices, accounts, and media identified by Ms. Green pursuant to her analysis of Ms. Attariwala's electronic storage media. Ms. Green, acting as an officer of the court, shall conduct an inspection of these devices, media, accounts, and computers in accordance with the Agree Order for Inspection of Computers and Electronic Information Storage Devices** entered in this action and incorporated herein by reference. . . [and]

    (6)    **order[ed] Attariwala not to reconstitute, recover, or in any way restore any of the Company's Confidential Information returned to the Company pursuant to this Order, including, but not limited to, by retrieving any such Confidential Information conveyed by Attariwala to any third-party**. . . .

Stipulated Preliminary Injunction ("March 4, 2019 PI") [Underlying Doc. 4-1 at 91] ¶¶ 3, 5 & 6.

In addition, as you know, the Indiana State Court issued an Agreed Order for Inspection of Computers and Electronic Information Storage Devices ("Inspection Order") on March 4, 2019. [*See* Underlying Doc. 4-1 at 97.] This Inspection Order sets out requirements for Attariwala to produce to Green accounts and devices that could contain Singota's Confidential Information as defined by the order. The State Court ordered that "Attariwala shall not access any Storage Location where ESI responsive in the matter may be contained until Green can complete her examination of that specific storage location" and that Green "will determine the order of priority that Storage Locations will be examined based on information supplied by" Attariwala. (*Id.* ¶¶ 6–7.)

September 11, 2020
Page 3

The Inspection Order also sets out detailed procedures for Green's work, including for (1) identifying additional devices and accounts that Attariwala may have failed to produce, (2) developing a plan for searching the produced devices and accounts for Singota's data, (3) executing that plan, (4) informing the parties of any Singota data that she locates on Attariwala's devices and account, including allowing Attariwala's counsel three days to review such data for any information that might be personal and confidential to Attariwala, (5) returning copies of Singota's recovered data to Singota, and (6) working with the parties to develop plans to remove Singota's data from Attariwala's devices and accounts or consider other cost-effective alternatives for disentangling Singota's data from Attariwala's.

Specifically, the Inspection Order outlines, in pertinent part, the following protocol for Green's collection and inspection of devices and accounts:

2.  Rebecca Green of ESI Team ("Green") is appointed to inspect the ESI Locations pursuant to the terms of this Agreement. . . .

3.  The Defendant shall make available for inspection any and all Storage Locations, including all Accounts and Devices used to store electronic information in her possession, custody or control, including, but not limited to, all computers and devices which may contain ESI relevant in the matter or was connected to a personal computer or device which is known to contain ESI responsive in the matter.

. . .

IDENTIFICATION OF ORIGINAL EQUIPMENT AND STORAGE LOCATIONS

1.  Electronically Stored Information (ESI) can be stored in multiple locations.

    a.  Computers, laptops, USB devices, external hard drives, and tablets will contain data.

    b.  A Smartphone or cell phone will contain data.

        i.  ESI from the smartphone or cell phone may be stored on computers where the Smartphone or cell phone has been connected through a USB port, Bluetooth, or other wireless connections.

        ii. The Smartphone's ESI may be stored on associated Cloud accounts.

    c.  Email related ESI may be synchronized to the server of an Email provider such as Google, Yahoo, Apple, or Microsoft, etc.

    d.  Social media related ESI may be posted and stored on the server of the Social Media provider such as Facebook, Twitter, Instagram, etc.

September 11, 2020
Page 4

  e. ESI from the Storage Locations can be transferred to any cloud storage location, such as DropBox, OneDrive, iCloud, Google Drive, etc.

  f. Messages may be automatically synchronized to other devices, such as tablets, laptops and computers through Account Linking functions.

2. All efforts will be made by the Defendant to identify the Storage Locations which may be storing ESI responsive to the matter.

3. Because ESI can be transferred inadvertently as well as intentionally, the Defendant will identify all ESI Storage Locations which may contain ESI responsive in the matter.

  a. Identify all computers the Defendant has used.

    i. This will include home and third-party computer systems.

    ii. It may be that an employer's systems will be identified.

    iii. If ESI responsive to the matter is contained in a personal email or cloud account and the account was accessed from her employer's computer systems, that employer's computer systems will be identified.

  b. Identify all USB Devices the Defendant has used to store ESI which may be responsive in the matter.

  c. Identify all computers to which Smartphones, cell phones, or tablets, have been connected via a USB port.

    i. This may include computers not owned by the Defendant.

  d. Identify all cloud accounts used by the Defendant.

  e. Identify all email accounts used by the Defendant.

    i. This may include email accounts provided by employers as they could be synchronizing to computers, Smartphones, tablets or cell phones.

  f. Identify all social media accounts used by the Defendant.

  g. Identify all cloud storage accounts used by the Defendant.

  h. Identify all other electronic devices including, but not limited to, tablets, laptops, entertainment systems, gaming systems, printers, copiers, etc.

September 11, 2020
Page 5

    i.   For example, Apple TV can remotely access and display content from folders found on Apple devices. Thus, that content, can be cached on the Apple TV device.

4.   Examination of the ESI stored on the Storage Locations identified in protocol may lead to the identification of other Storage Locations which may be storing potentially responsive ESI.

    a.   Upon that identification, those Storage Locations will be considered *identified* under this protocol and subject to the collection, examination and production phases of this protocol.

5.   A list of the Storage Locations, including but not limited to all Devices and Accounts, will be [compiled] by the Defendant and will be provided to all counsel and to Green within 48 hours of the parties' agreement to this protocol.

DEFENDANT TO ALLOW DEVICES AND ACCOUNTS TO BE EXAMINED BEFORE ACCESS

…

7.   **<u>Green will determine the order of priority that Storage Locations</u>** will be examined based on information supplied by Defendant.

    a.   If no ESI responsive to the matter is located, Green will communicate to the Defendant and all counsel that, based on the search parameters provided to her, no ESI responsive in the matter was identified.

    b.   If ESI is identified, the Defendant shall not access the Storage Location until Green can remove the ESI from the Storage Location.

COLLECTION AND PRESERVATION – CONTROL and ANALYSIS COPIES

*Collection of ESI from Storage Locations which are Devices*

. . . [Setting out procedures for collecting and preserving devices and data]

10.   Industry standard tools, methodologies, and/or best practices will be used to collect the ESI from the devices in a sound manner preserving the ESI content and its metadata.

. . .

    d.   If Singota's Confidential Information, Protective Information, Trade Secrets or Property, as defined in the Temporary Restraining Order or Preliminary Injunction is found on any mirror image of a hard drive, device, or media **<u>the parties will meet and confer in good faith to develop a protocol for the permanent removal of Singota's Confidential Information, Protective Information, Trade Secrets,</u>**

September 11, 2020
Page 6

> **and/or Property.  If agreement cannot be reached, either party may seek the intervention of the court.**

. . .

EXAMINATION

17.  The collected ESI will be examined using industry accepted tools, methodologies, and/or best practices.

   a.  **Search criteria will be applied to identify potentially responsive ESI.**

18.  **If the examination identifies other Storage Locations, not yet disclosed by the Defendant and which may potentially contain the responsive ESI, those Storage Locations will be considered identified for the purposes of this protocol.**

   b.  **Those newly identified *devices* will be produced and collected as set forth in this protocol and subject to the tasks set forth in this protocol.**

   c.  **Those newly identified *accounts* will be produced and collected as set forth in this protocol and subject to the tasks set forth in this protocol.**

19.  **Green will analyze the activity for the following possibilities**:

   a.  **The presence of Singota information.**

   b.  The **access of Singota information.**

   c.  The **transfer of Singota data to another device or storage location**, including a personal computer, or another portable device or media such as USB drive, CD, DVD, etc.

   d.  **Forwarding of Singota information to another party via email or some other electronic transfer means.**

   e.  **Printing of Singota information** which would make the information now portable via paper.

   f.  The **deletion of information**.

