UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BIOCONVERGENCE LLC, *d/b/a Singota Solutions*,  )<br><br>*Plaintiff*,  )<br><br>vs.  )<br><br>JASPREET ATTARIWALA,  )<br><br>*Defendant*.  ) | 1:19-cv-1745-SEB-MG |

## ORDER

Pending before the Court is a Motion for Leave to File Second Amended Complaint, [Filing No. 267], filed by Plaintiff BioConvergence LLC, doing business as Singota Solutions ("Singota"), in this breach-of-contract and trade secrets case brought by Singota against its former employee, *pro se* Defendant Jaspreet Attariwala.  This matter is now ripe for the Court's decision.

**I.**
**BACKGROUND**

**A.     Factual Background[1]**

This case concerns several claims arising out of Ms. Attariwala's departure from Singota to work for Emergent Biosolutions, Inc. ("Emergent").  Singota is a company in Bloomington, Indiana that serves as a contract development and manufacturing organization (referred to in the industry as a "CMO" or "CDMO") for pharmaceutical, biotechnology, animal health, and medical device industries.  [Filing No. 121 at 2.]  In addition to its own confidential business information, to service its clients, Singota also maintains highly confidential information regarding its clients'

---

[1] Portions of this summary are from the Court's Order on Plaintiff's Motion for Further Preliminary Injunction.  [Filing No. 121.]

products and research and therefore requires employees to enter into confidentiality agreements. [Filing No. 121 at 2-3.]

Ms. Attariwala began working for Singota in September 2015 as a senior business development manager, during which time she was responsible for developing new business leads, which necessitated her accessing Singota's confidential and proprietary business information, as well as the confidential information of Singota's clients. [Filing No. 121 at 3.]   As a condition of her employment, Ms. Attariwala executed an employment agreement that contains two restrictive covenants relevant to this lawsuit: (1) an agreement not to solicit certain Singota clients and prospective clients for 12 months regarding related products or services following termination of her employment with Singota, and (2) an agreement not to use, disclose, or misappropriate Singota's confidential business information.  [Filing No. 121 at 3-4.]

Ms. Attariwala began communicating with Emergent representatives in October 2018 about the possibility of her joining Emergent.  [Filing No. 121 at 4.]  Ms. Attariwala accepted an offer from Emergent on December 11, 2018, submitted her resignation to Singota on December 19, 2018, and began working for Emergent on February 11, 2019.  [Filing No. 121 at 4.]

In January 2019, Singota discovered that Ms. Attariwala had emailed Singota clients and prospective clients from her Singota email account to inform them that she was leaving to work for Emergent and that she would contact them once she started her new job.  [Filing No. 121 at 5.] On January 18, 2019, Singota sent Ms. Attariwala's attorney a cease-and-desist letter demanding that she disclose and return any confidential or proprietary information that she had taken.  [Filing No. 121 at 5.]

On January 18, 2019, Singota also sent a letter to Emergent's general counsel, advising Emergent of the restrictive covenants in Ms. Attariwala's employment agreement and asked that

Emergent "review the [a]greement with Ms. Attariwala and ensure that she complies with the provisions therein." [Filing No. 267-1 at 120.] Emergent's counsel responded on January 24, 2019 by email stating that based on its investigation, Ms. Attariwala did not solicit business from Singota's clients and that Ms. Attariwala's work for Emergent would not overlap with her prior work for Singota. [Filing No. 267-1 at 123.] Counsel for Singota responded in a January 30, 2019 email by disputing the nature of Ms. Attariwala's communications with Singota clients and prospective clients and the nature of the work she performed at Singota. [Filing No. 267-1 at 125-126.] Counsel for Emergent responded on February 1, 2019 stating that Ms. Attariwala would not contact any of Singota's clients and that Emergent would hire Ms. Attariwala on the following terms:

> 1.  Ms. Attariwala will comply with the confidentiality and proprietary information provision of the [employment] agreement [with Singota];
>
> 2.  During the restrictive covenant period, Ms. Attariwala will not service, directly or indirectly, the clients from the list Singota provided her to be transitioned (*please send me that list*); and
>
> 3.  Emergent will exclude Ms. Attariwala from working, directly or indirectly, with the Vanrx (SA 25) technology in Winnipeg, Canada.

