UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BIOCONVERGENCE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-01745-SEB-MG |
| | ) | |
| JASPREET ATTARIWALA, | ) | |
| SIMRANJIT JOHNNY SINGH, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JASPREET ATTARIWALA, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BIOCONVERGENCE LLC, | ) | |
| | ) | |
| Counter Defendant. | ) | |

**ORDER DENYNG PLAINTIFF'S MOTION TO AMEND INSPECTION ORDER**

This cause is before the Court on Plaintiff's "Motion to Enter Sanctions for Contempt of Court Orders and to Amend Inspection Order," ("Motion to Amend") filed on October 21, 2020, and fully briefed on January 6, 2021. For the reasons set forth herein, this motion is **denied.**[1]

## Background

---

[1] Simultaneously with the filing of this motion, Singota filed its Motion for Leave to File Excess Pages, which seeks permission to file a 40-page brief in support of the Motion to Amend. This motion is **denied as moot.** We advise Singota in future filings to secure leave to file excess pages prior to filing the oversized motion. In addition, we remind Singota that the Court is extremely well-versed in the prolix background of this case, and we thus encourage concise filings reflective of this fact.

## I.      Procedural Background

On February 27, 2019, Plaintiff BioConvergence LLC d/b/a Singota Solutions

("Singota") filed suit against its former employee, Jaspreet Attariwala ("Ms. Attariwala"),

in the Monroe Circuit Court I (Indiana), claiming in part that Ms. Attariwala had violated

the Indiana Uniform Trade Secrets Act and breached her employment contract. Singota

alleged that Ms. Attariwala had illicitly acquired Singota's confidential and trade secret

information prior to her resignation. It sought a temporary restraining order and

preliminary injunction to prevent Ms. Attariwala from misappropriating its trade secrets

or using them for the benefit of her new employer—a direct competitor of Singota. The

state court granted Singota's request for a temporary restraining order on February 28,

2019, and entered a stipulated preliminary injunction on March 4, 2019, which required

Ms. Attariwala to:

- avoid directly or indirectly disclosing, using, or exploiting Singota's Confidential Information and to hold such Confidential Information in trust and confidence until it could be returned to Singota;

- turn over all documents, data, devices, storage media, and other property belonging to Singota;

- avoid directly or indirectly destroying, erasing, or otherwise making unavailable any such documents, data, devices, storage media, etc.

- within twenty-four (24) hours, make all computers, hard drives, storage media, email and cloud accounts, cell phones, and other devices available to Singota's forensic expert, Ms. Rebecca Green;

- not attempt to reconstitute, recover, or in any way restore any of the Confidential Information returned to Singota pursuant to the preliminary injunction;

- and comply with all other restrictive covenants in her employment agreement.

2

The state court simultaneously issued an Order for Inspection of Computers and Electronic Information Storage Devices (the "Inspection Order"). The Inspection Order, in conjunction with the preliminary injunction, ordered Ms. Attariwala, and all those acting in concert with her, to produce for inspection all computers, hard drives, electronic storage devices, email or cloud accounts, phones, and tablets used to store electronic information within her possession, custody, or control. Ms. Attariwala, and all those acting in concert with her, were also ordered to produce all documents, data and materials which contained confidential information; all documents, products, notes, or materials connected with or arising out Ms. Attariwala's employment with Singota; any computer, software, phone, or other device provided by the company; and any security devices related to Singota. Finally, the Inspection Order detailed terms and conditions by which Ms. Green was to inspect the various accounts and devices.

At the conclusion of the preliminary injunction hearings, the state court further determined that Ms. Attariwala should bear the costs of Ms. Green's forensic work anticipated in the stipulated preliminary injunction and the Inspection Order. The state court memorialized this decision in a written order dated March 18, 2019 (the "Expenses Order").

On April 30, 2019, following a series of contentious contempt hearings, Ms. Attariwala removed the case to federal court. Following removal, Singota reportedly continued to discover evidence of Ms. Attariwala's malfeasances, prompting Singota to move for a "further preliminary injunction" on October 10, 2019. With that motion,

Singota sought an order supplementing the existing preliminary injunction entered by the state court. Singota specifically requested an order enjoining Ms. Attariwala from working for her current employer and Singota's direct competitor, Emergent BioSolutions, Inc. ("Emergent") as well as any other competitor, alleging that Ms. Attariwala had violated state court orders and was continuing to misappropriate Singota's trade secrets.

