UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BIOCONVERGENCE LLC, *d/b/a Singota Solutions*, | ) ) ) |
| *Plaintiff*, | ) ) |
| vs. | ) 1:19-cv-1745-SEB-MG ) |
| JASPREET ATTARIWALA, | ) ) ) |
| *Defendant*. | ) ) |

## ORDER

Pending before the Court in this breach-of-contract and trade secrets case brought by Plaintiff BioConvergence LLC, doing business as Singota Solutions ("Singota"), against its former employee, *pro se* Defendant Jaspreet Attariwala is a Motion to be Released as an Officer of the Court and for Distribution of Electronically Stored Information filed by the ESI Team, an interested party in this action, and its proprietor, Rebecca Green. [Filing No. 271.]

## I.
### BACKGROUND

As recounted in the Court's prior Order, [Filing No. 293], Ms. Green's company—the ESI Team—asks to be released from its appointment as an officer of the Court. To evaluate the ESI Team's request and to determine the disposition of the property and data held by the ESI Team, the Court ordered the ESI Team to file a certification with this Court identifying (a) the tasks it completed pursuant to the Inspection Order, [*see* Filing No. 85-7], (b) whether and what Singota information has been removed from Ms. Attariwala's accounts and devices, and (c) the copies of data and images of devices in its possession. [Filing No. 293 at 5-6.] The ESI Team filed its certification on September 14, 2021. [Filing No. 297; Filing No. 298.]

The parties then began a flurry of filings. Singota filed a 35-page "Response to the ESI Team's Certification" (the "Singota Response"), with no fewer than 423 pages of exhibits. [Filing No. 299.] The Singota Response prompted a 5-page reply from the ESI Team, [Filing No. 300], and Ms. Attariwala submitted a 20-page brief with 30 pages of exhibits purporting to respond to the ESI Team's Certification, the Singota Response,[1] and the ESI Team's reply (the "Attariwala Response"). [Filing No. 304.]

A.   **The Inspection Order**

Taking a step back, the Inspection Order entered by the state court on March 4, 2019 ordered that Ms. Attariwala "and anyone acting in concert or participation with her" turn over to Ms. Green "any and all personal computers, hard drives, or other electronic storage devices and media devices, including servers, email accounts, cloud accounts, cell phones, smart phones, and tablets, used to store electronic information in her possession, custody or control, including, but not limited to, all computers, devices, accounts, and media identified by Ms. Green pursuant to her analysis of Ms. Attariwala's electronic storage media." [Filing No. 85-7 at 3.] The Inspection Order then appointed Ms. Green and the ESI Team, "acting as an officer of the court," to "conduct an inspection of these devices, media, accounts, and computers," pursuant to the protocol set forth in the Order. [Filing No. 85-7 at 3.] The Inspection Order was agreed to and signed by counsel for both parties. [Filing No. 85-7 at 9.]

---

[1] Singota has filed a Motion to Strike the Attariwala Response, [Filing No. 305], wherein Singota correctly notes that the Attariwala Response seeks "various types of relief" rather than merely responding to the ESI Team's Certification and the Singota Response. As has become commonplace among the parties in these proceedings, Singota also disputes Ms. Attariwala's characterization of facts and proceedings (as Ms. Attariwala does Singota's recitation). Nevertheless, the Court is able to discern the issues properly before it, and further, Singota took the opportunity to make its own record responding to the Attariwala Response in its Motion to Strike. Therefore, the Court will **DENY** Singota's Motion.

Generally, the tasks to be completed by ESI Team once Ms. Attariwala produced devices, accounts, and data as required by the Inspection Order are as follows:

- First, the ESI Team was to preserve the electronically stored information gathered from Ms. Attariwala by imaging the information. The originals were to be sealed and stored by the ESI Team. [Filing No. 85-7 at 5-6 (devices); Filing No. 85-7 at 6-7 (accounts).]

- Second, the ESI Team would then "process" the copies of the electronically stored information to enable certain functionalities, such as key word searching. [Filing No. 85-7 at 6.]

