UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BIOCONVERGENCE LLC, *d/b/a Singota Solutions*, | ) ) ) |
| *Plaintiff*, | ) ) |
| vs. | ) ) 1:19-cv-01745-SEB-MG |
| JASPREET ATTARIWALA, | ) ) ) |
| *Defendant*. | ) ) |

**REPORT AND RECOMMENDATION**

Pending before the Court are two motions: (1) Plaintiff BioConvergence LLC's, *dba* Singota Solutions ("Singota") "Motion to [1] Hold Defendant in Contempt of Expenses Orders and [2] to Sanction Her and [3] to Order [Defendant's] Former Attorneys to Disgorge Fees," (the "Contempt Motion") [Filing No. 419; Filing No. 420], and (2) Singota's "Motion for Leave to Submit Additional Evidence" in support of the Contempt Motion, [Filing No. 460]. These two motions are fully briefed and have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). [Filing No. 492.] For the following reasons, the undersigned **RECOMMENDS** the Court **DENY** both Motions.

## I.
### BACKGROUND

The Court is well familiar with the extensive history of this trade secrets and employment case between Singota and *pro se* Defendant Jaspreet Attariwala. For purposes of addressing the pending motions, the undersigned will limit recitation of facts to those directly related to the so-called "Expenses Order" and the parties' actions and inactions related to the same.

**A. Relevant State Court Proceedings**

Singota filed suit against Ms. Attariwala, its former employee, in Indiana state court on February 27, 2019 alleging that Ms. Attariwala's stole trade secrets and breached other contractual obligations when she left Singota and started working for Emergent Biosolutions, Inc. ("Emergent"). Ms. Attariwala was represented by counsel during the relevant state court proceedings.

On March 4, 2019, following two hearings, the state court entered two written orders. The first was a stipulated preliminary injunction (the "State Court PI Order") which required, among other things, Ms. Attariwala to "within twenty-four (24) hours, make all computers, hard drives, storage media, email and cloud accounts, cell phones, and other devices available to Singota's [computer] forensic expert, Ms. Rebecca Green." [Filing No. 85-6.] The second order issued by the state court was an agreed "Order for Inspection of Computers and Electronic Storage Devices" (the "Inspection Order"). [Filing No. 85-7.]

On March 18, 2019, the state court entered an order reaffirming a prior oral order that Ms. Attariwala pay for "Phase I" of Ms. Green's costs (the "Expenses Order"). [Filing No. 85-8.] Ms. Attariwala provided a $5,000 deposit to Ms. Green, who was charging $495/hour. [*See, e.g.*, Filing No. 4-1 at 222-23.] "Phase I" is defined as undertakings by Ms. Green to "identify, collect and review computers and other electronic storage devices and accounts from [Ms. Attariwala] for inspection and, if necessary remove or delete [Singota's] confidential information from those devices or accounts, in addition to other work incidental to these tasks." [Filing No. 85-8.] This description of Phase I effectively encompasses the entirety of the actions and procedures identified in the Inspection Order. [*Compare* Filing No. 85-7 *with* Filing No. 85-8 at 1.]

On April 15, 2019, Singota asked the state court to issue a show cause order to hold Ms. Attariwala in contempt, contending that Ms. Attariwala did not comply with the State Court PI

Order nor the Inspection Order. Ms. Green submitted a sworn statement that Ms. Attariwala had failed to identify all of her devices and accounts and was otherwise not being forthcoming and cooperative as required by the State Court PI Order. [*See* Filing No. 4-1 at 162.] As part of that motion, Singota also asked that the state court order Ms. Attariwala to deposit an additional $15,000 for Ms. Green's work "and thereafter to make supplemental payments of $10,000 by each Friday so that Ms. Green may complete her work." [Filing No. 4-1 at 195.] Ms. Green's declaration estimated that Ms. Attariwala would need to pay her upwards of $126,495 to complete the Inspection Order (*i.e.*, "Phase I" in the Expenses Order). [Filing No. 4-1 at 240-42; *see also* Filing No. 15-4 at 63.]

The next day—on April 16, 2019—the state court granted Singota's motion and issued an order to show cause to Ms. Attariwala. [Filing No. 4-1 at 401-02.] The state court ordered Ms. Attariwala to "pay Ms. Green a retainer of $15,000" "within 24 hours" and scheduled a show cause hearing for the following day, April 17, 2019 at 11:00 a.m. The state court further ordered Ms. Attariwala, who resides in Washington D.C., to appear in person at the hearing the next day. [Filing No. 4-1 at 401-02.]