20.  **If Singota data is located, Green will make a recommendation for removing the ESI from the Defendant's devices or accounts.**

September 11, 2020
Page 7

    a.  Any recommendations will consider the volume of the ESI, the replacement cost of the device, and the cost for separating the ESI from any of the Defendant's devices or accounts.

    b.  **All parties will agree to the recommendation before ESI removal tasks are begun by Green**.

21.  **If deletion is detected, Green will provide a report to the parties regarding same**.

22.  If no Singota data is located, the computers and storage media will be returned to the Defendant.

THE DEFENDANT'S DATA IDENTIFICATION AND VERIFICATION

23.  **Green will provide a list of files identified as potentially responsive to both parties' counsel**, including file name, harvest location, created, modified and accessed dates, as well as common metadata field.

24.  **Before Green communicates the contents of any files located on the Defendant's Storage Locations to opposing counsel, the *Defendant and their counsel* will be given three (3) days to review those files from the Storage Locations for the Defendant's personal information**.

25.  **If the Defendant *or their counsel* in good faith identifies personal information among the files Green wishes to communicates to Plaintiff's counsel, *the Defendant's counsel* will direct Green to not produce those files and instead produce a log of those files identifying**:

    a.  Name, path and any other metadata available to Green by her forensic tools as long as the metadata does not reveal the contents of the file.

    b.  The reason the file is deemed personal and confidential.

    c.  *Provided, however*, that no information related to Singota will be deemed personal information of Defendant; and if the parties dispute whether the contents of files should be produced to Plaintiff's counsel, the parties may seek intervention of the Court.

26.  **Green will provide to Plaintiff's counsel the above described log along with any other file not deemed by the Defendant or their counsel as containing personal information**.

*Id.* at pp. 1–7 (emphasis added).

September 11, 2020
Page 8

As you also know, the State Court ordered that Attariwala is responsible for the costs for Phase I of Ms. Green's work.  The Court's March 4, 2019 oral order at the preliminary injunction hearing was confirmed in writing several days later. (*See* March 18, 2019 Supplemental Order Following Preliminary Injunction ("Expenses Order") [Underlying Doc. 4-1 at 138].) Phase I is defined to include Green's efforts to "**identify, collect and review computers and other electronic storage devices and accounts from Defendant for inspection and, if necessary remove or delete Plaintiff's confidential information from those devices or accounts, in addition to other work incidental to these tasks**[.]"  *Id.* at p. 1.

Finally, as you know, all of the Indiana State Court's injunctions and orders remain "in full force and effect" following Ms. Attariwala's removal to federal court. 28 U.S.C. § 1450.  In addition, the Indiana Federal Court's further preliminary injunction made clear that Ms. Attariwala continues to be enjoined from "possessing, transmitting, using, copying, or disclosing to others Singota's confidential information or trade secrets." [Underlying Doc. 122 at p. 2.] And the Indiana Federal Court's injunction expressly incorporated the Indiana State Court's preliminary injunction and Inspection Order. [Underlying Doc. 122 at pp. 1, 3.]

### III.    Your and Ms. Attariwala's filing an Adversary Proceeding against Ms. Green

Despite your and Ms. Attariwala's knowledge of the Indiana courts' various orders, on April 23, 2020, you demanded that Ms. Green turn over to you various accounts and data allegedly relating to Honey Ji's that Ms. Attariwala provided to Ms. Green under those orders. On February 19, 2020, Ms. Green informed you that she is required to comply with the Inspection Order but she also identified a potential path for responding to your demand.  Ms. Green stated:

> I would need Singota's approval to carve out just the items below into a separate protocol and my standard retainer of $5,000 would be due to get started.  It is possible that I could complete the work within the retainer, but given I have not examined some of these accounts (because work was suspended when the retainer was depleted), I cannot be certain of that fact until I see the volume.

Email from R. Green to D. Lynn, dated Feb. 19, 2020.

You responded by requesting a copy of the Inspection Order and a "statement of the work performed to date."   Ms. Green replied that "Ms. Attariwala already has that information."  In fact, a general description of Ms. Green's work was included in the Indiana Federal Court's Order Granting Preliminary Injunction ("PI Order") [Doc. 121] at pp. 9-11, 15-17.  As the Indiana Federal Court found, Ms. Attariwala's evasive and obstructive conduct has so far required Ms. Green to devote a large among of time and effort at great cost to Singota to try to identify all of the accounts and devices Ms. Attariwala had or has.  As the Court found:

> What [Singota] has discovered . . .  is that Ms. Attariwala left Singota with thousands of its confidential documents and placed these documents in various locations. While it is true that, at the time of the state court's preliminary injunction hearings, Ms. Attariwala had already created the "Jessie docs" folder and placed it

September 11, 2020
Page 9

in no fewer than three locations (one of which is still unknown), it would be months before Singota was more fully aware of the wrongdoings committed by Ms. Attariwala. Moreover, Singota only learned of these improprieties through its own investigations, not from Ms. Attariwala's candor, transparency, or voluntary disclosures. . . .

We do not believe it is reasonable to have expected Singota to have foreseen at the beginning of this litigation that Ms. Attariwala would lead Singota on a months-long wild goose chase in search of its stolen trade secrets, or that Ms. Attariwala would consistently manifest a lack of forthrightness in disclosing what documents she had taken and where and with whom she had shared them. Singota asserts that it believed in March 2019 that the stipulated preliminary injunction would prompt the disclosure of all of Ms. Attariwala's accounts and devices, and that these matters could be fully investigated and resolved. Forensic analysis has established that this has not occurred; far from it. **It has taken months of forensic expert analysis (and, to date, $170,000 in expert fees) to uncover the extent of Ms. Attariwala's theft.** This was information she alone was in the position to identify and return at the outset of this dispute, but chose to conceal until the nature and extent of her misappropriations and diversions were eventually discovered.

PI Order at 27-28 (emphasis added).

You and Ms. Attariwala did not follow-up on Ms. Green's proposal in February 2020 to provide her a retainer of $5,000.00 for the work you requested for her to review the allegedly Honey Ji's-related accounts. Instead, on March 5, 2020, you sent Ms. Green an email simply demanding that she provide the allegedly Honey Ji's-related accounts to you and Ms. Attariwala, apparently without paying her fees and costs to review those accounts as required by the Inspection Order. Without regard to the Indiana court's orders, you also threatened to sue Ms. Green and demanded that she:

provide the things requested above to us immediately, failing which we shall have to request the Bankruptcy Court to enter an order to that effect, in which case we would also request an award of attorney's fees and costs for having to do so.

Email from D. Lynn to R. Green, dated March 5, 2020.

You made this demand of Ms. Green despite your and Ms. Attariwala's knowledge that the only reason Ms. Green "possesses" the allegedly Honey Ji's-related accounts in the first place is because the Indiana State Court ordered that "**Ms. Green, acting as an officer of the court, shall conduct an inspection of these devices, media, accounts, and computers in accordance with**" the Inspection Order.

On April 23, 2020, you followed through on your threat and filed on behalf of Ms. Attariwala an adversary proceeding against Ms. Green seeking a judgment ordering her "to turn over to [Ms. Attariwala] all files, accounts and other material relating to Honey Ji that is in the

September 11, 2020
Page 10

custody or control of Rebecca Green and/or ESI Team, Inc." *Jaspreet Attariwala v. Rebecca Green et al.*, Adversary Proceeding No. 20-10014-SMT (D.C. Bankr. Ct), Doc. 1.