[Filing No. 267-1 at 129.] On February 11, 2019, Ms. Attariwala signed an "Agreement to Comply with Provisions of Prior Employment Agreement," which states as follows:

> I have reviewed the Employment Agreement (the "Agreement"), dated September 28, 2015, between me and BioConvergence LLC d/b/a/ Singota Solutions ("Singota") and understand its terms. I hereby agree that, in connection with my employment with Emergent BioSolutions Inc. ("Emergent"), I will not violate any of said terms, and more specifically, my intent is not to violate the confidentiality and non-solicit provisions therein. In that regard, I promise not to convey to Emergent in any way any confidential or otherwise proprietary information of Singota's, and I will not, directly or indirectly, solicit or otherwise service a Singota customer, in accordance with the provisions of paragraphs 4 and 6 of the Agreement. Should I learn that Emergent is working with (or considering working with) a current or former Singota customer that I otherwise am restricted from servicing under paragraph 6, I will advise Emergent accordingly immediately upon

learning such fact. I further agree that my failure to comply with the terms of the Agreement may result in the termination of my employment from Emergent.

[Filing No. 267-1 at 133.]

Sometime later in February 2019, Singota's analysis of Ms. Attariwala's Singota email data showed that Ms. Attariwala had forwarded large amounts of Singota's confidential business information to her personal email address, including a memorandum discussing Singota's aseptic manufacturing capabilities, as well as information about Singota's clients, prospective clients, contact lists, internal processes, technology and business practices.  [Filing No. 121 at 5.]

**B.    Procedural Background**

*1.    State Court Proceedings*

These discoveries prompted Singota to file suit against Ms. Attariwala in Indiana state court on February 27, 2019 and to seek a temporary restraining order and preliminary injunction.

[Filing No. 121 at 6.]  On February 28, 2019, the state court issued a temporary restraining order:

(1) Enjoining Ms. Attariwala from having in her possession, custody, or control and from directly or indirectly using [Singota's] trade secrets, confidential information, protected information, and other property;

(2) Prohibiting Ms. Attariwala from breaching her Employment Agreement by directly or indirectly communicating with or servicing [Singota's] clients and prospective clients; [and]

(3) Requiring Ms. Attariwala to return to [Singota] all confidential  information, protected information, and other property that she took or copied  from [Singota], including from all email accounts, computer hardware or  software, and other electronic storage media, and for independent verification of  her compliance with these requirements.

[Filing No. 121 at 6 (quoting Filing No. 85-4).]

The state court subsequently entered a stipulated preliminary injunction on March 4, 2019, requiring Ms. Attariwala and all those acting in concert with her to:

- avoid directly or indirectly disclosing, using, or exploiting Singota's "Confidential Information" and to hold such Confidential Information in trust and confidence until it could be returned to Singota;

- turn over all documents, data, devices, storage media, and other property belonging to Singota;

- avoid directly or indirectly destroying, erasing, or otherwise making unavailable any such documents, data, devices, storage media, etc.;

- within twenty-four (24) hours, make all computers, hard drives, storage media, email and cloud accounts, cell phones, and other devices available to Singota's forensic expert, Ms. Rebecca Green;

- not attempt to reconstitute, recover, or in any way restore any of the Confidential Information returned to Singota pursuant to the preliminary injunction; and

- comply with all other restrictive covenants in her employment agreement.

[Filing No. 121 at 7 (citing Filing No. 85-6).]  On that same date, the state court also issued an order for inspection of computers and electronic information storage devices (the "Inspection Order"), which detailed specific protocols to ensure that Ms. Attariwala produce for inspection all accounts and devices that could contain Singota information to Ms. Rebecca Green, who was appointed by the state court to review all accounts and devices.  [Filing No. 121 at 7 (citing Filing No. 85-7).]  The Inspection Order, in conjunction with the preliminary injunction, ordered Ms. Attariwala, and all those acting in concert with her, to produce for inspection all computers, hard drives, electronic storage devices, email or cloud accounts, phones, and tablets used to store electronic information within her possession, custody, or control.  [Filing No. 121 at 7 (citing Filing No. 85-7).]  Ms. Attariwala was to produce the accounts and devices within 24 hours following the issuance of the preliminary injunction and to immediately cease accessing any account or device that contained Singota's confidential information until Ms. Green had an opportunity to inspect the accounts and devices.  [Filing No. 121 at 8.]  The state court further ordered Ms.

Attariwala to pay the costs of Ms. Green's forensic work as set forth in the stipulated preliminary injunction and the Inspection Order.  [Filing No. 121 at 8 (citing Filing No. 85-7).]

Ms. Green's subsequent inspections in March and April 2019 uncovered information suggesting that Ms. Attariwala had obfuscated the number of personal email accounts, storage accounts, and personal devices to which she had sent Singota-related information and that Ms. Attariwala had accessed devices and accounts likely to contain Singota's confidential information in violation of the state court's orders.  [Filing No. 121 at 9-10.]  Ms. Singota also admitted to deleting Singota data from her personal email account, despite a preservation order entered by the state court.  [Filing No. 121 at 10.]  Ms. Green also discovered that on the same date that Ms. Attariwala accepted the job offer from Emergent, she generated six reports containing confidential information relating to hundreds of Singota's clients and prospective clients.  [Filing No. 121 at 10.]