We granted Singota's motion on December 18, 2019, following two hearings before the Court, finding that Singota had fulfilled all the elements necessary for preliminary injunctive relief and concluding that the existing state court preliminary injunction had not resulted in Ms. Attariwala's cooperation or compliance with those orders. We summarized the relevant transgressions as follows:

> Following removal to federal court, Ms. Green's inspections as well as her discoveries of inculpatory evidence continued. Of particular concern, says Singota, were the recently discovered acts that occurred during Ms. Attariwala's final week of employment at Singota.

> Specifically, sometime in September or October 2019, Ms. Green discovered that, within four minutes of accepting her position at Emergent in December 2018, Ms. Attariwala created a folder on her Singota tablet entitled "Jessie Docs." [Dkt. 85, Exh. B. ¶¶ 37-39]. Ms. Attariwala had retrieved the six customer reports that she had generated immediately upon accepting her position with Emergent and copied them to the "Jessie docs" folder. [Dkt. 85, Exh. B ¶¶ 41-45]. Over the course of Ms. Attariwala's final days at Singota, she continued to copy confidential Singota documents into the "Jessie docs" folder: On December 19, 2018, the day Ms. Attariwala submitted her resignation to Singota, Ms. Attariwala made copies of her Singota email account's inbox and sent folders, creating .pst files of the emails which she then saved in the "Jessie docs" folder. In so doing, Ms. Attariwala had transferred and saved a total of more than 10,000 emails, nearly 5000 of which included at least one attachment. Included within these emails and attachments were Singota's confidential materials including its engineering specifications, client manufacturing questionnaires, manufacturing timelines, and more. [Dkt. 85, Exh. B ¶¶ 71-73, 77, 78].

Ms. Green's analysis further revealed that Ms. Attariwala repeatedly copied the "Jessie docs" folder, with all of the aforementioned contents. [Dkt. 85, Exh. B ¶¶ 74-80]. On the evening of December 19, 2018, Ms. Attariwala copied the "Jessie docs" folder from her Singota tablet to an External Seagate hard drive. An analysis of this hard drive by Ms. Green uncovered over 250 additional confidential Singota documents including business development opportunities, client contact lists, detailed lead spreadsheets, manufacturing techniques, and more. [Dkt. 85, Exh. B ¶ 48]. Later that same night, Ms. Attariwala copied the "Jessie docs" folder from the hard drive to her personal tablet and on that same day, Ms. Attariwala, using her Singota tablet, created a cloud-based document entitled "Leads – Emergent." In her final days at Singota, Ms. Attariwala also copied additional information from Singota's files onto the "Leads – Emergent" document. [Dkt. 85, Exh. B ¶¶ 53-70].

On February 27, 2019, within hours following Singota's initiation of this litigation . . . Ms. Attariwala copied the entire contents of the "Jessie docs" folder from her personal tablet to a location that has yet to be disclosed or discovered. And, within the same moment that she made this copy, she accessed a Microsoft OneDrive7 account from her personal tablet. [Dkt. 85, Exh. B ¶¶ 191-197]. This Microsoft OneDrive account also has never been disclosed or produced to Singota.

[Dkt. 121, at 10, 15-16].

Accordingly, we entered a preliminary injunction that, in summary: adopted the terms of the state court's preliminary injunction; enjoined Ms. Attariwala, and all those in active concert or participation with her, from possessing, transmitting, using, copying or disclosing to others Singota's confidential information or trade secrets; and ordered Ms. Attariwala, and all those in active concert and participation with her, to produce to Ms. Green all e-mail accounts, online storage accounts, and storage devices identified by Ms. Green as outstanding. Ms. Attariwala was further enjoined from working for any competitor of Singota until she provided evidence in a proper verifiable form that she no longer possessed nor retained access to any of Singota's confidential information or trade secrets. [Dkt. 121, 122] ("Preliminary Injunction Order").

5

Meanwhile, outside of our court, Ms. Attariwala filed a Voluntary Chapter 13 Bankruptcy Petition in the United States Bankruptcy Court for the District of Columbia (the "Bankruptcy Court") on December 17, 2019. *In re Jaspreet Attariwala*, No. 19-00828–SMT (D.D.C.) ("Bankr. Dkt."). On January 30, 2020, the Bankruptcy Court lifted the automatic bankruptcy stay, *see* Bankr. Dkt. 42, at 2, to allow Singota to enforce injunctive relief issued by our court.[2] That same day, defense counsel moved to withdraw from their representation of Ms. Attariwala, which request we granted on February 11, 2020.