- Third, the ESI Team would then conduct an "examination" by applying "[s]earch criteria" to "identify potentially responsive" electronically stored information. [Filing No. 85-7 at 7.] Ms. Green was to analyze the information for "[t]he presence of Singota information"; "[t]he access of Singota information"; [t]he transfer of Singota data to another device or storage location, including a personal computer, or another portable device or media such as USB drive, CD, DVD, etc."; [f]orwarding of Singota information to another party via email or some other electronic transfer means"; "[p]rinting of Singota information which would make the information now portable via paper"; and "[t]he deletion of information." [Filing No. 85-7 at 7.]

- Fourth, if the analysis located Singota information, Ms. Green was to "make a recommendation for removing the [electronically stored information] from [Ms. Attariwala's] devices or accounts," and all parties were to agree to the recommendation before removal. [Filing No. 85-7 at 7.] If a deletion was detected, Ms. Green was to "provide a report to the parties regarding same." [Filing No. 85-7 at 7.]

- Fifth, Ms. Green was to "provide a list of files identified as potentially responsive to both parties' counsel…," but before sharing this list with Singota's counsel, Ms. Green was to first share the list with Ms. Attariwala's counsel who had three days to review the listed files for "personal information" that should not be shared with Singota's counsel. Ms. Green's counsel was then to create a log for such documents. [Filing No. 85-7 at 8.]

- Sixth, "[a]t some future date when the agreement between these parties has been fulfilled," the ESI Team would delete the original, control, and analysis copies. [Filing No. 85-7 at 8.]

Before the ESI Team could complete these steps, it needed Ms. Attariwala to hand over the electronically stored information as she was required to do by the Inspection Order. To that end, the Inspection Order directed Ms. Attariwala to "make available for inspection any and all

Storage Locations,[2] including all Accounts and Devices used to store electronic information in her possession, custody or control, including, but not limited to, all computers and devices which may contain ESI relevant in the matter or was connected to a personal computer or device which is known to contain ESI responsive in this matter." [Filing No. 85-7 at 4.] The Order further required Ms. Attariwala to take all efforts "to identify the Storage Locations which may be storing [electronically stored information] responsive to the matter." [Filing No. 85-7 at 4.]

**B.    Funding of the ESI Team's Work**

On March 18, 2019, the state court entered an order (the "Expenses Order") stating that Ms. Attariwala "is responsible for Ms. Green's costs for Phase I of Ms. Green's work." [Filing No. 85-8 at 3.] The Expenses Order defined "Phase I" as work by Ms. Green to "identify, collect and review computers and other electronic storage devices and accounts from [Ms. Attariwala] for inspection and, if necessary remove or delete [Singota's] confidential information from those devices or accounts, in addition to other work incidental to these tasks." [Filing No. 85-8 at 2.] Pursuant to the state court's order, Ms. Attariwala paid Ms. Green a $5,000 retainer in March 2019. Ms. Green quickly exhausted this retainer.

Ms. Green, who was charging Ms. Attariwala roughly $500 per hour, then recommended that Ms. Attariwala replenish the retainer with a $15,000 payment. [*See* Filing No. 4-1 at 232.] On April 16, 2019, the state court issued a show cause order requiring Ms. Attariwala pay Ms. Green an additional retainer of $15,000 within 24 hours. [Filing No. 85-9.] When Ms. Attariwala failed to pay the $15,000 within 24 hours, the state court held another hearing in which it found

---

[2] While the Inspection Order does not define "Storage Locations," the term "ESI Storage Locations" is defined as "the personal computer(s), hard drives, flash drives, thumb drives, any and all other devices and media used to store electronic information and all storage locations, such as email, cloud storage locations, and any service where electronic information can be stored, produced by Defendant." [Filing No. 85-7 at 3.]