Ms. Attariwala did not appear in person for the April 17, 2019 hearing because she claimed that she was unable to make travel arrangements to Indiana, but she did appear electronically. [*See* Filing No. 15-3 at 4-5.] The state court took evidence from Ms. Green and orally ordered Ms. Attariwala to appear in court in Indiana the following day, April 18, 2019, with any further device or account information requested by Ms. Green.[1]  [Filing No. 15-3 at 35-40.]

---

[1] The day of the show cause hearing, April 17, 2019, Ms. Attariwala filed a motion to amend the State Court PI Order, Inspection Order, and the Show Cause Order. [Filing No. 4-1 at 405.] In particular, Ms. Attariwala's motion took issue with the amounts being charged by Ms. Green and the alleged expanded scope of her work and asked the state court to substitute a different forensic expert who charged more reasonable rates. [*See id.*] The state court orally denied the motion to

3

Despite the order from the state court to appear in person, Ms. Attariwala did not appear for the hearing the following day (April 18, 2019). [*See* Filing No. 15-4 at 4.] Her trial counsel reported to the state court that Ms. Attariwala was meeting with bankruptcy counsel. [*See id.*] The state court issued a bench warrant that day and proceeded to hear further testimony from Ms. Green. [*See* Filing No. 15-4.] The state court orally stated that it would order Ms. Attariwala to pay $55,000 towards Ms. Green's expenses. [Filing No. 15-4 at 91-92 ("So, if she is arrested, if she ends up here in Monroe County …I'm going to give her a chance to make every item on [Ms.] Greene's [sic] wish list come true and put in the Clerk's account Fifty-five Thousand Dollars ($55,000.00).")]. At the conclusion of the contempt hearing on April 18, 2019, the state court asked Singota's counsel to submit a proposed order for the court's consideration. [Filing No. 15-4 at 88.]

On April 30, 2019, twelve days after the contempt hearing at which Ms. Attariwala failed to appear, she removed the case to this Court. [Filing No. 1.] The state court subsequently issued an order on May 6, 2019 holding Ms. Attariwala in contempt and ordering, among other things, that she "be held without bond until she: (a) … deposits …$55,000 with the Clerk of Court to be disbursed at the Court's discretion to Ms. Green to funder her continued work under the [State Court] PI Order, Inspection Order, and Expenses Order; and (b) [p]rovides to Ms. Green all of the computers, devices, and account information identified on Ms. Green's provided [sic] to counsel on April 17, 2019." [*See* Filing No. 15-6.] But by the time the state court entered its order, it no longer had jurisdiction over the matter, so the order was of no effect. [*See* Filing No. 91 at 3 (citing *Fenton v. Dudley*, 761 F.3d 770, 772 (7th Cir. 2014) (noting that 28 U.S.C. § 1446(d) provides

---

amend at the April 18, 2019 hearing, stating that "I can't imagine what you guys were sniffing yesterday but that seemed like a good idea." [Filing No. 15-4 at 8.]

4

that once a defendant has filed a notice of removal with the state court, the state court may proceed no further)).] The bench warrant issued by the state court expired by its own terms on October 15, 2019. [*See* Filing No. 91 at 2.]

### B. Relevant Proceedings in this Court

Following removal, this Court held a Fed. R. Civ. P. 16 initial pretrial conference on July 1, 2019. [*See* Filing No. 40.] Ms. Attariwala was represented by counsel at the conference. The parties' joint proposed Case Management Plan includes the following statement about discovery of electronically stored information ("ESI"), which the Court included in its Case Management Plan Order:

> K. <u>Discovery of electronically stored information ("ESI")</u>. Prior to removal, the State Court entered a (i) March 4, 2019 Stipulated Preliminary Injunction Order; (ii) March 4, 2019 Agreed Order for Inspection of Computers and Electronic Information Storage Device; and (iii) March 18, 2019 Supplemental Order Following Preliminary Injunction. These orders (collectively, "Prior Orders") set requirements for the production of certain information. ***These Prior Orders were entered into prior to Plaintiff's filing of the Amended Complaint and Defendant Attariwala will be filing a motion to modify the discovery procedure to be in compliance with the below proposal.***
>
> 1. **<u>Nature of Production of ESI</u>**. Electronic discovery shall be produced to the requesting party in a commercially reasonable manner and as follows: Absent any specific request to the contrary, if a party requests documents that are stored in an electronic format, the disclosing party may provide the requesting party printed copies of the documents or may provide the requesting party .pdf copies of the documents on CD or DVD, by e-mail, or by other electronic means. In such case, if the receiving party determines in good faith a disclosure of a document in a printed format does not adequately allow the party to review the document, the receiving party may request a native format electronic copy, including any associated metadata and embedded data, be provided to it. If a requesting party requests the examination of any hard drives, servers, computers, voice mail systems, or other electronic devices or components, such disclosure, if appropriate, shall be made in a commercially reasonable manner, absent any objection from the producing party. The parties further agree to cooperate in good faith concerning the form in which ESI is to be produced when requested in a different format before bringing a motion to compel. The parties reserve the right to withhold any discovery documents/data based on a known privilege or objection.
>
> 2. **<u>Cost and Burden of Producing Electronic Discovery</u>**. Unless the party with the burden of bearing the costs as specified below demonstrates to the Court that the cost

    is overly burdensome, the following assumptions apply: (1) to the extent that the parties request files or copies of documents, the parties agree that such documents shall be provided to the other party in the normal and traditional course of discovery, with the producing party bearing the costs of assembling the responses to the requests; (2) any extraordinary costs for duplication shall be allocated to the requesting party; and (3) to the extent that a party requests to examine a hard drive, server, computer, voice mail system, or other electronic device or component, the party making the request shall bear the cost of the examination and may examine the device or component at a mutually agreeable time and in a commercially reasonable manner, absent any privileges or objections that would preclude or protect such data from being disclosed.

3. **Unintentional Disclosure of Privileged Documents**. In the event a document protected by the attorney-client privilege, the attorney work product doctrine or other applicable privilege or protection is unintentionally produced by any party to this proceeding, the producing party may request the document be returned. In the event such a request is made, all parties to the litigation and their counsel shall promptly return all copies of the document in their possession, custody, or control to the producing party and shall not retain or make any copies of the document or any documents derived from such document. The producing party shall promptly identify the returned document on a privilege log. The unintentional disclosure of a privileged or otherwise protected document shall not constitute a waiver of the privilege or protection with respect to that document or any other documents involving the same or similar subject matter.

4. **Additional Issues**. At this time, the parties do not know of any additional electronic discovery issues that may arise in this matter. If additional issues arise not governed by this Plan, the parties agree to work in good faith to resolve the matter before bringing the issue to the Court's attention.

[Filing No. 40 at 4-6 (emphasis added).] Ms. Attariwala's counsel, however, did not file a motion regarding the Expenses Order as contemplated by the parties prior to counsel's withdrawal in February 2020. [*See* Filing No. 147.]

    Singota filed a motion for a further preliminary injunction against Ms. Attariwala, [Filing No. 84; Filing No. 85], and the Court held a preliminary injunction hearing on November 21, 2019 and December 4, 2019. [Filing No. 104; Filing No. 112.] During the December 4, 2019 hearing, the following exchange occurred between Ms. Attariwala's counsel and the Court:

    THE COURT: Thank you, Mr. Murray. Mr. Jefferson? Why wasn't the $55,000 posted?

> MR. JEFFERSON: She can't afford it.
>
> THE COURT: Oh, did you tell that to the court?
>
> MR. JEFFERSON: Not yet, Your Honor.
>
> THE COURT: Wasn't the gist of that order that the 55,000 -- I mean the Court didn't say pay -- put up $55,000 if you can afford it, right? There was no request for relief from that, right? She's clearly in default of that, right?
>
> MR. JEFFERSON: Yes, Your Honor, in terms of the expenses –
>
> THE COURT: It sounds like the hole that she dug by taking the documents just keeps getting deeper and deeper, especially if she has to pay Ms. Green's fees.
>
> MR. JEFFERSON: Yeah, I think those are Ms. Green's fees, and I agree the hole's pretty deep. I would also represent to the Court that Mrs. Green is not the only one not getting paid.
>
> THE COURT: I bet. We talked about that the last time you were here.

[Filing No. 155 at 46-47.]  The Court also commented on Ms. Attariwala's inability to pay as a reason to support a finding that she should be enjoined from continuing her work with Emergent.