On May 20, 2020, Ms. Green sent you an email that, among other things, noted that your demand for her to transfer the allegedly Honey Ji's-related accounts to you and Ms. Attariwala would place her in contempt of the Indiana courts' orders. Email from R. Green to D. Lynn, dated May 20, 2020.

You responded to Ms. Green by, in essence, accusing her of dishonesty when she referred to additional work she would need to perform under the Inspection Order before the accounts could be released to you and Ms. Attariwala.  Without pointing to any facts or evidence to support your accusations, you asserted:

> You've referred me to the Order for Inspection of Computers and Electronic Information Storage Devices and to the Preliminary Injunction Orders entered by the Circuit Court of Monroe County, Indiana.  I observe that those Orders were entered more than one year ago, after which the files and accounts we have requested were turned over to you.

> You have acknowledged that Ms. Attariwala previously paid you $5,000 and Singota has told the Bankruptcy Court that it has paid you $141,539.88.

> I conclude that you have had ample time and money to review the "Honey Ji" material for any Singota-related material.

> Surely by now you know precisely where the Honey Ji data and related accounts are located.

Email from D. Lynn to R. Green, dated May 21, 2020.

In fact, as the Indiana Federal Court observed, the fees that Singota has paid to Ms. Green to date result primarily from her needing to engage in significant work to identify what accounts and devices Ms. Attariwala had not disclosed as required. The parties have never reached the comprehensive review stage under the Inspection Order due to Ms. Attariwala's obstructive conduct in identifying and producing accounts and devices and from her refusal in contempt of the Expenses Order to pay Ms. Green to do such work. Much of that work remains to be done.

In short, your and Ms. Attariwala's attempt to recover some of Ms. Attariwala's accounts from Ms. Green by filing an adversary proceeding against Ms. Green, in total disregard of the Indiana court's Inspection Order and other orders, and your refusing to pay for Ms. Green's expenses to perform this work as required by the Expenses Order puts Ms. Attariwala in contempt of the Indiana courts' orders. Indeed, the Indiana State Court's preliminary injunction expressly ordered Attariwala:

September 11, 2020
Page 11

(6)     **. . . not to reconstitute, recover, or in any way restore any of the Company's Confidential Information returned to the Company pursuant to this Order**, including, but not limited to, **by retrieving any such Confidential Information conveyed by Attariwala to any third-party**.

March 4, 2019 PI [Underlying Doc. 4-1 at 91] ¶ 6.  By making multiple demands on Ms. Green and by filing an adversary proceeding against her, you and Ms. Attariwala are doing exactly what the Indiana Court ordered Ms. Attariwala *not* to do: circumvent the preliminary injunctions and inspection order by recovering accounts and data that may contain Singota data from a third-party.

## IV.     Ms. Green's estimates for the work you demand in the adversary proceeding

At your request, Ms. Green has prepared an initial estimate of the time and costs for collecting, preserving, analyzing, and, if necessary, remediating the accounts you have identified in accord with the Indiana Court's orders. We fail to understand why you did not simply seek this estimate and provide Ms. Green the $5000.00 retainer in February, when she requested it, rather than forcing Singota and Ms. Green to incur the costs and burdens of responding to your adversary proceeding. Indeed, Ms. Attariwala could easily have used the fees that she has paid you to prosecute this adversary proceeding to instead comply with the Inspection Order and Expenses Order, suggesting that you and Ms. Attariwala have filed this action with the goal of harassing Ms. Green (and Singota) rather than merely seeking the return of any accounts. For example, on May 19, 2020, after you initial this adversary proceeding, you filed a Supplemental Statement Pursuant to Rule 2016(b) disclosing that Ms. Attariwala had recently paid you an *additional* $15,037.00 in fees. $15,037.00. Case 19-00828-SMT, Doc. 69.

Please note that Ms. Green's estimates below are initial and contingent on what Ms. Green might find when she analyzes the accounts you have identified.  Under the Inspection Order, she must develop search criteria and, if she discovers any Singota data, follow the requirements of the Inspection Order for disclosing it and developing a plan to remove it. If those tasks are necessary, the amount of time and her costs will increase. Ms. Green has informed us that she estimates as follows:

1.   Total hours initially estimated: 15.5 hours

-> For review of Box files and collection of Facebook, Instagram, and *honeyjiscorp@gmail.com.*

-> Quote for review of content from the Facebook, Instagram, and *honeyjiscorp@gmail.com* accounts cannot be provided at this time (scope unknown)

2. Total cost initially estimated: $8,525

-> Does NOT include the review of content in these accounts: Facebook, Instagram, and *honeyjiscorp@gmail.com*

3.   Retainer demanded:   $10,000

September 11, 2020
Page 12

**IMPORTANT NOTE: FOR <u>ALL</u> OF THE FOLLOWING ITEMS, IF SINGOTA ESI IS  FOUND, THEN ADDITIONAL TIME WILL BE REQUIRED TO PREPARE A PLAN FOR REMOVING IT OR ADDRESSING IT, GAINING PARTIES' APPROVAL FOR THE PLAN, AND EXECUTING THE PLAN.**

1.    Honey Ji files from "Box" cloud account, which Rebecca Green mapped in her report of December 3, 2019:



**THE SONY VAIO VERSION OF THE BOX ACCOUNT HAS 502 FILES.
THERE IS A LARGE PORTION OF GRAPHICS SUCH AS MANDALAS.**

**THE REVIEW OF THESE FILES IS ESTIMATED TO TAKE 1 TO 1.5 HOURS OF BILLABLE TIME AT $550 PER HOUR LESS PASSWORD PROTECTED ITEMS.**

**REVIEW OF PASSWORD PROTECTED ITEMS TO OCCUR WHEN CORRECT PASSWORDS HAVE BEEN PROVIDED.  THERE ARE FIVE (5) ENCRYPTED FILES WHERE THE PASSWORD IS NEEDED FOR THE REVIEW TO OCCUR:**

| | |
|---|---|
| Master Accounts.xlsx | Encrypted Excel 2010 Spreadsheets |
| pricing.xlsx | Encrypted Excel 2010 Spreadsheets |
| HONEY JI's and Baking Institute Recipes - CONFIDENTIAL.docx | Encrypted Word 2010 |
| HONEY JI's Recipes - CONFIDENTIAL IGOR PACKET ONE.docx | Encrypted Word 2010 |
| HONEY JI's Recipes - CONFIDENTIAL.docx | Encrypted Word 2010 |

**->>>HOWEVER, THE ONLINE BOX ACCOUNT AND THE SONY VAIO BOX ACCOUNT (BOX SYNC SCREENSHOT ABOVE) ARE NOT IN SYNC.
 HERE ARE THE HONEYJI FOLDERS/FILES IN THE ONLINE BOX ACCOUNT:**