In light of this information, Singota moved the state court on April 14, 2019 to enter a show cause order as to why Ms. Attariwala should not be held in contempt.  [Filing No. 121 at 10.]  The state court granted the motion and ordered Ms. Attariwala to show cause.  [Filing No. 121 at 11.]  The state court also ordered Ms. Attariwala to pay Ms. Green's expenses as previously ordered.  [Filing No. 121 at 11.]  The state court ordered Ms. Attariwala to appear in person at a show-cause hearing on April 18, 2019 and bring with her every device and account that contained Singota's information, and when Ms. Attariwala failed to appear for that  hearing, the state court found her in contempt and issued a bench warrant for Ms. Attariwala's arrest.  [Filing No. 121 at 11.]  The state court also ordered Ms. Attariwala to pay Ms. Green's outstanding invoices, then totaling $55,000.  [Filing No. 121 at 11.]  According to Ms. Green, aside from an initial $5,000 deposit, Ms. Attariwala has not paid her any other amounts.  [*See* Filing No. 271.]

> 2.      *Proceedings in this Court*

Ms. Attariwala removed this case to federal court on April 30, 2019.  [Filing No. 1.] Singota filed an Amended Complaint on June 18, 2019, adding various claims and allegations against Ms. Attariwala.  [Filing No. 30.]  The Court entered a Case Management Plan Order in July 2019 that set a deadline of November 18, 2019 for amending pleadings and adding parties. [Filing No. 40 at 3.]

In the meantime, the parties engaged in discovery and motion practice.  Singota deposed Ms. Attariwala on July 11, 2019.  [*See* Filing No. 85-1.] Ms. Green also continued her review efforts, issuing reports dated October 10, 2019, [Filing No. 85-2], October 31, 2019, [Filing No. 95-1], and December 3, 2019, [Filing No. 111-1].

On October 10, 2019, Singota filed a Motion for Further Preliminary Injunction, [Filing No. 84], which the Court granted on December 18, 2019, [Filing No. 121].  The further injunction reaffirmed the state court's injunction; enjoined Ms. Attariwala and all persons in active concert or participation with her from possessing, transmitting, using, copying, or disclosing Singota's confidential information or trade secrets; required Ms. Attariwala and all persons in active concert or participation with her to provide Ms. Green with access "to all email accounts and online storage accounts" identified as outstanding in Ms. Green's December 3, 2019 report, as well as any other unidentified accounts in Ms. Attariwala's possession, custody, or control; ordered Ms. Attariwala to provide Ms. Green access to all outstanding devices identified in Ms. Green's December 3, 2019 report, as well as any other unidentified devices in her possession, custody or control; and enjoined Ms. Attariwala from continuing her employment with Emergent "or any other competitor of Singota" until she provides evidence "[1] that she has surrendered to Singota all the Singota documents she wrongfully took as well as all accounts and devices to which she copied,

transmitted, disclosed, or shared Singota's documents; [2] that she no longer has access to or possession of Singota's confidential information and trade secrets in any form; and [3] that no third party to whom she may have distributed these documents, or the confidential information therein, continues to retain them in derogation of her requests that they be returned to Singota." [Filing No. 122 at 3-4.] The injunction order required Ms. Attariwala to "disclose the terms of this Order . . . to . . . all persons holding management positions at Emergent who oversee Ms. Attariwala's employment." [Filing No. 122 at 4.]

However, the day prior to the Court's issuance of its further preliminary injunction order— on December 17, 2019—Ms. Attariwala filed for Chapter 13 bankruptcy protection. [Filing No. 123.] Ms. Attariwala did not inform this Court of the filing until December 18, 2019. [Filing No. 123.] The bankruptcy court lifted the automatic stay, in part, to allow for the enforcement of the Court's December 18, 2019 further preliminary injunction order. *In re Jaspreet Attariwala*, No. 19-00828-SMT (Bankr. D.D.C.), at Dkt. 42; [Filing No. 139-1.]

On March 4, 2020, the Court lifted the injunction to the extent Ms. Attariwala was now permitted to be employed in the biotechnology industry after Ms. Attariwala submitted evidence that she had complied with all of the obligations imposed by the further preliminary injunction order. [Filing No. 156.] This partial lifting of the injunction was reaffirmed by the Court in an order denying Singota's motion for reconsideration. [Filing No. 188.]