On February 12, 2020, Ms. Attariwala, now proceeding *pro se*, filed her "Response to Preliminary Injunction," in which she represented that she had fulfilled all obligations imposed upon her by our Preliminary Injunction and requested that we release her from the work restrictions set out therein. [Dkt. 148]. Singota filed no response or objection to Ms. Attariwala's request, and thus we assumed that it "ha[d] no quarrel with

---

[2] The bankruptcy court thereafter, on June 24, 2020, lifted the stay so that Singota could prosecute its claims against Ms. Attariwala in our court for damages. The bankruptcy court specifically ordered:

> The automatic stay of 11 U.S.C. § 362 is hereby lifted for the purpose of permitting Singota to prosecute the action captioned *BioConvergence LLC d/b/a Singota Solutions v. Jaspreet Attariwala*, No. 1:19-cv-01745-SEB-TAB (S.D. Ind.), pending in the United States District Court for the Southern District of Indiana (the "Underlying Litigation") against the Debtor with respect to the damages claims against her and all other possible relief against her, including injunctions, sanctions, and any other relief deemed appropriate by the Indiana court, to final judgment or resolution (including any appeals taken by any of the parties thereto).

[Bankr. Doc. 88, at 1-2].

the accuracy of Ms. Attariwala's representations" and accepted her assurances as satisfactory. [Dkt. 156, at 3]. We further noted that:

> [Ms. Attariwala's] employment was terminated from Emergent, Plaintiff's competitor, who was her employer at the time of our December 18, 2019 Preliminary Injunction . . . [T]he fact that she is not currently employed with one of Plaintiff's competitors mitigates the risk of trade secret misappropriation, which was our basis for enjoining her from working, and the time has fully run on any non-compete restrictions in her employment contract with Plaintiff. Most importantly, Ms. Attariwala remains bound by all other aspects of the Preliminary Injunction.

> [Dkt. 172, at 2].

Accordingly, we lifted our prohibitions against the resumption of Ms. Attariwala's employment in the biotechnology industry or for a competitor of Singota.

Singota swiftly filed a Motion to Reconsider [Dkt. 165] our order modifying the preliminary injunction, along with an "Emergency Motion to Stay" [Dkt. 163] the modified preliminary injunction pending a ruling on the Motion to Reconsider.

With respect to the Emergency Motion to Stay, we found "Plaintiff's sounding of emergency alarms in these circumstances" to be "inappropriate and unavailing," given that Ms. Attariwala had been terminated from Emergent and had no job prospects with other competitors of Singota. [Dkt. 172, at 2]. Accordingly, we denied the Emergency Motion to Stay, explaining that we would "review the Motion to Reconsider once fully briefed, but will not keep an indefinite employment noose around Ms. Attariwala's neck in the interim." [*Id.* at 3].

Upon careful review of the Motion to Reconsider, we found it to be equally unavailing. Though Singota advocated for the reinstitution of Ms. Attariwala's

employment restrictions on the grounds that Ms. Attariwala had allegedly not, in fact, complied with various aspect of the Preliminary Injunction, (for example, she apparently had still not produced all accounts and storage devices identified by Ms. Green), we explained that "it would be factually incorrect if we were not to acknowledge that her circumstances have changed from those presented to the court in December 2019, when the Preliminary Injunction was entered." [Dkt. 188, at 3]. Specifically, Ms. Attariwala was no longer employed with a competitor of Singota. We thus concluded that Singota could not "seriously contend that it currently faces the same risks of irreparable harm that it did in December 2019." [*Id.* at 4]. We further advised that its "focus should now be on litigating its claim for legal remedies." [*Id.*].

## II.   Ms. Attariwala's Bankruptcy Proceedings

As our docket momentarily quieted, Ms. Attariwala's bankruptcy proceedings intensified. On April 23, 2020, Ms. Attariwala initiated an adversary proceeding against Ms. Green in the Bankruptcy Court, seeking the recovery of certain  data and accounts that are in the sole possession of Ms. Green pursuant to the Inspection Order entered in our court. *Jaspreet Attariwala v. Rebecca Green et al.*, Adversary Proceeding No. 20-10014-SMT (D.C. Bankr. Ct.) ("AP Dkt."). According to Ms. Attariwala's bankruptcy filings, among the materials turned over to Ms. Green was information related to Ms. Attariwala's dessert business, "Honey Ji," which information purportedly "has absolutely no connection to Singota." [*Id.* at 3]. Ms. Attariwala represented to the Bankruptcy Court that "the Honey Ji data represents an asset of the bankruptcy estate that is valuable to the Debtor and her creditors[.]" [*Id.* at 4]. Ms. Attariwala thus sought the return of "data and

accounts relating to Honey Ji," contending that providing access to these data and accounts would impose no burden to Ms. Green because the "Honey Ji files are clearly labeled, and the on-line accounts could be transferred by simply providing the Debtor with the user names and passwords" which Ms. Green had changed. [*Id*. at 5].