4

her in contempt and stated on the record that it would order Ms. Attariwala to pay the $15,000 retainer, plus $10,000 a week, "[s]o for the first month it would be Fifty-five Thousand Dollars ($55,000.00) dollars." [Filing No. 85-10 at 12.] Ms. Attariwala's counsel told the state court that "I can tell you it's my understanding Miss Attariwala doesn't have that kind of money." [Filing No. 85-10 at 12.] Ms. Attariwala has never paid the $15,000 or the $55,000. Ms. Attariwala then removed the case to this Court on April 30, 2019. [Filing No. 1.] During this Court's December 4, 2019 hearing on Singota's Motion for a Further Preliminary Injunction, the Court and Ms. Attariwala's then-counsel had the following exchange:

> THE COURT: … Mr. Jefferson? Why wasn't the $55,000 posted?
>
> MR. JEFFERSON: She can't afford it.
>
> THE COURT: Oh, did you tell that to the court?
>
> MR. JEFFERSON: Not yet, Your Honor.
>
> THE COURT: Wasn't the gist of that order that the 55,000 -- I mean the Court didn't say pay -- put up $55,000 if you can afford it, right? There was no request for relief from that, right? She's clearly in default of that, right?
>
> MR. JEFFERSON: Yes, Your Honor, in terms of the expenses --

[Filing No. 155, 12/4/19 Hr'g Tr. at 46.]

On December 17, 2019, Ms. Attariwala filed a Chapter 13 petition for bankruptcy in the Bankruptcy Court for the District of Columbia. *In re Jaspreet Kaur Attariwala*, Case No. 19-00828-ELG (Bankr. D.C.). [Filing No. 123.] That petition remains pending, although the automatic stay has been lifted with respect to Singota's claims against Ms. Attariwala in this case. [Filing No. 213.] Ms. Attariwala's counsel withdrew from this case in February 2020, and since that time, Ms. Attariwala has proceeded *pro se*.

5

After Ms. Attariwala stopped paying, neither Singota nor the ESI Team asked this Court to enforce the Expenses Order. [*See* Filing No. 292 at 18.] Instead, Singota elected to start paying the ESI Team to perform certain work on the devices and accounts collected from Ms. Attariwala. [Filing No. 299 at 2.] Singota says that between March 2019 and December 2019 it paid Ms. Green "over $160,000 to identify Singota Data that Ms. Attariwala had taken and to identify accounts and devices Ms. Attariwala had concealed from Green." [Filing No. 299 at 2.] Singota says it "paid most of these fees as advances of fees that are Ms. Attariwala's obligation under the Expenses Order." [Filing No. 299 at 14.] Singota further states that it "made clear to [Ms.] Green that she should bill Singota for performing activities that it requests." [Filing No. 299 at 16.]

Ms. Green certifies that Singota has not funded any work since December 2019, so she has not been performing work related to this case since that time. [Filing No. 297 at 7.]

**C.     The ESI Team's Certification**

In its Certification, [Filing No. 297], the ESI Team reports that it has completed minimal work under the Inspection Order. During this case, Ms. Attariwala has produced the following accounts and devices for inspection, with an indication of whether the ESI Team has made a copy.

| Account/ Device | Description | Serial Number | Copy/Image Made? |
|---|---|---|---|
| Device | Microsoft Surface | 054730284453 | Yes |
| Device | Apple iPhone | F18SP0LWHG70 | No[3] |
| Device | SanDisk Cruzer Switch USB Device | BI130824450B | Yes |
| Device | Seagate External USB Drive | NA77PYWY | Yes |
| Device | Singota labeled USB Device | None Printed Externally | Yes |

---

[3] The ESI Team says that this iPhone was imaged in early 2019 using Blacklight software, but the ESI Team has not renewed its license for this software, so Ms. Green is unsure if the 2019 copy is accessible.