> THE COURT: …. So with respect to the posting of the money that the state court required, she just didn't do it. She said, "Sorry, I don't have it." Same with Ms. Green's fees that she's supposed to be underwriting. "I just don't have it" means, besides the practical effect of that, that she has -- there's no skin in the game by her, that she doesn't stand to be penalized. There are no incentives that operate with respect to her disclosures and the dependability of those disclosures. So she says things, that as Mr. Murray has pointed out in his presentation, turn out to be patently false.

[Filing No. 155 at 50-51.]

On December 18, 2019, the Court granted Singota's motion for further injunctive relief and placed additional restrictions on Ms. Attariwala, including preventing her from working at Emergent.  [Filing No. 121; Filing No. 122.]  However, unbeknownst to the Court, Ms. Attariwala had filed for Chapter 13 bankruptcy the day prior—on December 17, 2019—but failed to inform this Court until after it issued the preliminary injunction orders on December 18, 2019.  [*See* Filing

No. 123 (Notice of Bankruptcy).]  As noted above, Ms. Attariwala's counsel withdrew from this case on February 5, 2020, after which Ms. Attariwala began representing herself *pro se*.  [Filing No. 143.]

Ms. Attariwala's Chapter 13 bankruptcy proceeded in the U.S. Bankruptcy Court for the District of Columbia with Singota appearing in the case to contest several issues and obtain discovery from Ms. Attariwala.  *See generally In re Jaspreet Attariwala*, Case No. 19-00828-ELG (Bankr. D.D.C.).  The Bankruptcy Court lifted the automatic stay in June 2020.[2]  [Filing No. 213.]

On October 21, 2020, Singota filed a "Motion to Enter Sanctions for Contempt of Court Orders and to Amend Inspection Order."  [Filing No. 249.]  Relevant here, Singota asked the Court to enter an order finding "that Attariwala has engaged in willful contempt of the March 18, 2019 [Expenses Order], the Inspection Order, the preliminary injunctions, and the [state court's] April 16, 2019 Order [to Show Cause] … by refusing to pay for Rebecca Green's work under those orders…."  [Filing No. 249 at 2.]  Singota argued that Ms. Attariwala violated the Expenses Order by not depositing $15,000 or $55,000 as required by the state court and instead paying her counsel.  [Filing No. 250 at 42.]  Singota also outlined the status of Ms. Attariwala's finances, including that as of her bankruptcy filing in December 2019, she had more than $140,000 in retirement accounts and that in March 2019 she had some $44,000 in her checking and savings accounts.  [*See* Filing No. 250 at 23.]  Ms. Attariwala filed a *pro se* response noting that she had previously sought to amend the Inspection Order in state court because of cost concerns.  [Filing No. 257 at 4.]  She argued that "the money [Ms. Attariwala] had in unrestricted funds was *never* enough to pay Green the $55,000 …, much less the quotes ranging up to $125,000 as testified to by Green…., [Filing

---

[2] The Bankruptcy Court ultimately confirmed Ms. Attariwala's Chapter 13 plan over Singota's objection in February 2023.  [Filing No. 456.]

8

No. 257 at 8], and by that point, Ms. Attariwala also owed her then-counsel significant legal fees in addition to loans from her parents, [Filing No. 257 at 8]. She stated that she "filed for Bankruptcy due to the very fact that she was not able to afford the [Expenses Order], the debt to her parents, the growing attorney fees …, and living expenses." [Filing No. 257 at 8.]

In an August 5, 2021 Order, the Court denied Singota's Motion to Enter Sanctions for Contempt of Court Orders and to Amend Inspection Order. [Filing No. 292.] While the Court noted that "following the lifting of the stay by the bankruptcy court thereby allowing Singota to litigate its claims against Ms. Attariwala, including its damages and sanctions claims, Singota accurately maintains that there likely are grounds for holding her in contempt for any ongoing violations of the Expenses Order," [Filing No. 292 at 18], the Court nonetheless denied the Motion because Singota had never sought to enforce the Expenses Order. The Court explained as follows:

> *We would be more easily persuaded in responding to Singota's request if it had attempted to enforce the Expenses Order against Ms. Attariwala through an enforcement proceeding*. To the extent Singota was unaware of Ms. Attariwala's finances prior to the filing of her bankruptcy petition, certainly limited discovery could have been conducted to determine her ability to pay. Even now, Singota maintains that Ms. Attariwala has the means available to her to pay some portion of fees, that her refusal to do so exposes her to contempt sanctions regarding the Expenses Order, and that nothing about the bankruptcy proceedings impedes or preempts her capacity to comply with, nor the Court's authority to enforce the Expenses Order. *Still, Singota chooses not to file an appropriate motion*.