September 11, 2020
Page 13



| Name | | Updated ↓ | Size |
|---|---|---|---|
| 📁 | Bread and Chocolate | Nov 25, 2018 by Honey Ji | 4 Files |
| 📁 | Marketing | Nov 13, 2018 by Sim J. Singh | 593 Files |
| 📁 | Tax documents - HJPersonal | Nov 13, 2018 by Honey Ji | 146 Files |
| 📁 | Packaging | Oct 27, 2018 by Honey Ji | 35 Files |
| 📁 | Business cards | Oct 26, 2018 by Honey Ji | 5 Files |
| 📁 | Business Plan | Oct 26, 2018 by Sim J. Singh | 29 Files |
| 📁 | Financials | Sep 20, 2018 by Honey Ji | 4 Files |
| 📁 | Kitchen | Jul 30, 2018 by Honey Ji | 21 Files |
| 📁 | Certificates | Jul 30, 2018 by Honey Ji | 3 Files |
| 📁 | Legal | Jul 30, 2018 by Honey Ji | 110 Files |
| 📁 | Virginia's Finest | Jul 30, 2018 by Honey Ji | 1 File |
| 📁 | Caterers | Jul 30, 2018 by Honey Ji | 1 File |
| 📁 | Accounting | Nov 4, 2017 by Honey Ji | 80 Files |
| 📁 | Website | Aug 18, 2017 by Sim J. Singh | 29 Files |
| 📁 | Logistics | May 8, 2017 by Sim J. Singh | 6 Files |
| 📁 | Communications | Aug 30, 2016 by Sim J. Singh | 2 Files |
| 📄 | What should go on a sell sheet.docx | Oct 24, 2018 by Honey Ji | 67 KB |
| 📄 | Honey Ji Pricing Sheet 2018 Sonya.xlsx | Oct 24, 2018 by Honey Ji | 46.7 KB |
| 📄 | HONEY JI's Template.docx | Aug 30, 2016 by Sim J. Singh | 41.6 KB |

**THERE ARE ALSO DOCUMENTS IN TWO OTHER FOLDERS AS SHOWN HERE:**

September 11, 2020
Page 14



**IF THE ONLINE BOX ACCOUNT (OR ITS FILES) ARE TO BE RETURNED, THEN THE REVIEW OF 1,116 DOCUMENTS (AT AN ESTIMATED RATE OF 100 DOCUMENTS PER HOUR) WOULD BE  APPROXIMATELY 11 HOURS AT A BILLABLE RATE OF $550 PER HOUR.**

**THESE ARE DOCUMENTS AND REQUIRE MORE REVIEW TIME THAN MANDALAS.  EXACT REVIEW RATE IS UNKNOWN AND THE ACTUAL REVIEW COULD BE MORE OR LESS BASED ON THE COMPLEXITY OF THE DOCUMENTS.**

2.      Debtor's Facebook account (used for marketing).

**HAS NOT BEEN COLLECTED – SCOPE UNKNOWN**
**1 BILLABLE HOUR OF $550 PER HOUR TO COLLECT AND ESTIMATE TO REVIEW**
**CAN BE GIVEN WHEN COLLECTION IS COMPLETED**

3.      Honey Ji's Instagram account (used for marketing):

https://www.instagram.com/honeyjidesserts/?hl=en [instagram.com]

**HAS NOT BEEN COLLECTED – SCOPE UNKNOWN**
**1 BILLABLE HOUR OF $550 PER HOUR TO COLLECT AND ESTIMATE TO REVIEW CAN BE GIVEN WHEN COLLECTION IS COMPLETED**

September 11, 2020
Page 15

    4.      E-mail account *honeyjiscorp@gmail.com*

**HAS NOT BEEN COLLECTED – SCOPE NOT COMPLETELY KNOWN**

**THERE ARE 519 SENT ITEMS AND 1,740 INBOX ITEMS WHICH WILL REQUIRE REVIEW (INBOX WILL LIKELY CHANGE BEFORE COLLECTION IS COMPLETED)**
**THERE ARE 92 EMAILS WITH ATTACHMENTS**

**THIS IS A GOOGLE ACCOUNT AND THERE IS MORE THAN JUST EMAIL CONTAINED WITHIN IT.**

**THERE IS 1.7 GB OF SPACE (APPROXIMTELY 50 DOCUMENTS/GRAPHICS) USED ON THE GOOGLE DRIVE**

**THERE IS 1.8 GB OF SPACE USED IN PHOTOS – QUANTITY CURRENTLY UNKNOWN**

**1 BILLABLE HOUR OF $550 PER HOUR TO COLLECT AND ESTIMATE TO REVIEW CAN BE GIVEN WHEN COLLECTION IS COMPLETED**

## V.    <u>Ms. Green has already discovered Singota data on devices that Ms. Attariwala claims belong to Honey Ji</u>

The above investigation, as required by the Inspection Order, is necessary because Ms. Attariwala intermingled Singota data with her own, as shown by the record in the Indiana litigation. For instance, in the Indiana litigation, Ms. Green has already discovered evidence of Singota data on the Microsoft Surface computer that Ms. Attariwala represented she purchased primarily for use for Honey Ji's business.

## VI.    <u>Your and Ms. Attariwala's adversary proceeding against Ms. Green is sanctionable.</u>

Please note that by providing this estimate, Singota does not waive any arguments that Ms. Attariwala, by filing this adversary proceeding and demanding the return of this data in the bankruptcy case, is in contempt of the various orders in the Indiana Litigation. Indeed, Ms. Attariwala has consistently refused to make payments to Ms. Green to allow her to proceed with her work under the Inspection Order.  Ms. Attariwala represented in the Indiana litigation that she lacked the funds to pay Ms. Green. The records concerning Ms. Attariwala's finances produced in this bankruptcy case demonstrate those representations were false.

Furthermore, Ms. Attariwala's demand that Ms. Green focus on analyzing the accounts and devices that Ms. Attariwala wants returned to her, and her apparent willingness to pay Ms. Green's expenses only to the extent Ms. Green works for Ms. Attariwala's benefit, demonstrate further her willful obstruction and contempt of the Indiana courts' orders.  Among other things, the Inspection Order directs Ms. Green to "determine the order of priority that Storage Locations" for her analysis,

September 11, 2020
Page 16

a procedure that Ms. Attariwala has disrupted by demanding that Ms. Green focus on the allegedly Honey Ji's-related accounts rather than prioritizing her analysis according to the needs of the case.

Singota also intends to pursue sanctions against you under 28 U.S.C. § 1927 for "multipl[ying] the proceedings in any case unreasonably and vexatiously." Your filing this adversary proceeding was unnecessary since Ms. Attariwala could have, and should have, simply followed the orders already in place in the Indiana litigation for seeking the return of any accounts, devices, and data she produced under the preliminary injunctions issued in that litigation. Ms. Attariwala's conduct throughout her litigation with Singota has increased Singota's expenses and costs exponentially and unnecessarily. Her filing this adversary proceeding with your assistance is just the latest example of such misconduct. Singota therefore intends to seek the recovery of its attorneys' fees, expenses, and costs incurred in defending this matter from you under 28 U.S.C. § 1927 and on any other available grounds.