The bankruptcy court subsequently lifted the automatic stay as to Singota's claims against Ms. Attariwala on June 25, 2020. [Filing No. 213.]

On November 13, 2019, Singota served a subpoena on Emergent, which sought the production of 61 categories of documents. On November 27, 2019, Emergent filed a Motion to Quash the subpoena in the U.S. District Court for the District of Columbia, but that proceeding

8

was stayed by Ms. Attariwala's bankruptcy filing. *See Bioconvergence LLC v. Attariwala*, No. 1:19-mc-00205-RDM (D.D.C.).  On August 6, 2020, after the bankruptcy stay had been lifted, Singota served Emergent with a new subpoena for the production of documents.  Emergent responded on August 28, 2020, and according to Singota, "fail[ed] and refus[ed] to produce most requested information, including failing to produce any documents reflecting any effort by Emergent to verify [Ms.] Attariwala's compliance with a February 11, 2019 'Agreement to Comply with Provisions of Prior Employment Agreement' or any effort by Emergent otherwise to fulfill certain assurances Emergent had provided to Singota." [Filing No. 267 at 5-6.]

With the bankruptcy stay lifted, Singota proposed a new case schedule in August 2020, which the Court adopted.  [Filing No. 222; Filing No. 225.]  The new case schedule provided a discovery deadline of July 13, 2021 and a trial month of September 2021.  [Filing No. 225.] Singota did not propose a new deadline to amend pleadings and add parties.  [*See* Filing No. 222.] Singota requested the Court extend deadlines once again, which the Court granted on January 20, 2021, setting a discovery deadline of November 10, 2021 and a trial month of December 2021. [Filing No. 261; Filing No. 265.]  Singota did not request a deadline for amending pleadings and adding parties.  [*See* Filing No. 261.]

On April 15, 2021, Singota filed the instant Motion for Leave to File a Second Amended Complaint.  [Filing No. 267.]  Singota seeks to add Emergent[2] and a company owned by Ms. Attariwala called Honey Ji's Corporation ("Honey Ji's") as defendants.  According to Ms. Attariwala, Honey Ji's is a dessert business that she operates.  [Filing No. 92-1 at 3.]

---

[2] Singota also seeks to add Cangene BioPharma LLC, a company wholly owned by Emergent. For ease of discussion, references to "Emergent" includes Cangene BioPharma LLC, as well as Emergent Biosolutions, Inc.

## II.

### DISCUSSION

Singota asks that the Court permit it to add Emergent and Honey Ji's as defendants in this action and assert numerous claims against each.  [*See* Filing No. 267-1.]  Singota contends that it "has learned, based on the minimal evidence that Emergent has produced in response to its [August 6, 2020] subpoena, that Emergent knowingly put [Ms.] Attariwala in positions where she could use Singota's Confidential Information for Emergent's benefit and that it did not seek to enforce assurances Emergent had provided Singota."  [Filing No. 267 at 9.]  As for Honey Ji's, Singota says that it has determined "from the evidence produced in this case and financial records produced in [Ms.] Attariwala's bankruptcy case that [Ms.] Attariwala appears to have used her entity, Honey Ji's, to hold property, including money that she would then use for personal purposes."  [Filing No. 267 at 9.] Singota contends that Ms. Attariwala used Honey Ji's to evade the preliminary injunction order "by claiming that certain devices and/or accounts belong to Honey Ji's, even though computer forensic expert Rebecca Green has shown that [Ms.] Attariwala saved large amounts of Singota's Confidential Information to devices that [Ms.] Attariwala claim belong to Honey Ji's." [Filing No. 267 at 9.]  Singota contends that any delay in seeking leave to amend was caused by Ms. Attariwala's failure to comply with court orders and refusal to pay the fees of the computer expert, Ms. Green, as required by the Inspection Order.  [Filing No. 267 at 10.]  It also points out that Singota's case against Ms. Attariwala was subject to the automatic bankruptcy stay from December 17, 2019 until the stay was lifted on June 25, 2020.  [Filing No. 267 at 11.]  Singota contends that despite Ms. Attariwala's efforts to thwart this litigation, it has engaged in "persistent and substantial efforts to obtain further discovery from [Ms.] Attariwala and her husband . . . concerning compliance with the Court's preliminary injunction order and in support of Singota's claims."  [Filing No. 267 at 11.]  It further contends that it "obtained significant discovery in [Ms.]