Prior to the initiation of the adversary proceedings, on February 14, 2020, Ms. Attariwala's bankruptcy counsel, David Lynn, transmitted an email to Ms. Green, demanding the return of various email and storage accounts related to HoneyJi as well as Facebook and Instragram accounts. [Dkt. 250-2, Exh. 19]. Ms. Green, in response to this communication, indicated that she did not believe she could produce the requested accounts and devices because the Inspection Order "states that no account or device can be returned until the protocol work is complete (collecting, examining, removing ESI that does not belong to her, etc.)". [*Id.*, Exh. 20]. However, she explained, her "work was suspended when Ms. Attariwala refused to replenish the retainer[.]" [*Id.*]. Ms. Green offered to seek Singota's consent to "carve out" the Honey-Ji items so long as Ms. Attariwala could pay the associated fees [*Id.*]; Mr. Lynn did not respond to this offer, instead initiating the aforementioned adversary proceedings.

Ms. Green e-mailed Mr. Lynn again on May 20, 2020, following the initiation of the adversary proceeding against her, explaining that she believed producing the accounts containing the Honey-Ji data could run afoul of our Inspection Order. She suggested that the parties should continue to follow the protocols of the Inspection Order, which invitation was not responded to by Mr. Lynn.

Singota thereafter intervened in the adversary proceedings against Ms. Green to protect its interests. [AP Dkt. 17]. On September 11, 2020, Singota, after consulting with Ms. Green, informed Mr. Lynn that Ms. Green would require $10,000 to screen the devices, accounts, and data in her possession for any Honey-Ji materials. [Dkt. 250-2, Exh. 24]. No response came from Mr. Lynn. Ms. Green subsequently proposed that she release all data in her possession to Singota and to Mr. Lynn so that the parties could review it for themselves. [*Id.*, Exh. 25]. Singota objects to this proposed plan on the grounds that Mr. Lynn has not appeared in this case and has no duty to comply with the Protection Order that has been entered in this litigation.

On May 7, 2021, the Bankruptcy Court entered an order staying the adversary proceeding "pending partial or complete resolution between the parties" in the litigation in our court. [AP Dkt. 61].

### III.    Ms. Green's Production of Data to Singota and former Defense Counsel

With respect to the review and return of Singota's data, the Inspection Order currently provides, in relevant part:

23. Green will provide a list of files identified as potentially responsive to both parties' counsel, including file name, harvest location, created, modified, and accessed dates, as well as common metadata field.

24. Before Green communicates the contests of any files located on the Defendant's Storage Locations to opposing counsel, the Defendant and their counsel will be given three (3) days to review those files from the Storage Locations for the Defendant's personal information.

25. If the defendant or their counsel in good faith identifies personal information among the files Green wishes to communicate to Plaintiff's counsel, the Defendant's counsel will direct Green to not produce those files and instead produce of a log of those files identifying:

    a. Name, path, and any other metadata available to Green by her forensic tools as long as the metadata does not reveal the contents of the file

    b. The reasons the file is deemed personal and confidential.

    c. Provided, however, that no information related to Singota will be deemed personal information of Defendant; and if the parties dispute whether the contents of files should be produced to Plaintiff's counsel, the parties may seek intervention      of the court

26. Green will provide to Plaintiff's counsel the above described log along with any other filed not deemed by the Defendant or their counsel as containing personal information

We are informed that on September 9, 2019, Ms. Green provided to defense counsel copies of all data that she had collected up until that point, in part, so that Ms. Attariwala could complete her responses to Singota's discovery. This included a full image of a MacBook computer, data collected from Ms. Attariwala's google accounts, copies of data from Ms. Attariwala's Surface computer, and various external devices including the Seagate drive containing the Jessie Docs folder. Defense counsel never confirmed whether any of this data was cleared to be released to Singota.

Singota has yet to receive much of this data, it contends. Instead, it has only received a number of emails containing Singota information, spreadsheets listing files contained on storage devices produced by Ms. Attariwala, the Seagate external hard drive containing the copy of the "Jessie docs" folder, and a copy of the "Leads-Emergent" workbook created by Ms. Attariwala. Singota purports that this represents only a "fraction" of the data that was shared with defense counsel in September 2019.