6

| Device | Apple iPad | DMPHLAV60VD3 | No |
|--------|------------|--------------|-----|
| Device | Apple MacBook | CO2RW29KG8WP | Yes |
| Device | Sony Vaio laptop | 545816300002787 | Yes |
| Device | BioConvergence USB Device | None Printed Externally | Yes |
| Device | Bio Convergence USB Device | None Printed Externally | Yes |
| Device | Life Sciences USB Device | None Printed Externally | Yes |
| Device | SanDisk USB Device 4 GB | BH1011OHUN | Yes |
| Device | SanDisk USB Device 8 GB | BI0904NVPB | Yes |
| Device | DataTraveler USB Device | None Printed Externally | Yes |
| Device | One Western Digital My Passport | WXB1E2582CKM | No |
| Device | Apple iPhone | F2NJR20RF8H4 | No |
| Device | SanDisk Cruzer | BN18052624BJ | No |
| Device | BioSpectra | None Printed Externally | No |
| Device | LifeSciences Labeled USB Device (scratched out with Songs written on it) | None Printed Externally | No |
| Account | Google Archive | Jsaini1@gmail.com | Yes |
| Account | Google Archive | simandjessie@gmail.com | Yes |
| Account | Google Archive | info@honeyji.com | Yes |
| Account | Email Collection | Jsaini1@hotmail.com | Yes |

[Filing No. 297 at 9.] Ms. Green says that in addition to making the copies as indicated above, she "forensically process[ed]" the Apple MacBook and an iPhone (though she does not specify which one), "including conducting searches, reviewing results, and reporting results to Counsel." [Filing No. 297 at 2.] She further says that she "r[an] searches" of the jsaini1@gmail.com account and "review[ed] those results." [Filing No. 297 at 2.] The only other Inspection Order work identified by Ms. Green is communicating with Ms. Attariwala or her then-counsel about passwords,

7

additional accounts, and additional devices and "creating recommendations on all devices for counsel." [Filing No. 297 at 2-3.]

However, outside of the Inspection Order, Ms. Green says she has done some work at the behest of Singota "for the purposes of their [sic] expert reports which does align with the work identified in the [Inspection Order]," and generically describes providing "analysis and assistance" with citation to her expert reports submitted by Singota in connection with Singota's Motion for a Preliminary Injunction. [Filing No. 297 at 4; *See also* Filing No. 85-2; Filing No. 95-1; Filing No. 105-1.] This statement is unhelpful to the Court as the ESI Team's Certification does not identify what devices or accounts, if any, were analyzed and what such work overlapped with the Inspection Order.[4]

Ms. Green has not removed any Singota electronically stored information from Ms. Attariwala's accounts and devices. This is so, she says, because the parties have not provided her with search terms to enable her to proceed under the protocol set forth in the Inspection Order. [Filing No. 297 at 8.]

## II.
### DISCUSSION

**A.  The Release of the ESI Team**

The preliminary question of whether the ESI Team should be released as an officer of this Court for purposes of collecting, processing, and reviewing Ms. Attariwala's electronically stored information is easy to answer. Because the ESI Team's court-appointed work is not being funded

---

[4] As just one example, Ms. Green's October 31, 2019 report, [Filing No. 95-1], discusses at length information on Ms. Attariwala's Microsoft Surface. Yet, the ESI Team's Certification does not state that analysis and searches have been performed on that device, even though it is clear that Ms. Green has searched the device for Singota data. [*See, e.g.*, Filing No. 85-2 at 15 ("A search on the ESI found on Ms. Attariwala's Microsoft Surface computer…."]

8

and because the ESI Team's apparent dual role as an officer of the Court *and* testifying expert for Plaintiff has proved to be problematic in this instance, the Court **GRANTS** the ESI Team's request to be released as an officer of the Court.

**B.    Ms. Attariwala's Devices, Accounts, and Data in the ESI Team's Possession**

The much stickier question is what becomes of the devices, accounts, and data that Ms. Green gathered from Ms. Attariwala and the limited work that Ms. Green performed under the Inspection Order. On this question, the ESI Team proposes four options "(1) return the materials to [Ms.] Attariwala and delete the copies made through its services; (2) transfer the materials to another ESI company; (3) transfer the materials to an agreed-upon ESI storage location; or (4) transfer the materials to Singota." [Filing No. 271 at 4.]