[Filing No. 292 at 18-19 (emphasis added).] Thus, the Court gave Singota a roadmap to address Ms. Attariwala's alleged violations of the Expenses Order: it should file a motion to enforce it.

But Singota did not immediately file a motion to enforce the Expenses Order as suggested by the Court. Instead, it continued on in this contentious litigation and filed the instant Contempt Motion on October 5, 2022. [Filing No. 419.] Singota's Contempt Motion and supporting brief do not reference the Court's prior Order denying it relief as to the Expenses Order and instructing it to file a motion to enforce. [*See* Filing No. 420.]

9

## II.
### DISCUSSION

**A. Singota's Motion for Leave to Submit Additional Evidence [Filing No. 460]**

Singota's Motion for Leave asks the Court to consider two additional documents: (1) A February 2, 2023 letter from Rebecca Green to the counsel of non-party Honey Ji's Corp. (a dessert company owned by Ms. Attariwala) regarding another case pending in this Court (*BioConvergence, LLC v. Honey Ji's Corp.*, Case No. 1:21-cv-02174-SEB-MG); and (2) a "draft brief" Ms. Green sent Honey Ji's Corp.'s counsel in the *Honey Ji's* matter. [*See* Filing No. 461.] Singota says these documents rebut Ms. Attariwala's contentions about Ms. Green contained in her response brief to the Contempt Motion. [Filing No. 460 at 8-14.]

But these statements are just restatements of arguments already made by Singota in its briefing. [*See, e.g.*, Filing No. 436 at 2-3]. Furthermore, the Court is well-familiar with Ms. Green's role in this case and has noted that Ms. Attariwala has frequently misstated the Court's findings about Ms. Green's role in this case. As the Court has already observed: "Ms. Attariwala claims that Singota went unpunished for misleading the Court, despite the Court's finding that Singota had gone around the Court and interfered with Ms. Green's forensic work. This argument misstates the Court's previous order in which we allowed Ms. Green to be relieved of her responsibilities as a court-appointed forensic officer because she was not being paid by Ms. Attariwala as required, and also because Ms. Green's dual roles as an officer of the court and an expert witness for Singota had become problematic for her…. However we never ruled that Singota had interfered with Ms. Green's court-appointed responsibilities…." [*See* Filing No. 469 at 9.] And, as a practical matter, these are unsworn documents authored by Ms. Green, so the evidentiary value is minimal at best.

For all of these reasons, the undersigned **recommends the Court DENY** Singota's Motion for Leave to Submit Additional Evidence.

**B. Singota's Contempt Motion as to Ms. Attariwala[3]**

As this Court previously explained in this case:

"Once a court is entitled to exercise subject matter jurisdiction over the suit, it has the full panoply of powers necessary to bring that suit to resolution and to enforce whatever judgments it has entered." *Autotech Techs. LP v. Integrated Research & Dev. Corp.*, 499 F.3d 737, 744 (7th Cir. 2007). "From our common-law ancestors forward, one of the most important of those powers is the power to punish contempt of court." *Id.*; *see also Spallone v. United States*, 493 U.S. 265, 276 (1990) (reaffirming "axiom that 'courts have inherent power to enforce compliance with their lawful orders through civil contempt'") (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)); *Young v. United States ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 794 (1987) ("[I]t is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders ...").

"In order to prevail on a contempt petition, the complaining party must demonstrate by clear and convincing evidence that the respondent has violated the express and unequivocal command of a court order." *Autotech*, 499 F.3d at 751 (quoting *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 460 (7th Cir. 1993)). Specifically, the complaining party must demonstrate that: "(1) the order set forth an unambiguous command; (2) the nonmovant violated that command; (3) the violation was significant; and (4) the nonmovant failed to take reasonable and diligent steps to comply with the order." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 711 (7th Cir. 2014).

---

[3] Singota cites to the criminal contempt statute, 18 U.S.C. § 401. [Filing No. 420 at 25.] As this Court has explained:

Civil and criminal contempt are not the same, and the distinction between the two is significant in terms of the type of process that is due for their imposition and the type of sanction that can be imposed. Specifically, criminal contempt proceedings must follow the procedures outlined in Federal Rule of Criminal Procedure 42 and must afford the accused party the Constitutional protections afforded in criminal cases. By contrast, civil contempt may be proven by clear and convincing evidence and be imposed without the full criminal procedure process.