Sincerely,

Christopher C. Murray

CCM:dmk

44105163.3

# EXHIBIT 25

| | |
|---|---|
| **From:** | Rebecca Green <rgreen@theESIteam.com> |
| **Sent:** | Wednesday, September 16, 2020 5:09 PM |
| **To:** | David Lynn; Murray, Christopher C.; 'Cohen, Nelson C.' |
| **Cc:** | Aimee Lee |
| **Subject:** | Honey Ji ESI |

***[Caution: Email received from external source]***

Here are the steps which I presented in the hearing today:

1) Put the HoneyJi ESI from the Sony Vaio on a USB Device.  Here is the screen shot from Mr. Lynn's earlier email detailing the requested information:

**From:** David Lynn <davidlynn@verizon.net>
**Sent:** Friday, July 31, 2020 10:44 AM
**To:** Cohen, Nelson C. <ncohen@wtplaw.com>
**Subject:** [EXTERNAL] Attariwala - Honey Ji's

Nelson:
Following on your suggestion yesterday, here, with as much specificity as
minimum that my client is seeking in order to resurrect her "Honey Ji's" b

1.     Honey Ji files from "Box" cloud account, which Rebecca Green m
      December 3, 2019:



*Source: David Lynn's July 31, 2020 Email to Nelson Cohen*

2)  The remaining Honey Ji ESI which Mr. Lynn requested has not been collected; therefore, it is NOT in my possession. For those items, I would document the password(s) to the accounts and seal it in an envelope.  Here is a screen shot of those items in Mr. Lynn's request:

> 2.   Debtor's Facebook account (used for marketing).
>
> 3.   Honey Ji's Instagram account (used for marketing):
>
> https://www.instagram.com/honeyjidesserts/?hl=en [instagram.com]
>
> 4.   E-mail account *honeyjiscorp@gmail.com*

*Source: David Lynn's July 31, 2020 Email to Nelson Cohen*

3) Seal the items described in the above steps (1 and 2) with evidence tape.
4) Photograph the package including the unique number stamped within the evidence tape.
5) Provide the photographs to all three attorneys and the Court.
6) Turn over the sealed ESI to one of the attorneys in this matter.
7) If and/or when it is to be reviewed, it can be reviewed by one of the attorneys or another party at a lower cost to Ms. Attariwala.

The above steps are a means to resolving this Adversary Proceeding.  I am merely holding the ESI.  I am not a party in the underlying Indiana litigation. I am only involved through my role as an expert and an Officer of the Court as the parties try to resolve the co-mingled ESI issue.

Kind Regards,
Rebecca Green

The ESI Team
- Electronic Discovery and Digital Forensics

Nationwide ESI Services Offered
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# EXHIBIT 26

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BIOCONVERGENCE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: |
| v. | ) | |
| | ) | |
| JASPREET ATTARIWALA | ) | Underlying Case: |
| | ) | S.D. Ind. 1:19-cv-01745-SEB-TAB |
| Defendant. | ) | |
| _____ | ) | |

## MOTION FOR LEAVE TO SERVE SUBPOENA BY ALTERNATIVE MEANS

Plaintiff BioConvergence LLC d/b/a Singota Solutions ("Singota"), by counsel, respectfully moves this Court for leave to serve a subpoena for documents and a subpoena for deposition on non-party Mr. Simranjit Johnny Attariwala[1] ("Mr. Attariwala") using means other personal services, specifically, by mailing copies of the subpoenas to Mr. Attariwala by certified mail with a confirming copy sent by First-Class U.S. Mail.  As set forth below, Singota has made seventeen (17) unsuccessful attempts to serve Mr. Attariwala by personal service.

## STATEMENT OF POINTS AND AUTHORITIES

Pursuant to LCvR 7(a), Singota respectfully includes this statement of points and authorities in support of its motion.

### Relevant Factual and Procedural Background

Singota is the plaintiff in the underlying action, which is pending in the U.S. District Court for the Southern District of Indiana, Indianapolis Division.  In the underlying matter, Singota has alleged a variety of claims against Defendant Jaspreet Attariwala ("Attariwala"), who is a former Singota employee.  Singota's claims include misappropriation of trade secrets and similar claims.

---

[1] Also known as Simranjit Johnny Singh, Defendant's husband, who himself is an attorney.

1

On December 18, 2019, the Southern District of Indiana issued a Preliminary Injunction requiring, among other things, "Attariwala, and all persons in active concert or participation with her" to disclose and produce all electronic mail accounts, online storage accounts, computers, tablets, mobile phones, and storage devices which remain outstanding. [Dkt. # 122 at p. 2-3.] The court also specifically instructed Attariwala to disclose the Preliminary Injunction to her husband, Mr. Attariwala, and to "clearly and explicitly request, direct, instruct, and take all actions within her power to cause these individuals [including Mr. Attariwala] . . . to comply with the terms of this Order[.]" [*Id*. at p. 4.] The evidence in this record shows that Mr. Attariwala is in the possession of relevant information.

As Attariwala has done repeatedly throughout the underlying lawsuit, she continued to refuse to provide access to a number of outstanding devices and accounts, claiming they do not belong to her (and presumably belong to Mr. Attariwala, instead). [*See* Dkt. #182 at p. 7, ¶ 23.] As such, significant questions related to Attariwala's misappropriation remain unanswered, including what Singota data has been shared with Mr. Attariwala and what he has done with it, including but not limited to information sent to the singjsingh@gmail.com account, which is *known* to contain Singota data. [Dkt. #111-1 at p. 173.]

In an effort to find answers to its long-outstanding questions and to discover the location and misuse of Singota's confidential information and trade secrets, Singota requested depositions of Attariwala and Mr. Attariwala and attempted to serve written discovery requests to Attariwala and Mr. Attariwala as well. However, Mr. Attariwala has been dodging service of Singota's subpoena for months and Attariwala has refused to cooperate in the service of the same despite the fact that Mr. Attariwala and Attariwala are married and live together at the same residence and in an obvious attempt to obstruct Singota's discovery efforts.

On March 20, 2020, the undersigned counsel sent an email to Attariwala requesting Attariwala's and Mr. Attariwala's availability for depositions. Attariwala failed to cooperate.  On March 23, 2020, Attariwala responded in relevant part that she would "prefer not to speak for [her] husband." *See* Email from J. Attariwala, attached as **Exhibit A**.  The undersigned counsel emailed Mr. Attariwala directly on March 25, 2020 to attempt to coordinate a deposition and to inform Mr. Attariwala that Singota's subpoena for deposition will likely be accompanied by a request for production. Mr. Attariwala also failed to cooperate.  Mr. Attariwala responded that he does not want to be deposed and directed the undersigned counsel to cease further email communication. *See* Email from S. Singh, attached as **Exhibit B** at p. 1.

In light of Attariwala's and Mr. Attariwala's refusal to cooperate in Singota's attempt to take non-party discovery with respect to Mr. Attariwala, Singota retained a process server. However, despite the likelihood that Attariwala and Mr. Attariwala are at home due to the COVID pandemic, the process server was unable to effect personal service of the subpoena on Mr. Attariwala. Between April 30, 2020 and May 11, 2020, the process server made ten attempts to serve Mr. Attariwala with a subpoena for documents at his residence in Washington, D.C. without success. *See* Non-Service Report, dated May 11, 2020, attached as **Exhibit C**.

The process server believed someone was in the home, despite the failure to answer the door. On May 8, 2020, the process server noted:

| 5/8/2020 | 10:00 AM | I arrived at the location I knocked on the door no one answered.We believe they where home, and would not answer the door. We saw movement in the residence, and could her voices, and the sound of the TV. There also appears to be an outside camera - Vance Warren |
| | Location: | 1390 Kenyon St NW Apt 323,  Washington, DC 200107222 |

(*Id*. at p. 2.)  The process server noted there appears to be a camera outside the door. (*Id.*)

3

After the process server's numerous unsuccessful attempts to serve the subpoena, the undersigned counsel emailed Mr. Attariwala on May 18, 2020 to confirm his address and to ask for his cooperation in effectuating service of the subpoena for documents. *See* **Exhibit B** at p. 1. However, undersigned counsel received a bounce back message indicating that Mr. Attariwala has blocked messages from Singota's counsel's email address. *See* Bounce back email from S. Singh, attached as **Exhibit D**.

On July 22, 2020, Singota believed it had finally effectuated personal service of the subpoena on Mr. Attariwala by hand delivery, but later realized that due the lengthy time it had taken finally to achieve service (over two months), the original date for compliance contained in the subpoena had already expired by the time the subpoena was served. Mr. Attariwala never responded to the subpoena.