Attariwala's bankruptcy case regarding [her] financial practices, including her use of the Honey Ji's entity to hold and spend funds and to acquire property such as computer devices and accounts for her personal use." [Filing No. 267 at 11.] Singota also contends that Emergent and Honey Ji's will not be prejudiced because Emergent has been aware of this matter since 2019 and has been subpoenaed, and Honey Ji's is controlled by Ms. Attariwala and therefore cannot claim surprise. [Filing No. 267 at 11.] Finally, Singota asserts that the amendments would not be futile because the claims against Emergent and Honey Ji's meet the pleading standard and the addition of these parties is appropriate under Fed. R. Civ. P. 20(a)(2) because the claims against each defendant arise out of the same transaction or occurrence. [Filing No. 267 at 12-14.]

Ms. Attariwala responds[3] by pointing out that Singota had previously moved to amend its complaint while the case was pending in state court to add Ms. Attariwala's husband, Simranjit Singh Attariwala, ("Mr. Singh"), as a party, but Singota subsequently withdrew that motion. [Filing No. 268 at 1.] Ms. Attariwala argues that Singota's request to amend is too late, contending that Singota's proposed claims against Emergent were known to Singota at the inception of this dispute back in February 2019. [Filing No. 268 at 2.] She argues that Singota's motion "fails to say why it waited *this* long when it alleges Emergent and Honey Ji['s] had adequate notice that they could be added as parties" and contends that there is no "new information that justifies adding any new parties more than 2 years later." [Filing No. 268 at 2.] Ms. Attariwala says that an amended complaint would bring further delay to this case, and that delay would prejudice her. [Filing No. 268 at 2.] She further argues that Honey Ji's is not a necessary party to this lawsuit, that it is a Virginia-based dessert company that has never done business in Indiana, and that Honey

---

[3] Because Ms. Attariwala is proceeding *pro se*, the Court construes her response brief liberally. *See Parker v. Four Seasons Hotel, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017)

Ji's does not need to be a party in order for Singota to seek evidence from it. [Filing No. 268 at 3.] She makes the same argument as to Emergent, contending that Singota's desire to obtain additional discovery from Emergent is not a basis for adding it as a party. [Filing No. 268 at 3.]

In reply, Singota contends that its delay in seeking leave to add new parties is solely attributable to Ms. Attariwala's (and her husband's) "obstruction and delay" in this litigation, including "[o]bstructing computer forensic expert Rebecca Green's work by engaging in contempt of the state court's Expenses Order" by not paying Ms. Green's fees; "filing bankruptcy, resulting in an automatic stay of this matter of over six months"; and "[e]ngaging in a pattern of delay and avoidance in relation to being deposed." [Filing No. 274 at 2-3 (internal quotation marks omitted).] Singota discusses how Mr. Singh evaded Singota's efforts to serve him with a subpoena, how Ms. Attariwala has delayed her second deposition, and how the bankruptcy stay delayed Singota's efforts to obtain third-party discovery from Emergent until August 2020 (and complains that Emergent's discovery response was "minimal and deficient"). [Filing No. 274 at 3.] Singota asserts that, despite these hurdles, it "has been persistent and diligent in pursuing its claims, investigation, and discovery throughout this litigation." [Filing No. 274 at 3.] Finally, Singota contends that Ms. Attariwala, Emergent, and Honey Ji's will not suffer any prejudice by the amendment because the Court can adjust the case schedule following the amendment. [Filing No. 274 at 3.]

## A.   Good Cause under Rule 16

Before reaching the standard under Fed. R. Civ. 15(a), when a party seeks leave to amend after the deadline for amendments to the pleadings has expired, the party first must show "good cause." Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause."); *see also Arrigo v. Link*, 836 F.3d 787, 797 (7th Cir. 2016) ("To amend a pleading after the expiration of the

trial court's scheduling order deadline to amend pleadings, the moving party must show 'good cause.'") (internal citation and quotation marks omitted).  Courts may "apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) [are] satisfied." *Bell v. Taylor*, 827 F.3d 699, 706 (7th Cir. 2016) (internal citation and quotation marks omitted).

Because the deadline for the parties to amend their pleadings was November 18, 2019, [Filing No. 40], Singota must first show "good cause" for the belated motion for leave to amend, which was filed April 15, 2021, [Filing No. 267].  *See* Fed. R. Civ. P. 16(b)(4).  "Rule 16's 'good cause' standard focuses primarily on the moving party's diligence in seeking leave to amend or supplement its complaint." *R3 Composites Corp. v. G&S Sales Corp.*, 2021 WL 613836, at *3 (N.D. Ind. Feb. 17, 2021).  The movant—Singota—bears the burden of showing why "good cause" exists.  *E.F. Transit Inc. v. Ind. Alcohol & Tobacco Comm'n*, 2015 WL 3631742 (S.D. Ind. June 10, 2015).  The Court analyzes whether Singota has established good cause—*i.e.*, that is has been diligent in seeking to add each party—as to each proposed new defendant.