**IV.    Ms. Attariwala's Subpoena to Ms. Green**

In addition to initiating the adversary proceedings against Ms. Green, Ms. Attariwala served Ms. Green with a Subpoena to Produce Documents, Information, or Objects or To Permit Inspection of Premises in a Civil Action ("Subpoena") and a Request for Production of Documents and Records to a Non-Party ("RFPs"). The subpoena sought to recover forty-six categories of documents and data, for example, "any and all information and communication  . . . from December 1st 2018 – current between you and McNeely Stephenson (now McNeely Law)." [Dkt. 250, Exh. G]. Singota moved to quash the subpoena on various grounds, including that compliance therewith would circumvent our Preliminary Injunction Order by placing in Ms. Attariwala's hands the very data that she had stolen from Singota, including the copies of data shared with her former counsel in September 2019. *See BioConvergence LLC v. Attariwala*, No. 1:20-mc-00066-SEB-TAB, Dkt. 1.

On November 9, 2020, the Magistrate Judge granted Singota's Motion to Quash for a multitude of reasons, including that it would be "improper" to force Ms. Green to respond to the requests "considering the injunction in place in this case." [Dkt 15, at 4].

**V.    Singota's Pending Motion**

Singota now seeks to amend the Inspection Order, contending that it is no longer workable for a variety of reasons.

First, according to Singota, is the fact that the Inspection Order was premised on Ms. Attariwala's prompt production of all devices and accounts containing Singota's information as well as her assistance with identifying any locations where Singota's

information may be stored, which duties she did not fulfill, as exemplified by our Preliminary Injunction Order.

In addition, Singota contends that the Inspection Order assumed that Ms. Attariwala would continue to be represented by counsel, given that the Inspection Order directs Ms. Green, upon discovery of any files identified as potentially responsive to the parties' requests, to first communicate the contents of the files to defense counsel who would be afforded three days in which to review them for Ms. Attariwala's personal information before directing Ms. Green to release the files to Singota. Any files retained as personal to Ms. Attariwala must be properly logged. Since the withdrawal of defense counsel, however, this process has stalled, and, as Singota explains, Ms. Attariwala obviously cannot be trusted to review the recovered data.

Finally, Singota explains, Ms. Attariwala has not paid Ms. Green's expenses, causing Singota to advance fees to Ms. Green to complete her work under the Inspection Order, which it is no longer willing to do. Consequently, Singota purports that it has been unable to "have direct access to much of the collected data" because Ms. Green has not yet conducted "the comprehensive review of all accounts and devices collected from Ms. Attariwala[.]" [Dkt. 250, at 3]. Singota does not believe it should have to advance Ms. Green's fees in order for her to continue her work to review and recover Singota's stolen data. And, even if Singota did advance these fees, it would be impossible for Ms. Green to fulfill her duties under the Inspection Order because, as stated, Ms. Atttariwala no longer has counsel to participate in the review process.

Singota thus contends that the Inspection Order should be amended. Specifically, Singota requests that we "order that [Ms. Green] may provide copies of all data she collects from devices and accounts covered by the Inspection Order to Singota and its counsel for their direct review," including all data Ms. Green has collected to date and all data that she will collect in the future. [*Id.* at 4]. Doing so "would allow Singota to search for [its] emails, documents, and files on these devices and accounts without being required to advance additional substantial experts' fees to Green for her to review the data merely so Singota can obtain the identification and return *of its own property*." [*Id.*]. (*emphasis in original*).

Singota's proposed amended inspection order would thus empower it to parse through the data and identify that which belongs to it, it argues. Other provisions of the Inspection Order would remain in place: Ms. Green would still be charged will collecting and holding Ms. Attariwala's accounts and devices for purposes of preserving them. She would also be responsible for identifying and collecting additional outstanding devices and accounts and conducting any expert-required forensic analysis. If Ms. Attariwala were to seek the return of any of her accounts, devices, and data, she would be required to pay the costs of Ms. Green's work, unless Singota, based on its review, informs Ms. Green that it is has not found any Singota data saved on a particular account or device and authorizes Ms. Green to release it back to Ms. Attariwala. Singota makes clear, however, that its proposed amended inspection order would impose on it no obligation to review accounts and devices for Ms. Attariwala's personal data so that such data may be promptly returned to her.

14

Singota believes that the proposed amended Inspection order will allow it to "finally and comprehensively review the accounts and devices collected" by Ms. Green and "to take further steps to identify, recover, and protect its data." [*Id.*, at 5]. It further contends that amending the Inspection Order will advance discovery in this case, which has been stalled because Ms. Attariwala has reported an inability to respond to various discovery requests on the grounds that all of her devices and accounts are in Ms. Green's possession. Singota asserts that no prejudice will befall Ms. Attariwala because it will treat all non-Singota-related data as confidential pursuant to the Stipulated Protected Order entered in our court on June 6, 2019.