Singota opposes the first option—*i.e.*, returning the materials to Ms. Attariwala—because "that approach would return to [Ms.] Attariwala the very trade-secret, confidential, and proprietary data and documents that [Ms.] Attariwala is prohibited from possessing" pursuant to the Court's preliminary injunction and her employment agreement with Singota. [Filing No. 275 at 3.] In the Singota Response,[5] Singota proposes that the parties submit proposals for a new court-appointed expert to carry out the unfinished work of the Inspection Order; the Court should appoint an expert; and Ms. Attariwala should be ordered to "submit a retainer or pay to the Clerk of the Court an initial payment of $55,000," which Ms. Attariwala should continue to replenish as work continues by the new court-appointed expert. [Filing No. 299 at 35.] Singota additionally proposes that the court-appointed expert submit status reports to the Court every 30 days. [Filing No. 299 at 35.] Singota is also concerned about the work Ms. Green performed for it as a testifying expert (as

---

[5] Singota exhaustively recounts many details of the case and disputes facts that are not directly relevant to the question of what to do with the information that the ESI Team collected from Ms. Attariwala. [*See generally* Filing No. 299.]

9

opposed to her role as court-appointed expert) and asks that Ms. Green be ordered to provide to Singota "[a]ll Singota property and materials provided by Singota to [Ms.] Green in her role as Singota's expert (including Singota computer(s), devices, and data that Singota provided to [Ms.] Green and any work product generated by [Ms.] Green relating to them" and further asks that Ms. Green "provide an index of all equipment, data, and work product that she possesses for Singota's review to ensure that none of Singota's property or work product is inadvertently" produced by Ms. Green to her replacement as a court-appointed expert.  [Filing No. 299 at 34-35.]

Ms. Attariwala "strongly objects to any materials being sent to Singota for any reason and objects to this suggestion as an appropriate option."  [Filing No. 276 at 2.]  The Attariwala Response[6] further requests "the immediate return of [Ms. Attariwala's] accounts and devices with the removal of any and all Singota ESI completed by Ms. Green and a Court representative as the intermediary."  [Filing No. 304 at 19.]  She also has concerns about the disclosure of her and her family's personal and privileged information to Singota.  [Filing No. 304 at 4; Filing No. 304 at 17.]

The ESI Team responds to the Singota Response by clarifying that Ms. Green "has already provided all her work product associated with Singota's work in her expert reports and in the correspondence with Singota's counsel."  [Filing No. 300 at 3.]  The ESI Team says it does not have a role in the Court's determination of what should happen to the devices, accounts, and data

---

[6] The Attariwala Response, like the Singota Response, includes pages upon pages of Ms. Attariwala disputing facts set forth in prior briefing that are not relevant to the question before the Court.  [*See generally* Filing No. 304.]  The Attariwala Response also purports to seek a smorgasbord of relief, not properly raised to the Court in a motion.  [*See, e.g.*, Filing No. 304 at 19 ("Defendant also asks the Court to disregard any evidence provided by Ms. Green …. Defendant requests for this Court to authorize the Bankruptcy Court to go forward with the Adversary Proceeding.")  Filing No. 304 at 20 ("Defendant asks for reconsideration of the Preliminary Injunction and Further Preliminary Injunction. … Defendant request for damages incurred including lost profits….").]

10

retrieved from Ms. Attariwala but asks that whatever the Court determines, that the order require the parties to act promptly. [Filing No. 300 at 3.] In response to Singota's proposal that Ms. Attariwala deposit $55,000 with the Court to pay a new court-appointed expert, the ESI Team asks that "any funds provided by [Ms.] Attariwala first be directed at satisfying the outstanding balance due to the ESI Team." [Filing No. 300 at 4.]

The obvious complications in the Court's determination of what to do with Ms. Attariwala's devices, accounts, and data in the ESI Team's possession is Ms. Attariwala's *pro se* status, the absence of an expert retained on her behalf, and her apparent inability to finance a review of the devices, accounts, and data collected to date.