*Content & Commerce, Inc. v. Chandler*, 2022 WL 10078380, at *4 (S.D. Ind. Oct. 17, 2022) (internal citations and quotation marks omitted). To the extent Singota is asking the Court to initiate criminal contempt proceedings against Ms. Attariwala, the undersigned recommends the Court **DENY** such a request.

11

*BioConvergence LLC v. Attariwala*, 2023 WL 2325083, at *1-2 (S.D. Ind. Mar. 1, 2023).

In addition to this clear-and-convincing standard, the undersigned is also mindful of the holding and instructions in the Court's prior Order denying Singota's Motion to Hold Ms. Attariwala in Contempt of the Expenses Order.  The Court told Singota that a contempt proceeding was not "an appropriate motion."  [Filing No. 292 at 19.]  And the "appropriate motion" identified by the Court was "to enforce the Expenses Order against Ms. Attariwala through an enforcement proceeding."  [Filing No. 292 at 18.]  The undersigned is further informed by the Court's recent Order holding another Motion for Contempt filed by Singota (which includes arguments about Ms. Attariwala's alleged violations of the Expenses Order) in abeyance until the August 14, 2023 bench trial because "[t]hese issues will be addressed if and as necessary during the upcoming bench trial." [Filing No. 548.]

Singota's Contempt Motion contains many arguments about the funds available to Ms. Attariwala in the spring of 2019 and how her failure to use these funds to pay Ms. Green is in direct violation of the Expenses Order and that she has failed to establish her inability to pay Ms. Green.  [*See* Filing No. 420 at 26-23.]  But, these are the same arguments Singota previously made in its first contempt motion, [*see* Filing No. 250 at 41-43], and Singota does not address the Court's August 5, 2021 Order or explain why it did not file a motion to enforce as directed by the Court. The undersigned finds that the Court's August 5, 2021 Order and law-of-the-case principles[4] weigh in favor of recommending that the Court **DENY** Singota's Contempt Motion.  Furthermore, the

---

[4] "The law-of-the-case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.'" *Flynn v. FCA US LLC*, 39 F.4th 946, 953 (7th Cir. 2022) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).  *See also HK Sys., Inc. v. Eaton Corp.*, 553 F.3d 1086, 1089 (7th Cir. 2009) ("The doctrine of law of the case counsels against a judge's changing an earlier ruling that he made in the same case….") (citations omitted).

Court has indicated that these issues may well be addressed during the course of the upcoming bench trial in this matter, and thus the undersigned further recommends that the Court deny the Contempt Motion for this additional reason.

### C. Singota's Contempt Motion as to McNeelyLaw LLP[5]

Singota's Contempt Motion also asks the Court to find that Ms. Attariwala's former counsel, now known as McNeelyLaw LLP ("McNeely"), "aided and abetted" Ms. Attariwala in her alleged contempt by "represent[ing] to courts, [Ms.] Green, and Singota that [Ms.] Attariwala lacked funds to make court-ordered payments." [Filing No. 420 at 33.]  Therefore, says Singota, the Court should order McNeely to "disgorge" the $38,000 in legal fees that Ms. Attariwala paid the firm before McNeely withdrew from the case.  [Filing No. 420 at 34.]

Because the undersigned recommends the Court deny the Contempt Motion to Ms. Attariwala, it necessarily follows that it should be denied as to McNeely as well.  What is more, Singota has not come close to meeting the significant burden for such relief and presents no evidence that McNeely advised Ms. Attariwala on how to organize her financial affairs in alleged contravention of any court order, let alone that any advice that may have been given was not in good faith.  See Maness v. Meyers, 419 U.S. 449, 467-68 (1975).  For all of these reasons, the undersigned recommends the Court **DENY** Singota's Motion for Sanctions as it pertains to McNeely.

### IV.
### CONCLUSION

For the reasons discussed above, the undersigned **RECOMMENDS** the Court: (1) **DENY** Singota's Motion for Leave to File Additional Evidence [460]; and (2) **DENY** Singota's Motion to

---

[5] McNeelyLaw LLP is the successor to the law firm McNeely Stephenson.

Hold Ms. Attariwala in in Contempt of the Expenses Order and to Sanction Her and to Order Former Attorneys to Disgorge Fees [419].

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 7/31/2023

*[signature]*
Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record**

**Distribution via U.S. Mail to:**

Ms. Jaspreet Attariwala
1390 Kenyon St., NW, Apt. 323
Washington, D.C. 20010