Singota has therefore been forced to re-commence its efforts to serve a subpoena on Mr. Attariwala for the production of documents with an updated date for compliance. *See* **Exhibit E**. To date, Singota has tried to serve this corrected subpoena by personal service seven more times. *Id.* However, the front desk person at Attariwala and Mr. Attariwala's condo would not let the process server in and would only ring their unit, all of which attempts to reach Mr. Attariwala were unsuccessful. *See* **Exhibit F.**

A copy of the subpoena for documents and the attached requests for production of documents that Singota repeatedly attempted to serve on Mr. Attariwala by personal service are attached to this motion as **Exhibit E**. As set forth in this motion, due to the repeated unsuccessful attempts to serve Mr. Attariwala by personal service over the past four months, Singota seeks leave to serve this subpoena by alternative service.

In addition, Singota also now seeks to serve by alternative means a subpoena for Mr. Attariwala's deposition to occur after the documents in response to the first subpoena are received and reviewed. This second subpoena for Mr. Attariwala's deposition is attached as **Exhibit G**. (Singota has left the date on the deposition subpoena blank due to the uncertainty of when this Court may rule on this motion and when the subpoena may finally be served.  If this motion is granted, Singota will insert the date and place for deposition before serving the subpoena.)

Singota initiates this miscellaneous proceeding in this Court in accordance with Rule 45 which provides that any motion to compel or motion for contempt for failure to comply with a subpoena must be filed in the district where compliance is sought. Fed. R. Civ. P. 45(c), (d).  This Court would be the location of compliance for any such subpoena-related motion because Mr. Attariwala resides in Washington, D.C.  Singota's motion for leave to use alternative service of the subpoena is therefore properly before this Court.[2]  The Indiana District Court has also already granted Singota leave to take Mr. Attariwala's deposition remotely.  [Dkt. #212.]

<u>Argument</u>

A.       <u>Standards for service of process and alternative service of process.</u>

Pursuant to Rule 45(b)(1) of the Federal Rules of Civil Procedure:

> Any person who is at least 18 years old and not a party may serve a subpoena. *Serving a subpoena requires delivering a copy to the named person* and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law.

Fed. R. Civ. P. 45(b)(1) (emphasis added).

While some courts have interpreted this language literally to require nothing short of personal service, many courts permit service of a subpoena by alternative means under certain

---

[2] To the extent the Court disagrees, Singota respectfully requests that the Court transfer this motion to the Southern District of Indiana pursuant to Rule 45(f).

circumstances.  In particular, when a party has made a reasonable attempt to personally serve a non-party, who may be evading service, courts routinely permit service of a subpoena by other means than personal service.  In *United States ex rel. El-Amin v. George Washington Univ.*, 2000 U.S. Dist. LEXIS 15635, at *2 (D.D.C. Oct. 20, 2000), for example, a party showed that it had unsuccessfully attempted service of a subpoena on a non-party on ten separate occasions. The serving party moved the Court for leave to serve the non-party "using alternative means of service by posting the subpoena where [the non-party] reside[d], with a confirmatory copy sent by certified mail." *Id.* Citing cases in which courts had authorized service of subpoenas by certified mail and other means after unsuccessful attempts to effectuate personal service, this Court granted the motion. *Id.* The Court explained:

> It appears to this Court that Relators have made a reasonable attempt to personally serve Andrew Harris, who may be evading service, and further that there is sufficient authority to permit service of a subpoena by other than personal service. Therefore, the Court will allow Relators additional time to serve Mr. Harris and permit service by posting on Mr. Harris's residence with a confirmatory copy sent by certified mail.

*Id*. at *3-4.

*Cordius Trust v. Kummerfeld*, No. 99 CIV. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000) was one of the cases cited by the *El-Amin* court. It involved facts similar to those presented here. There, as here, the plaintiff sought to serve subpoenas on the defendant's husband for the production of documents and for his deposition. *Id.* at *1. The husband lived in a building with a doorman. The plaintiff showed that it "made repeated attempts to serve [the husband] at his residence with a executed subpoena duces tecum, but the doorman repeatedly barred the process server from ascertaining whether [the husband] was in his apartment." *Id.* Under these circumstances, the court authorized the plaintiff to serve the subpoenas by certified mail.  The court explained:

In accordance with the interpretative principle that the rules "be construed and administered to secure the just, speedy, and inexpensive determination of every action", Rule 1, Fed.R.Civ.P., and given the textual ambiguity of Rule 45 combined with the repeated attempts of the plaintiff to effectuate personal service, and the cost and delay that would result by requiring further attempts at such service, plaintiff is permitted to serve [the husband] by certified mail. The Federal Rules of Civil Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service. Because alternative service by means of certified mail reasonably insures actual receipt of the subpoena by the witness, the "delivery" requirement of Rule 45 will be met, and [the husband] will be provided with fair and timely notice of his obligation to appear at a deposition. Further, service by certified mail comports with due process as it is reasonably calculated under the circumstances to provide [the husband] with both notice and an opportunity to present objections.

*Id.* at *2.

Other courts have come to the same conclusion. *See also Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012) (finding service by certified mail as a "sensible option"); *Doe v. Hersemann*, 155 F.R.D. 630, 630-631 (N.D. Ind. 1994) (finding that a subpoena could be served by certified mail and that hand delivery is not always required); *First Nationwide Bank v. Shur*, 184 B.R. 640, 642 (E.D.N.Y. 1995) ("'[d]elivering' a copy of a subpoena, for the purposes of Rule 45, includes any act or series of acts that reasonably assures the entity to which it is addressed fair and timely notice of its issuance, contents, purpose and effect.").

Thus, under authority from either the D.C. Circuit or the Seventh Circuit, this Court may order alternative service after in-person service has been attempted unsuccessfully.

## B. <u>Alternative service is appropriate in this case.</u>

As set forth above, Singota has made repeated attempts to personally serve Mr. Attariwala. First, to attempt to minimize unnecessary costs and burdens, Singota attempted to reach agreement with Mr. Attariwala and Attariwala to secure Mr. Attariwala's responses to its non-party discovery and to schedule Mr. Attariwala's deposition.  Both Attariwala and Mr. Attariwala refused to cooperate with Singota.

Singota then incurred the burden and cost of retaining a process server to attempt to serve subpoenas on Mr. Attariwala.  Since April, the process server has made at least 17 unsuccessful attempts to serve Mr. Attariwala, including by ringing his condo door buzzer, by knocking on the door to his condo, by asking the front-desk person in the condo building to call Mr. Attariwala's unit, and by staking out the condo.  On many occasions, the individual at the front desk of Mr. Attariwala's condo building has refused to allow the process server into the building.  *See* **Exhibits C & F.**

In light of Attariwala's and Mr. Attariwala's intimate knowledge of the underlying lawsuit and of Singota's attempts to serve Mr. Attariwala, it is apparent that Mr. Attariwala is deliberately dodging service.  Because Singota has reasonably exhausted its efforts to serve Mr. Attariwala by personal service, it would be appropriate to allow Singota to utilize other means of service.

Alternative service by certified mail (with a confirming copy by First-Class U.S. Mail) is therefore appropriate in this case and will avoid additional delay and expense associated with additional attempts at in-person service.  *See George Washington Univ.*, 2000 U.S. Dist. LEXIS 15635 at *2-4; *City of Milwaukee*, 682 F.3d at 557.

Mr. Attariwala would suffer no prejudice from this alternative service. Mr. Attariwala is already aware based on Singota's counsel's emails to him that Singota is attempting to serve a subpoena on him. Furthermore, certified mail and U.S. Mail will provide Mr. Attariwala fair and timely notice of his obligations under the subpoena.