### 1.    Emergent

Singota seeks to amend its complaint to assert the following claims against Emergent: breach of contract; promissory estoppel; violation of Indiana and Maryland Uniform Trade Secrets Acts; violation of the federal Defend Trade Secrets Act; tortious interference with contract; tortious interference with business relationships; unjust enrichment; conversion; theft and receipt of stolen property; a claim under the Indiana Crime Victims Relief Act; civil conspiracy; unfair competition; and a claim for injunctive relief.  [*See* Filing No. 267-1.]

The good cause offered by Singota for the belated amendment generally is that Ms. Attariwala (and her husband, Mr. Singh) have not been forthcoming—and in certain instances,

have been obstructive—during the discovery process.  For Ms. Attariwala's actions to provide good cause, the alleged obstructive conduct must have been the cause of Singota's inability to timely add parties to this case.  Specific to the proposed claims against Emergent, Singota contends that it learned new information by virtue of Emergent's August 28, 2020 response to Singota's subpoena.  [*See* Filing No. 267 at 9 ("Singota has learned, based on the minimal evidence that Emergent has produced in response to its subpoena, that Emergent knowingly put [Ms.] Attariwala in positions where she could use Singota's Confidential Information for Emergent's benefit and that it did not seek to enforce assurances Emergent had provided Singota….").]

Other than what it describes as Emergent's lackluster response to the August 2020 subpoena, Singota does not identify what new information was revealed by the August 28, 2020 subpoena response or any other source, that it did not already know or could not have known.  Nor does Singota identify what new information it learned from Ms. Attariwala or her husband's delayed discovery responses that gave rise to the new claims against Emergent.  While Ms. Attariwala's behavior in this case may indeed be contemptible, it does not provide blanket cause for belatedly amending pleadings without some connection between Singota's ability to learn about the new claims and Ms. Attariwala's purportedly bad behavior.  In short, Singota bears the burden of establishing good cause, and failing to specifically identify what new information it learned that gave rise to causes of action against Emergent that it did not know or was unable to learn sooner does not meet the good cause standard.

Furthermore, a review of Singota's prior court filings suggest that Singota had information to put it on notice of potential claims against Emergent early in this litigation.  *See Trustmark Ins. Co. v. Gen. Cologne & Life Re of America*, 424 F.3d 542, 553 (7th Cir. 2005) (affirming denial of motion for leave to amend where "Trustmark was, or should have been, aware of the facts

underlying its equitable estoppel claim as early as 1999").  For example, in connection with its October 10, 2019 Motion for Further Preliminary Injunction before the Court, Singota cited the following evidence:

- "[Ms.] Attariwala testified that no one at Emergent ever asked her whether she had taken information from Singota."  [Filing No. 85 at 13.]

- "On February 6, 2019, [Patrick] DePalma, [Ms.] Attariwala's supervisor at Emergent asked [Ms.] Attariwala to provide him a 'high level client list from your time at Singota.'"  [Filing No. 85 at 13.]  The motion recounts that Ms. Attariwala provided Mr. DePalma with a list of eight clients and prospects with whom she had worked.  [Filing No. 85 at 13.]

- Singota asserted that "DePalma's request induced [Ms.] Attariwala to disclose Singota's confidential information to a Singota competitor in direct breach of Attariwala's confidentiality agreement with and other duties owed to Singota." [Filing No. 85 at 13 n.5.]

- Singota noted that Ms. Green had discovered that Ms. Attariwala accessed Singota's confidential information after Ms. Attariwala commenced her employment with Emergent.  [Filing No. 85 at 14.]

- Singota recounted that Ms. Attariwala testified at her deposition that she was shadowing a business development employee at Emergent, which included "attending meetings with, sending emails to, and conducting telephone calls with clients and prospective clients of Emergent," [Filing No. 85 at 25], and that Ms. Attariwala "admitted that the clients and prospective clients with whom she interacts can be located anywhere nationwide," [Filing No. 85 at 25-26].

- Singota further noted that Ms. Attariwala "was seen on September 26, 2019, representing Emergent at Contract Pharma's 2019 Contracting and Outsourcing Conference and Tabletop Exhibition," representing services offered by Emergent that directly compete with Singota's services.  [Filing No. 85 at 26.]