Ms. Attariwala, however, believes she will, in fact, be unduly prejudiced by the proposed amended inspection order given that the accounts and devices at issue contain confidential communications between herself and her former attorneys as well as personal and private materials shared with her husband. She contends that it is unreasonable to permit her adversaries to have access to such communications and materials.

Singota does not dispute that the various devices and accounts likely do contain this information. It nonetheless counters that the waiver of any such privileges appropriately sanctions Ms. Attariwala's various acts of malfeasances, including her contempt of our orders. Singota contends that entering the amended inspection order falls within the gambit of our inherent authority to sanction parties who flout the court process. *Novelty, Inc. v. Mountain View Mktg., Inc.*, 265 F.R.D. 370, 374 (S.D. Ind.

2009), *clarified on denial of reconsideration*, No. 107CV01229SEBJMS, 2010 WL 11561280 (S.D. Ind. Jan. 29, 2010).

Though we do not condone Ms. Attariwala's misconduct prior to and throughout this litigation, we find it significant that Singota has had various options available to it that would serve as a sanction for the identified misconduct and allow this litigation to progress but has never invoked them.

For example, Singota contends that Ms. Attariwala is in contempt of our Preliminary Injunction Order because she has yet to produce the copy of the "Jessie Docs" folder that she made on February 17, 2019. It was Singota's discovery of this folder that, in part, prompted its need for additional injunctive relief in October 2019, Singota reminds us.

What gives us pause, however, is that Singota has never sought to compel the production of this data or otherwise sought to enforce the injunction against Ms. Attariwala since the stay was lifted (as to the preliminary injunction) on January 30, 2020. Instead, nearly nine months later, Singota proposes that we amend the Inspection Order as a sanction against Ms. Attariwala though it *still* has not moved to compel the production of these documents or to enforce Ms. Attariwala's compliance with the Preliminary Injunction Order. Singota also notes that there are accounts and devices identified by Ms. Green that Ms. Attariwala has yet to produce despite the directive to do so in our Preliminary Injunction Order. Again, Singota has *never* moved to compel the production of these accounts and devices which have purportedly been outstanding for nearly two years.

Certainly appropriate sanctions are available if Ms. Attariwala is shown to have defied (or is defying) our Preliminary Injunction Order as described by Singota, but, as noted, Singota has not sought the imposition of such sanctions or the enforcement of the various court orders entered in this case aimed at the recovery of its materials. Singota says in its briefing that it "anticipates doing so," admitting it has not yet done so. If Singota's goal is to promptly recover its confidential materials and to ensure their safekeeping, we question why Singota would stop short of an effort to enforce the Preliminary Injunction Order or to compel the production of any outstanding devices, accounts, or materials. The record reflects that our court as well as the state court entered the preliminary injunction and inspection orders based on Singota's asserted "urgent" need to recover the various documents and data as expeditiously as possible to avoid irreparable harm. That Singota has made no attempt to secure Ms. Attariwala's compliance with the Preliminary Injunction Order undercuts Singota's stated belief that its trade secret and confidential information continues to be at a significant or imminent risk of misappropriation or misuse.[3]

Singota requests that the Court consider Ms. Attariwala's continued failure to comply with the Expenses Order. Though Ms. Attariwala insists that she does not have

---

[3] Singota notes that it has been conducting discovery regarding Ms. Attariwala's compliance with the Preliminary Injunction Order. Whether this discovery will produce any further evidence of Ms. Attariwala's non-compliance is yet to be determined. It remains unclear what additional discovery would be necessary with respect to these purported outstanding items if the evidence presented in December 2019 has revealed that Ms. Attariwala has not yet produced accounts, devices, and data identified by Ms. Green, as Singota suggests.

the means to pay Ms. Green's fees,[4] Singota contends that the disclosures in Ms. Attariwala's bankruptcy filings tell a different story, indicating that she has willfully violated the Expenses Order throughout this litigation. For example, Ms. Attariwala reportedly has in excess of over $140,000 in retirement accounts, and, in March 2019, she had $44,454.81 in her checking and savings accounts when she first refused to replenish Ms. Green's retainer. Ms. Attariwala has also paid and continues to pay significant attorneys' fees, though she represents that she has received financial assistance from family to pay these fees. Even if Ms. Attariwala were unable to pay Ms. Green's fees in their entirety, Singota contends she is obviously able to pay at least some portion thereof but refuses to do so. This places her in contempt of the Expenses Order. Singota thus requests that the Inspection Order be amended as a sanction against her. Following the lifting of the stay by the bankruptcy court thereby allowing Singota to litigate its claims against Ms. Attariwala, including its damages and sanctions claims, Singota accurately maintains that there likely are grounds for holding her in contempt for any ongoing violations of the Expenses Order.[5]