While the parties have not directed the Court to legal authority on what to do in this situation, the Court considers what is practical in view of the amount of time that has passed in this case, the current status of the parties, and the Court's desire and directive to move this case along. The Court reiterates that the sole issue before it is what to do with the devices, accounts, and data currently in possession of the ESI Team pursuant to the Inspection Order. The Inspection Order does not address Singota's computers or files that Ms. Green may have inspected and analyzed on behalf of Singota. The Court finds that to move this case forward in view of Ms. Attariwala's stated inability to fund third-party review of her devices, accounts, and data and to enable Singota to achieve its stated purpose of this litigation—to recover its confidential and proprietary information—the best path forward is to enable Singota's ***counsel*** access to Ms. Attariwala's accounts, devices, and data in the ESI Team's possession to complete the procedures set forth in the Inspection Order. The Court further finds that if it appointed another expert to act as a court officer, the same problems regarding financing the work to move the case forward would arise.

The Court is not unsympathetic to Ms. Attariwala's concerns about privileged and personal documents. However, Ms. Attariwala's personal information should seemingly not include any of the information to be inspected and removed under the Inspection Order, and the Court will order that completion of the Inspection Order will not constitute a waiver of any applicable privilege.

Therefore, the Court will **ORDER** as follows:

1. Within 14 days, the ESI Team is to give Singota's counsel the devices, accounts, data, and copies or images of the same (the "Devices and Accounts") belonging to Ms. Attariwala, as well as any work performed on the Devices and Accounts pursuant to the Inspection Order. Singota's counsel is prohibited from providing access to the Devices and Accounts to Singota or any other agent of Singota without the Court's prior approval.

2. Within 28 days after receipt of the Devices and Accounts, Singota's counsel is to provide Ms. Attariwala and the Court with a list of the data on Ms. Attariwala's devices and accounts that Singota contends belongs to it and needs to be removed from Ms. Attariwala's Devices and Accounts.

3. Once Singota's counsel provides the list, Ms. Attariwala has 14 days to object to the removal of any of the data identified by Singota's counsel.

4. Within 3 business days following an order by this Court resolving any disputes about the removal of alleged Singota data, Singota's counsel will ensure Ms. Attariwala's Devices and Accounts are returned to her. Singota shall maintain a copy of the removed Singota data until the conclusion of this litigation, including any appeals, or until further order of the Court.

5. For purposes of completing the Inspection Order, Ms. Attariwala and her husband are not waiving and will not be deemed to have waived or diminished, any of its attorney work-product protections, attorney-client privileges or similar protections and privileges.

Singota's counsel is cautioned that counsel's sole purpose is to execute the procedures set forth in the Inspection Order, which is the location and removal of Singota's confidential and proprietary information. Counsel is not permitted to engage in open-ended discovery as to the Devices and Accounts.

C.      **Recouping Fees "Advanced" by Singota to Ms. Green**

Although not properly before the Court in a motion, the Court notes Singota's request for the Court to order Ms. Green to submit "revised invoices for fees paid by Singota with detailed entries," and "[u]pon briefing of the parties or hearing, the Court should determine the fees owed by Ms. Attariwala on those invoices under Phase I … for work already completed by [Ms.] Green and paid by Singota." [Filing No. 299 at 35.] This request is not well-taken. Rather than seeking to enforce the Expenses Order, Singota decided to go around the Court and pay Ms. Green directly and dictate what work she completed outside of Court supervision. That was a decision Singota made, and the Court is not going to now ask Ms. Green to disentangle the work she was performing as Singota's testifying expert versus the work she was performing as an officer of the Court. Nothing in this prevents Singota from seeking such fees as damages in this Court or the bankruptcy proceedings.