Finally, Mr. Attariwala's intentional evasion of service, despite his knowledge of Singota's efforts to serve him and of his possession of relevant evidence and information, also warrants sanctions under the Court's inherent authority.  Under this Court's inherent authority, it should order Mr. Attariwala to reimburse Singota for the costs and extra attorneys' fees incurred as a

result of Mr. Attariwala's willful actions in evading personal service of the subpoenas and in connection with this motion. Singota has already incurred over $1300 in process server fees, in addition to unnecessary attorneys' fees, as a result of its 17 attempts to serve Mr. Attariwala, all costs and fees that would largely have avoided if Mr. Attariwala had cooperated. *See, e.g., Sundby v. Marquee Funding Grp., Inc.*, No. 319CV00390GPCAHG, 2020 WL 5709445, at \*5 (S.D. Cal. Sept. 24, 2020) (a court's "inherent authority to sanction willful conduct also includes 'the authority to sanction the conduct of a nonparty who participates in abusive litigation practices, or whose actions or omissions cause the parties to incur additional expenses'").

## Conclusion

Based on the foregoing, Singota respectfully requests that the Court enter an order granting leave to serve a subpoena for documents and a separate subpoena for deposition on non-party Mr. Attariwala by certified mail, with confirmatory copies sent by First-Class US mail. Singota further requests the Court order Mr. Attariwala to reimburse Singota for the costs and attorneys' fees incurred by his evading personal service and in connection with this motion, and for all other appropriate relief.

Respectfully submitted,

*/s/ Christopher C. Murray*
Christopher C. Murray, Ind. Atty. No. 26221-49
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
111 Monument Circle, Suite 4600
Indianapolis, Indiana  46204
Telephone:  317.916.1300
Facsimile:  317.916.9076
christopher.murray@ogletree.com

*Attorneys for Plaintiff/Counter-Defendant*
*BioConvergence, LLC d/b/a Singota Solutions*

9

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 13, 2020, a copy of the foregoing was sent by U.S. Mail first-class postage pre-paid, to the following *pro se* party in *BioConvergence, LLC d/b/a Singota Solutions v. Attariwala et al.*, Case No. 1:19-cv-01745 (S.D. Ind.), the matter in which the subpoenas that are the subject of this miscellaneous proceeding are issued.

Jaspreet Attariwala
1390 Kenyon St., NW Apt. 323
Washington, DC  20010


*/s/ Christopher C. Murray*

44562067.1

# EXHIBIT 27

# M McNeelyLaw LLP

Cynthia A. Bedrick
Direct Dial: 317-825-5121
CBedrick@McNeelyLaw.com

June 2, 2020

*VIA ELECTRONIC MAIL*

Christopher C. Murray
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
111 Monument Circle, Suite 4600
Indianapolis, Indiana 46204
Christopher.murray@ogletree.com

      Re:    *BioConvergence, LLC v. Jaspreet Attariwala*
             *Case No.: 1:19-cv-01745-SEB-TAB*

Dear Mr. Murray:

This letter is in response to your letter concerning the return of any confidential and AEO documents allegedly in the possession of David Lynn, Ms. Attariwala's bankruptcy counsel, per the Protective Order entered in this matter on June 7, 2019.

We have confirmed that the secure link sent to Mr. Lynn containing the confidential and AEO documents has been deactivated and is no longer accessible. Mr. Lynn represented to us that, while he had access, he did not review or download any documents considered to be confidential or AEO. Further, Mr. Lynn does not have any other means of accessing confidential or AEO documents with respect to this matter.

If you have any further questions, please contact me.


                    Yours truly,

                    McNEELYLAW LLP



                    Cynthia A. Bedrick

# EXHIBIT 28

| **From:** | Jessie Attariwala <jattariwala6@gmail.com> |
|---|---|
| **Sent:** | Tuesday, October 20, 2020 10:18 AM |
| **To:** | Murray, Christopher C. |
| **Subject:** | Discovery Responses |

*[Caution: Email received from external source]*

Chris,

I have received incomplete discovery responses from Singota, Laura Englander, William B. Powers, Alisa Kilgas, and Melanie Lewis.

Specifically, Singota's objection to my discovery states that "Plaintiff objects to Defendant's Requests to the extent they seek the production of documents and information to Defendant in violation of the Court's preliminary injunction and other orders, including the production of documents and information that contain Singota's or it's clients' or prospective clients' trade-secret, confidential, or proprietary information and data or that have been designated as "Attorneys' Eyes Only" under the applicable protective order."

Paragraph V.C. 3. of the June 7, 2019 protective order says that access to "confidential – attorneys' eyes only" documents is available to "individually named defendant(s)" ....provided that the disclosure is made in the presence of the attorney...

Are you now taking the position that documents and information which I could have seen when I was represented, I can now no longer see? As you know, I am now *pro-se* and believe I should still be able to have access.

Jaspreet Attariwala

# EXHIBIT 29



**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**

*Attorneys at Law*

111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone:  317-916-1300
Facsimile:   317-916-9076
www.ogletree.com

Christopher C. Murray
317-916-2522
christophe.murray@ogletree.com

April 16, 2020

**VIA ELECTRONIC MAIL AND U.S. MAIL**

Paul L. Jefferson
Eric C. Johnson
McNeely Law LLP
143 W. Market Street
Indianapolis, IN  46204
PJefferson@mcneelylaw.com
EJohnson@mcneely.law.com

Jody M. Butts
Jason D. Clark
Cynthia A. Bedrick
McNeely Law LLP
2177 Intelliplex Drive
Shelbyville, IN  46176
JButts@mcneelylaw.com
JClark@mcneelylaw.com
CBedrick@mcneelylaw.com

Re:   *BioConvergence, LLC v. Jaspreet Attariwala*
Case No.:  1:19-cv-01745-SEB-TAB

Dear Counsel:

As you know, prior to your withdrawal from this litigation, a great deal of data was produced designated as "Confidential – Attorneys' Eyes Only" under the applicable protective orders. This included copies of data collected by Rebecca Green from Ms. Attariwala that Ms. Green, in turn, provided to your Firm under the inspection protocol. In particular, on September 9, 2020, Ms. Green sent you a hard drive containing much of the data she had collected from Ms. Attariwala, including a copy of a full image of the Attariwalas' MacBook and copies of files recovered from Ms. Attariwala's Surface, Seagate, various USBs, and google accounts.  This data was designated as "Attorneys' Eyes Only" because it contains confidential Singota information. (See attached.)

Please confirm that you have not provided a copy of the "Attorneys Eyes Only" designated data produced in this case to Ms. Attariwala, including as part of any file transfer following your withdrawal from the case.

Thank you for your attention to this matter.

Sincerely,

Christopher C. Murray

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

| | |
|---|---|
| **From:** | Rebecca Green <rgreen@theESIteam.com> |
| **Sent:** | Monday, September 09, 2019 11:57 AM |
| **To:** | Paul.L.Jefferson; Murray, Christopher C. |
| **Cc:** | Erik C. Johnson; Cynthia.A.Bedrick; Jody.M.Butts; Allen, Justin A.; Jackson, Susan H. |
| **Subject:** | Singota v. Attariwala - Attariwala ESI Delivery to MSTH |

As shown in the Proof of Delivery below, Attariwala ESI, marked Attorney's Eyes Only, was delivered to Jody Butts at the MSTH Shelbyville Office.  The passwords have been sent to the MSTH counsel via a separate email.

## Proof of Delivery

Dear Customer,

This notice serves as proof of delivery for the shipment listed below.