Singota also alleges in its Amended Complaint, filed June 18, 2019, that Ms. Attariwala took Singota's confidential information to use for Emergent's benefit.  [Filing No. 30 at 10-15.]  For example, Singota alleges that Ms. Attariwala sent Patrick DePalma, an Emergent business development director, information about a potential customer lead while she was still employed by Singota.  [Filing No. 30 at 11.]  Singota specifically alleges that Ms. Attariwala misappropriated

15

Singota's information "to attempt to divert clients and prospective clients to [Emergent]." [Filing No. 30 at 15.] Singota does not explain why the above information, which was known to it prior to October 10, 2019 when it sought a further injunction against Ms. Attariwala, was insufficient to put Singota on notice of claims relating to Emergent allegedly placing Ms. Attariwala "in positions where she could use Singota's Confidential Information for Emergent's benefit" and that it allegedly "did not seek to enforce assurances Emergent had provided Singota." [*See* Filing No. 267 at 9.] *See Trustmark*, 424 F.3d at 553.

Finally, even assuming Singota learned new information from Emergent's August 28, 2020 subpoena response that gave rise to claims against Emergent, Singota does not explain why it then waited an additional 7 ½ months to seek to add Emergent as a party. *See E.F. Transit*, 2015 WL 3631742, at *2 (noting that the Seventh Circuit has held that "the requisite diligence is not established if delay is shown and the movant provides no reason, or no good reason, for the delay"). The Court also notes that in between Singota's service of the second subpoena on Emergent, and Singota's filing of its Motion for Leave to File a Seconded Amended Complaint, Singota proposed (and the Court entered) two new case schedules, neither of which included a new proposed deadline to amend pleadings and add parties, or otherwise put the Court on notice that Singota would be seeking leave to add parties. [Filing No. 222; Filing No. 261.]

Therefore, Singota has failed to meet its burden to establish that it was diligent in seeking to add Emergent as a party to this case such that good cause exists to excuse the delay.

2.     *Honey Ji's*

Singota seeks to amend its complaint to assert the following claims against Honey Ji's: violation of Indiana and Maryland Uniform Trade Secrets Acts; violation of the federal Defend Trade Secrets Act; tortious interference with business relationships; unjust enrichment;

conversion; theft and receipt of stolen property; a claim under the Indiana Crime Victims Relief Act; civil conspiracy; unfair competition; and a claim for injunctive relief. [*See* Filing No. 267-1.]

The good cause offered by Singota for not adding Honey Ji's as a defendant sooner is once again that Ms. Attariwala and Mr. Singh have been obstructive during the discovery process. In particular, Ms. Attariwala "refused to pay computer forensic expert [Ms.] Green to complete her work under the Inspection Order." [Filing No. 267 at 10.] Singota further alleges that it has learned "from the evidence produced in this case and financial records produced in [Ms.] Attariwala's bankruptcy case that [Ms.] Attariwala appears to have used her entity, Honey Ji's, to hold property, including money that should would then use for personal purposes." [Filing No. 267 at 9.] Singota then claims that Ms. Attariwala is using Honey Ji's to evade the preliminary injunction order "by claiming that certain devices and/or accounts belong to Honey Ji's, even though computer forensic expert Rebecca Green has shown that [Ms.] Attariwala saved large amounts of Singota's Confidential Information to devices that [Ms.] Attariwala claim belong to Honey Ji's." [Filing No. 267 at 9.] Singota continues: "To ensure that Singota remains able to obtain the return of all of its Confidential Information and property, Singota has determined that it is prudent to name Honey Ji's as a defendant." [Filing No. 267 at 9.]

As stated above, the good-cause determination looks at the movant's diligence. Once again, Singota has failed to meet its burden by not articulating how Ms. Attariwala's purported misconduct has prevented it from learning about its potential claims against Honey Ji's in a timely fashion. Nor does Singota articulate how its discovery of Honey Ji's banking accounts in the bankruptcy case relate to the claims that it proposes to assert against Honey Ji's in this litigation.

And, again, the record suggests that Singota has been aware of Ms. Attariwala's use of Honey Ji's accounts to download and forward information since nearly the inception of this case. Ms. Green's report dated October 10, 2019, filed with this Court, notes the following:

- On March 6, 2019, Ms. Attariwala produced a Honey Ji's email account (info@honeyji.com) to Ms. Green, and on March 28, 2019, Ms. Green asked for the correct password to that email account, which she received on April 16, 2019. [Filing No. 85-2 at 17-18.]

- "Ms. Attariwala has continued to access her Honeyji Information," and Ms. Attariwala frequently used her Sony Vaio laptop "to access information regarding her HoneyJi business." [Filing No. 85-2 at 163.]