We would be more easily persuaded in responding to Singota's request if it had attempted to enforce the Expenses Order against Ms. Attariwala through an enforcement proceeding. To the extent Singota was unaware of Ms. Attariwala's finances prior to the

---

[4] Ms. Attariwala did initially pay a $5000 retainer to Ms. Green, but we are informed that this retainer was quickly depleted and that Ms. Green sought to have it replenished as early as March 2019.
[5] Singota acknowledges that any attempt to recover fees that it advanced prior to filing of Ms. Attariwala's bankruptcy petition must be raised in the bankruptcy litigation court, given that these fees are pre-petition debts.

filing of her bankruptcy petition, certainly limited discovery could have been conducted to determine her ability to pay. Even now, Singota maintains that Ms. Attariwala has the means available to her to pay some portion of fees, that her refusal to do so exposes her to contempt sanctions regarding the Expenses Order, and that nothing about the bankruptcy proceedings impedes or preempts her capacity to comply with, nor the Court's authority to enforce the Expenses Order. Still, Singota chooses not to file an appropriate motion.

Singota asks that we also consider Ms. Attariwala's attempts to circumvent the Preliminary Injunction Order through the adversary proceedings against Ms. Green as well her subpoena issued to Ms. Green when determining whether the requested sanctions should issue. We will not comment on the legitimacy of utilizing adversary proceedings to recover assets for the bankruptcy estate. However, Ms. Attariwala could have sought in our court an order for the turnover of the HoneyJi materials thus far recovered and identified by Ms. Green. We concur with Singota and the Magistrate Judge that the subpoena of Ms. Green was improper and should be quashed. However, Singota never sought such relief.[6]

There have been numerous ways in which Singota could have sought the enforcement of the previous court orders in an effort to hold Ms. Attariwala accountable that would not have entailed Singota having unfettered access to her private and

---

[6] Imbedded in its Motion to Amend is a request to recover these fees, but Singota never sought that relief in the course of litigating the Motion to Quash. Singota also requests the recovery of its fees incurred in litigating the adversary proceeding; we leave it to the Bankruptcy Court to determine whether Ms. Attariwala's conduct in that litigation is sanctionable.

confidential information, including communications with her husband and her attorneys. Singota's failure to ensure that it would promptly complete the review of disclosed documents and materials and immediately return to Ms. Attariwala her personal data explains, while perhaps not excusing, Ms. Attariwala's reluctance to put her information entirely in the hands of her of her adversary,[7] who has shown no intention of conducting its review in an efficient or timely manner.

To summarize, Singota's proposed amended inspection order does not constitute an appropriate sanction for the misconduct alleged herein, so we deny the request for an amended inspection order on that basis.[8]

Singota argues as well that the Inspection Order is no longer workable because Ms. Attariwala is proceeding *pro se* in this litigation and is thus without the assistance of counsel to assist on her behalf with the process of screening the data recovered by Ms. Green.[9] The Inspection Order may well need to be revisited in light of this change in circumstance, and we do not dispute Singota's contention that it is inappropriate for Ms. Attariwala to assume the role of counsel, given that it was her misconduct that initially created this tangled web of litigation. That said, the next best alternative is not giving

---

[7] We reiterate: Singota has numerous avenues to secure legal remedies to address Ms. Attariwala's wrongdoings in that regard.

[8] The cases cited by Singota in support of its contention that the court may sanction a party's misconduct by holding that they have waived attorney-client privileges are clearly distinguishable in that they involved parties or counsel failing to maintain complete and accurate privileges logs or failing to properly raise privilege objections. The sanction of waiver was thus the appropriate remedial action in those circumstances.  *See, e.g., Novelty, 265 F.R.D.* at 381-82; *Muro v. Target Corp*., 250 F.R.D. 350, 365 (N.D. Ill. 2007); *Ritacca v. Abbott Labs*., 203 F.R.D. 332, 336 (N.D. Ill. 2001).

[9] Ms. Attariwala had proceeded *pro se* for eight months prior to Singota's filing of the pending motion. We have no explanation for Singota's delay.

Singota permission to review the various private and confidential documents and communications belonging to Ms. Attariwala. We encourage the parties to confer with the Magistrate Judge to device a plan that balances the interests of all involved here and facilitates an efficient resolution to these issues.[10]

Singota's remaining argument regarding the workability (or lack thereof) of the Inspection Order is that this order was premised on Ms. Attariwala's cooperation and compliance with Ms. Green, which has not happened. Singota was obviously aware of this non-compliance as early as October 2019 when it moved for supplemental injunctive relief in our court, yet only now it contends that the Inspection Order is in need of amendment. Singota identifies no new instances of misconduct from Ms. Attariwala that suggest that the circumstances have changed since that time.