**D.      Future Discovery Efforts**

The Court notes that many of the current discovery battles appear to be related to efforts by Ms. Green and Singota to collect outstanding devices and accounts identified by Ms. Green from Ms. Attariwala and/or her husband. Many of these outstanding devices and accounts fall into the category of devices and account that were at some point connected to or accessed from a device that was known to contain or at one time accessed Singota information. For example, a Microsoft Surface Computer owned by Ms. Attariwala was found by Ms. Green to contain Singota's proprietary information, and therefore, pursuant to the Inspection Order, Ms. Green sought any device that was ever connected to the Surface, such as iPhones or USB devices, as well as any account, such as email accounts or iCloud accounts, that may have been accessed from the Surface, regardless of whether there is any evidence that the devices or accounts contains Singota information. [*See, e.g.*, Filing No. 111-1 at 24-29.] The Court reminds the parties that in the face

of this broad provision, the Court's Injunction provided a protocol for Ms. Attariwala to follow if she was unable to produce the devices or accounts:

> If Ms. Attariwala is unable to produce any of the outstanding accounts and devices identified by Ms. Green, she shall provide evidence in a proper verifiable form that she no longer has access to or possession of the accounts or devices of which she is unable to produce, and that no third party to whom she may have distributed Singota's confidential information continues to retain the accounts or devices in derogation of her requests that they be produced to Singota. She shall also indicate whether she has ever shared, copied, or transmitted any of Singota's confidential information to any account or device that she is unable to produce, and if so, provide proper assurances that she, nor any third party to whom she may have shared Singota's confidential information, continues to possess or maintain access to such information.

[Filing No. 122 at 3.] At this point in the litigation—more than 2-½ years after it was initially filed—the Court urges Singota to focus its efforts on devices and accounts which it reasonably believes contain Singota information, not every account that may have been accessed on a computer or device, or every device that may at some point have been connected to a computer. *See* Fed. R. Civ. P. 1 (discussing objective of just, speedy, and inexpensive litigation); Fed. R. Civ. P. 26(b)(1) (noting that discovery is to be proportional). The Court also notes that Singota has deposed Ms. Attariwala[7] and her husband, providing Singota the opportunity to ask questions under oath about the locations of any Singota information.

With these principles in mind, the Court will order the parties to meet and confer about the remaining discovery in this case and propose a schedule within which to complete that discovery.

### III.
#### CONCLUSION

Based on the foregoing, the ESI Team's Motion to be Released from Appointment as An Officer of the Court and for Distribution of Electronically Stored Information, [271], is

---

[7] Singota has deposed Ms. Attariwala in this case and in her bankruptcy case.

14

**GRANTED** to the extent that the ESI Team will be released from its obligations to this Court once it distributes the electronically stored information as ordered below. The Court **ORDERS** as follows:

1. Within 14 days, the ESI Team is to give Singota's counsel the devices, accounts, data, and copies or images of the same (the "Devices and Accounts") belonging to Ms. Attariwala, as well as any work performed on the Devices and Accounts pursuant to the Inspection Order. **Singota's counsel is prohibited from providing access to the Devices and Accounts to Singota or any other agent of Singota without the Court's prior approval**.

2. Within 28 days after receipt of the Devices and Accounts, Singota's counsel is to provide Ms. Attariwala and the Court with a list of the data on Ms. Attariwala's devices and accounts that Singota contends belongs to it and needs to be removed from Ms. Attariwala's Devices and Accounts.

3. Once Singota's counsel provides the list, Ms. Attariwala has 14 days to object to the removal of any of the data identified by Singota's counsel.

4. Within 3 business days following an order by this Court resolving any disputes about the removal of alleged Singota data, Singota's counsel will ensure Ms. Attariwala's Devices and Accounts are returned to her. Singota shall maintain a copy of the removed Singota data until the conclusion of this litigation, including any appeals, or until further order of the Court.

5. For purposes of completing the Inspection Order, Ms. Attariwala and her husband are not waiving and will not be deemed to have waived or diminished, any of its attorney work-product protections, attorney-client privileges or similar protections and privileges.

The Court further **GRANTS** Singota's Motion to Extend Case Management Deadlines, [283], only to the extent that discovery may continue and **ORDERS** the parties to meet and confer about the remaining discovery needed to litigate this case to its conclusion and submit a joint proposed case schedule for the remaining of this case **on or before December 31, 2021**.

Finally, the Court **DENIES** Singota's Motion to Strike, [305].

Date: 11/30/2021

_____
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

Ms. Jaspreet Attariwala
1390 Kenyon St., NW, Apt. 323
Washington, D.C.  20010