**Tracking Number**
1Z5Y63F10169887578

**Service**
UPS Next Day Air®

| **Delivered On** | **Received By** |
|---|---|
| 09/09/2019 10:14 A.M. | MCCFARLAND |

| **Delivered To** | **Left At** |
|---|---|
| SHELBYVILLE, IN, US | Inside Delivery |

On the external drive contained in the box marked Western Digital For MAC, is a full image of the MacBook produced in this matter. The image can be read by multiple E-Discovery tools and, for your convenience, a copy of FTK Imager is contained on the non-MAC External Drive.

The other (non-MAC) drive is encrypted with Bitlocker and the password has been provided to MSTH attorneys.  On that drive are the following folders and sub-folders:

- ∨ 📁 Attariwala OnLine Accounts
  - › 📁 Google Drive A
  - › 📁 Google Drive B
  - 📁 Attariwala Seagate E01 Image
  - 📁 Attariwala Surface
  - ∨ 📁 Attariwala USB Images
    - 📁 BioC_A
    - 📁 BioC_B
    - 📁 Kingston
    - 📁 LifeSciences
    - 📁 SanDisk_A
    - 📁 SanDisk_B
    - 📁 SanDisk_C
    - 📁 Singota
  - › 📁 FTK Imager

Google Drive A is the jsaini1@gmail.com account collected via Google Archive on 3/28/2019 with the Google Defaults.  Google Drive B is the jsaini1@gmail.com account collected via Google Archive on 4/4/2019 with ALL Options selected.

The rest of the items are self-explanatory by their folder title.  These are image files which can be read using FTK Imager; also included.

To use FTK Imager, launch the application using the FTK Imager.exe file and then select File | Add Evidence File.  Then choose Image File and navigate to the folder | file you wish to review.  You can use FTK Imager to view the Google Drive folders as well. The process is one of expanding folders and clicking on file names to see  them in the preview pane.

All the Best,
Rebecca Green
Electronic Discovery & Digital Forensics
317-527-0002 (voice)

NOTICE:  If received in error, do not read, copy, or distribute and, please, delete immediately.  Confidentiality and/or privilege is not waived if sent, unintentionally, to the wrong person.

# McNeelyLaw LLP

J. Lee McNeely
Direct Dial: 317-825-5151
LMcNeely@McNeelyLaw.com

April 28, 2020

*Via Email*

Christopher C. Murray
OGLETREE DEAKINS NASH SMOAK
 & STEWART PC
111 Monument Circle
Suite 4600
Indianapolis, Indiana 46204
christopher.murray@ogletree.com

> Re:   *Bioconvergence LLC d/b/a Singota Solutions v. Jaspreet Attariwala*
>       *Monroe Circuit Court*
>       *Case No. 1:19-cv-01745-SEB-TAB*

Dear Mr. Murray:

In response to your email of April 16, 2020, regarding our production of any Attorneys' Eyes Only ("AEO") documents to our former client, Jaspreet Attariwala, we have checked our files and the hard drive marked as AEO is in our files and has not been produced to our former client in whole or in part. We have produced documents to her current bankruptcy counsel, who has acknowledged receipt of the Protective Order and his obligation to honor it. We have also produced various non-AEO documents to our former client, including redacted copies of AEO documents that are publicly available through Pacer.

As you are aware, Ms. Attariwala is currently representing herself so it is not clear to us whether or not she is entitled to any AEO documents if she was to request them. Please advise as to the case law supporting your assertion that a *pro se* litigant is not entitled to AEO documents. If you have specific concerns, please bring them to our attention otherwise we will consider the matter resolved.

Thank you.

Yours truly,

McNeelyLaw LLP

J. Lee McNeely

**OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.**

*Attorneys at Law*

111 Monument Circle, Suite 4600
Indianapolis, IN 46204
Telephone:  317-916-1300
Facsimile:  317-916-9076
www.ogletree.com

# Ogletree
# Deakins

Christopher C. Murray
317-916-2522
christophe.murray@ogletree.com

May 7, 2020

**Via Electronic Transmission:**
J. Lee McNeely
Cynthia A. Bedrick
McNeely Law LLP
2177 Intelliplex Drive, Suite 251
Shelbyville, IN  46176

   Re: *BioConvergence, LLC v. Jaspreet Attariwala*
     Case No.:  1:19-cv-01745-SEB-TAB

Dear Counsel:

   This letter responds to your April 28, 2020 letter.  You noted that you have produced documents to Jaspreet Attariwala's current bankruptcy counsel, who you state has acknowledged receipt of the Protective Order and his obligation to honor it.

   As you know, the Protective Order entered in this action and June 7, 2019, provides in relevant part:

   Information that is produced or exchanged in the course of this action and designated under this Order may be used solely for the preparation, trial, and any appeal <u>of this action</u>, as well as related settlement negotiations, and for no other purpose, without the written consent of the Designating Party. No designated information may be disclosed to any person except in accordance with the terms of this Order.

Stipulated Protective Order ("PO") [Doc. 26] ¶ V(A) (emphasis added).  Mr. Lynn has not appeared for Ms. Attariwala in this action. Indeed, to our knowledge, he is not admitted to practice in the Southern District of Indiana. In addition, on March 25, 2020, Mr. Lynn, in response to our inquiry, stated that "My role is limited to representing Ms. Attariwala in her bankruptcy." (Email from D. Lynn to C. Murray, dated Mar. 25, 2020, enclosed.)

   Under these circumstances, there is no basis for Mr. Lynn to receive copies of confidential or Attorneys-Eyes-Only documents produced in this action subject to the PO. Please promptly provide us a list of all confidential documents and AEO documents provided to Mr. Lynn.  Please furthermore demand that he return those documents to you with instructions that he not retain copies. Finally, please provide us a copy of his signed Acknowledgement A to the PO along with the date when he received any confidential or AEO documents produced in this action.

Atlanta ▪ Austin ▪ Berlin (Germany) ▪ Birmingham ▪ Boston ▪ Charleston ▪ Charlotte ▪ Chicago ▪ Cleveland ▪ Columbia ▪ Dallas ▪ Denver ▪ Detroit Metro ▪ Greenville
Houston ▪ Indianapolis ▪ Jackson ▪ Kansas City ▪ Las Vegas ▪ London (England) ▪ Los Angeles ▪ Memphis ▪ Mexico City (Mexico) ▪ Miami ▪ Milwaukee ▪ Minneapolis
Morristown ▪ Nashville ▪ New Orleans ▪ New York City ▪ Oklahoma City ▪ Orange County ▪ Paris (France) ▪ Philadelphia ▪ Phoenix ▪ Pittsburgh ▪ Portland ▪ Raleigh ▪ Richmond
St. Louis ▪ St. Thomas ▪ Sacramento ▪ San Antonio ▪ San Diego ▪ San Francisco ▪ Seattle ▪ Stamford ▪ Tampa ▪ Toronto (Canada) ▪ Torrance ▪ Tucson ▪ Washington

May 7, 2020
Page 2

      Under no circumstances may Singota documents or data designated confidential or AEO be provided to Ms. Attariwala without Singota's prior consent. Doing so would violate the terms of the PO, which specifies to whom confidential and AEO documents may be disclosed, and violate the two preliminary injunctions in this litigation which order that Ms. Attariwala may not possess Singota's trade secret and confidential information.  If Ms. Attariwala believes at some point she is entitled to review such data and documents, it will be necessary to seek a modification of the PO and the preliminary injunctions and to put in place a protocol that protects Singota's and its clients' and prospective clients' trade secret and confidential information.

      Please let me know if you have any questions.

      Sincerely,

      Christopher C. Murray

CCM/dmk

42756154.1