Ms. Green's October 31, 2019 supplemental report contains a discussion of how Ms. Attariwala purchased a Microsoft Surface laptop (the "Surface") for the Honey Ji's business and personal use in November 2018, and how Ms. Green found that Ms. Attariwala had copied the "Jessie Docs" folder containing Singota's confidential information to the Surface on December 19, 2018. [Filing No. 95-1 at 5-6.] Both Ms. Green's October 10, 2019 and October 31, 2019 reports indicate that Ms. Green had imaged and reviewed the contents of the Surface. [Filing No. 85-2 at 158; Filing No. 95-1 at 5.] Ms. Green's December 3, 2019 supplemental report discusses her search of additional accounts with "Honey Ji" in the email name. [Filing No. 111-1 at 10.] The supplemental report reiterates that because Ms. Attariwala maintained possession of her Sony laptop until it was provided to Ms. Green on May 30, 2019, Ms. Attariwala "had access to all the HoneyJi documents." [Filing No. 111-1 at 18.] Furthermore, Singota notes in its October 21, 2020 Motion for Sanctions that "Green has already found that some of the devices that [Ms.] Attariwala claimed were used for her Honey Ji's business contain large amounts of Singota data." [Filing No. 250 at 28.]

Finally, even assuming the Honey Ji's banking documents produced in Ms. Attariwala's bankruptcy were the key to enlightening Singota of its potential claims against Honey Ji's, the

18

bankruptcy docket indicates that Singota has been in possession of this information since September 2020 when it filed a motion to stay the confirmation of Ms. Attariwala's Chapter 13 plan, alleging that "[t]he limited bank statements produced by [Ms. Attariwala] to date show that she made multiple transfers to Honey Ji's Corp., an entity that [Ms. Attariwala] solely owns." *In re Jaspreet Attariwala*, No. 19-00828-ELG (Bankr. D.D.C.), at Dkt. 124-1 at 6.  Singota has not explained why it waited an additional 6 ½ months to seek to add Honey Ji's as a party.

Therefore, Singota has failed to meet its burden to establish that it was diligent in seeking to add Honey Ji's as a party to this case such that good cause exists to excuse the delay.

**B.    Undue Delay Under Rule 15(a)**

Although the Court finds that Singota has not established good cause under Rule 16, and that finding is reason alone to deny Singota's Motion, the Court nonetheless turns to the standard for amending under Fed. R. Civ. P. 15(a).  "Motions for leave to amend are generally denied based on undue delay when they are filed long after the filing of the original pleading and after extensive litigation." *East v. Dimon*, 2021 WL 929668, at *1 (N.D. Ind. Mar. 11, 2021) (citing *Hoenig v. Karl Knauz Motors, Inc.*, 983 F. Supp. 2d 952, 959-60 (N.D. Ill. 2013)).  While delay alone rarely provides sufficient reason to deny a motion for leave to amend, "the longer the delay, the greater the presumption against granting leave to amend." *Tamari v. Bache & Co. S.A.L.,* 838 F.2d 904, 909 (7th Cir. 1988).  That is so because "the longer the delay in seeking leave to amend, the likelier is it both that the delay is inexcusable … and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt resolution of legal disputes." *Id.*  Undue prejudice from a delay "occurs when the amendment brings entirely new and separate claims, adds new parties, or at least entails more than an alternative claim or a change in the allegations of the

19

complaint and when the additional discovery is expensive and time-consuming." *In re Ameritech Corp.*, 188 F.R.D. 280, 283 (N.D. Ill. 2015) (internal citation and quotation marks omitted).

Singota has not established that its Motion for Leave to File Second Amended Complaint, which it filed more than two years after its original complaint, does not constitute undue delay in view of the information about Emergent and Honey Ji's that it possessed at relatively early stages in these proceedings. Singota has not established that its delay is attributable to any new developments or premised on any facts previously beyond Singota's knowledge. Furthermore, adding the additional proposed defendants in this more-than-two-year-old case would "impair the public interest in prompt resolution of legal disputes." *See Tamari*, 838 F.2d at 909 ("The interests of justice go beyond the interests of the parties to the particular suit; all other considerations to one side, delay in resolving a suit may harm other litigants by making them wait longer in the court queue.").

Therefore, the Court **DENIES** Singota's Motion for Leave to File Second Amended Complaint because Singota has not established good cause for not adhering to the case schedule, the delay in adding these claims after Singota knew or should have known about them is inexcusable, and the delay would prejudice the timely administration of justice.

### III.
#### CONCLUSION

Based on the foregoing, Singota's Motion for Leave to File Second Amended Complaint, [267], is **DENIED**.

Dated: 6/9/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

20

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

Ms. Jaspreet Attariwala
1390 Kenyon St., NW, Apt. 323
Washington, D.C.  20010