Finally, as alluded to by Singota in its briefing, Singota seeks the Court's assistance due to the fact that defense counsel, in September 2019, received copies of all the data recovered by Ms. Green at that date, but Ms. Green never conveyed the data to Singota because defense counsel did not certify that the data had been cleared of Ms. Attariwala's personal information. The basis for Singota's belief that an amended inspection order is necessary to receive this data is not clear. The Inspection Order clearly

---

[10] Ms. Green recently moved to be relieved from her duties in this case, noting that she is no longer being paid and that "Singota has had an opportunity to obtain any information of interest." She indicates that she is prepared to "(1) return the materials to Attariwala and delete the copies made through its services; (2) transfer the materials to another ESI company; (3) transfer the materials to an agreed-upon ESI storage location; or (4) transfer the materials to Singota." In response, Singota has requested the Court's *ex parte* in-camera review of its communications with Ms. Green to determine the appropriateness of Ms. Green's release. These motions have been referred to the Magistrate Judge. We encourage the parties to confer in good-faith regarding the most effective way forward regarding these issues in light of Ms. Green's proposals.

lays out protocols by which defense counsel was directed to review the data: After three days had passed during which defense counsel was entitled to make their review, Singota could by simple inquiry to defense counsel have determined whether there were any objections to Singota's receipt thereof. To our knowledge, Singota never took this step. To the extent there was a disagreement over whether the data contained any personal information belonging to Ms. Attariwala, the Inspection Order directs the parties to seek court invention to resolve their dispute. The Court's intervention was never sought. Whatever reasoning informs Ms. Green's hesitation to share the data with Singota, Singota could have raised the issue here in our court. Many possible approaches to this impasse come to mind short of the issuance of amended orders, but none, so far as we know, have been pursued.[11]

One additional reminder to Singota: the underlying facts of this case have dramatically changed since our Preliminary Injunction Order was entered in December 2019. Ms. Attariwala is no longer employed by Singota's competitor, and employment in that sector at any time in the foreseeable future appears highly unlikely. No evidence has been presented that would show that Ms. Attariwala is continuing to hoard and disseminate Singota's confidential and trade secret information. In fact, she is deep in the throes of bankruptcy proceedings. Accordingly, we encourage Singota to focus its litigation energies on securing whatever legal remedies remain available at this stage of

---

[11] We deny Ms. Attariwala's request, imbedded in her Response brief, to sanction Singota for filing the Motion to Amend. Ms. Attariwala has not identified any conduct from Singota that is sanctionable.

the proceedings. It behooves both sides to curtail their prolonged, scorched-earth litigation strategies and move, with the guidance of the Magistrate Judge, to a prompt resolution of the remaining disputes.

## CONCLUSION

For the reasons stated herein, Singota's Motion to Amend [Dkt. 249] is **denied.** Nothing in this order forecloses future attempts from Singota to enforce the existing orders of this Court and to hold Ms. Attariwala in contempt for any proven violations thereof.  Singota's Motion for Leave to File Excess Pages [Dkt. 248] is **denied as moot.**

IT IS SO ORDERED.

Date:        8/5/2021

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASPREET ATTARIWALA
1390 Kenyon St., NW Apt. 323
Washington, DC 20010

Justin A Allen
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
justin.allen@ogletree.com

Cynthia A. Bedrick
MCNEELY LAW LLP
CBedrick@McNeelyLaw.com

Jody M. Butts
MCNEELY LAW LLP
JButts@McNeelyLaw.com

Jason Donald Clark
MCNEELY LAW LLP

JClark@McNeelyLaw.com

Susan H. Jackson
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
susan.jackson@ogletree.com

Paul L. Jefferson
MCNEELY LAW LLP (Indianapolis)
PJefferson@McNeelyLaw.com

Erik Christopher Johnson
MCNEELY LAW LLP (Indianapolis)
EJohnson@McNeelyLaw.com

Offer Korin
KATZ  KORIN CUNNINGHAM, P.C.
okorin@kkclegal.com

Christopher C. Murray
OGLETREE DEAKINS NASH SMOAK & STEWART, P.C. (Indianapolis)
christopher.murray@ogletreedeakins.com

Brooke Smith
KATZ  KORIN CUNNINGHAM, P.C.
bsmith@kkclegal.com