UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BIOCONVERGENCE LLC<br>   d/b/a SINGOTA SOLUTIONS,<br><br>                Plaintiff,<br><br>                v.<br><br>JASPREET ATTARIWALA,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:19-cv-01745-SEB-MG |

**ORDER ON DAMAGES, ATTORNEY FEES, LITIGATION EXPENSES, AND COSTS**

On December 21, 2023, we issued our Findings of Fact and Conclusions of Law Following Bench Trial in this trade secret misappropriation action, awarding Plaintiff BioConvergence LLC d/b/a Singota Solutions ("Singota") compensable damages consisting of certain expert fees, permanent injunctive relief, and reimbursement of its reasonable attorney fees, litigation expenses, and costs. Dkt. 603 at 69–72, 76–77. Specifically, we found that Defendant Jaspreet Attariwala, proceeding *pro se*, had willfully misappropriated Singota's trade secrets and breached her employment contract with Singota, entitling Singota to recover as compensatory damages "all costs attributable to Singota's computer forensic experts' efforts to identify, locate, and remediate Singota's ESI [electronically stored information] found on the personal devices and within accounts of Ms. Attariwala and all those acting in concert with her," *id.* at 71, as well as "reasonable attorney fees and litigation expenses in an amount to be determined based on

1

subsequent affidavits of fees, expenses, and costs." *Id.* at 72. Because evidence setting forth a final accounting of the expert fees, attorney fees, costs, and litigation expenses had not been previously submitted to the Court, we ordered Singota to provide such an accounting to the Court within 21 days following our order, which deadline was extended at Singota's request. After Singota submitted its accounting of these costs and fees, Ms. Attariwala responded to Singota's submissions. Having now reviewed Singota's submissions and Ms. Attariwala's response, we issue the following rulings.

## I.   Compensatory Damages

Singota has sought a total award of $596,315.48 in compensatory damages, which amount represents the total costs incurred by Singota for its computer forensic experts' efforts to identify, locate, and remediate Singota's ESI determined to have been on Ms. Attariwala's personal devices and accounts and on the devices and accounts of all those acting in concert with her. In support of this award, Singota has presented the declarations of computer forensic examiner James D. Vaughn, Managing Director of Intelligent Discovery Solutions ("IDS"), and Singota's CEO, Alisa K. Kilgas. Ms. Kilgas's declaration references the computer forensic work performed by Rebecca Green, who served as both Singota's expert and the court-appointed expert until November 30, 2021, when she was released from her court-appointed duties and replaced by Mr. Vaughn. Mr. Vaughn's declaration addresses the computer forensic work performed by IDS in this litigation from November 30, 2021, through July 1, 2023.

Mr. Vaughn's declaration documents Singota's claim for $435,614.10 in compensatory damages, which amount includes $323,046.97 in hourly fees plus

$112,567.13 in related expenses, and covers the court-ordered ESI identification and remediation work performed by IDS from November 30, 2021 through July 1, 2023.[1] Our review of Mr. Vaughn's declaration and invoices outlining the work performed by IDS allow us to conclude that the hourly rates and expenses charged by IDS are in line with those customarily charged by computer forensic experts and data analysts for services similar to those performed here, that IDS's fees are supported by contemporaneously created and detailed records, and that the hours expended for the work performed are reasonable, particularly given the time exigencies under which IDS performed and Ms. Attariwala's inability to produce all the requested records and documents. Ms. Attariwala has put forth no argument or evidence disputing these totals or these elements of compensatory damages.

In addition, Singota seeks an award of $160,701.38 to compensate it for the computer forensic services of Ms. Green which it incurred during the period she served as the court-appointed computer forensic expert in this case. Ms. Kilgas, who manages and oversees Singota's business as CEO, submitted a declaration with attached invoices reflecting Singota's payments to Ms. Green in the total amount for the period between March 20, 2019 and November 30, 2019, the date on which Ms. Green was released from her court-appointed duties. Ms. Attariwala objects to the inclusion of this amount as compensatory damages, arguing that Ms. Kilgas's declaration does not differentiate between work completed in Ms. Green's role as court-appointed expert and work Singota

---

[1] After July 1st, Mr. Vaughn and IDS began trial preparations, which we directed Singota to exclude from its compensatory damages calculation and to include in its litigation expenses.

3

paid Ms. Green to perform outside the supervision of the Court; that Ms. Kilgas cannot attest to the reasonableness of the rates Ms. Green charged, the necessity of the work she performed, or the number of hours she worked, particularly given the lack of detail provided in Ms. Green's invoices; and that much of the work performed by Ms. Green was likely duplicated by Mr. Vaughn following the Court's grant of her request to be removed as the court-appointed expert.

To the extent that Ms. Attariwala contests the reasonableness of the work performed by Ms. Green, we do not find her criticism to be well-taken. The evidence adduced at trial established that extensive efforts were required to identify and locate the totality of the ESI that Ms. Attariwala had wrongfully taken from Singota, necessitated in large part by her own recalcitrance, failure to cooperate, and persistent pattern of evasion throughout this litigation. Likewise, we are not persuaded by Ms. Attariwala's contention that Singota's compensatory damage award should be reduced because certain of Ms. Green's work most likely was duplicated by Mr. Vaughn and IDS after Ms. Green had been released as the court-appointed expert in this case. Ms. Green's reason for seeking release from her court-appointed duties was primarily because she was not being paid for her work, which, pursuant to the expenses order issued by the Court, was Ms. Attariwala's obligation. However, the invoices submitted by Singota do show that the $10,000 retainer it paid Ms. Green on May 11, 2019 was "for Singota-requested work." Kilgas Decl. at 2. We have ordered that Singota's accounting of its computer forensic investigative and remediation expenses "not include … any fees paid by Singota to the computer forensic experts for services not specifically ordered by the Court." Dkt. 603 at

4

71. Therefore, a deduction of $10,000 from the amount requested by Singota in compensatory damages for Ms. Green's fees has been made.

Accordingly, we hold that Singota has proven by a preponderance of the evidence an entitlement to a total of $586,315.48 as compensatory damages, based on Singota's computer forensic experts' efforts to identify, locate, and remediate Singota's ESI found on the personal devices and within accounts of Ms. Attariwala and all those acting in concert with her.

## II. Attorney Fees and Litigation Expenses and Costs

We turn next to review Singota's request for attorney fees and litigation expenses and costs. Singota requests an award of attorney fees in the amount of $2,359,508.40 as well as an additional $133,280.83 in litigation expenses and costs incurred in pursuit of its claims in this action.[2] *See Refractory Serv. Corp. v. Shaw Refractories, Inc.*, No. 2:06 CV 073 PS, 2007 WL 118780, at *5 (N.D. Ind. Jan. 9, 2007) ("Reasonable litigation expenses are part of the reasonable attorney's fee allowed by Ind. Code § 24-2-3-5.") (citing *Harco, Inc. of Indianapolis v. Plainfield Interstate Family Dining Assoc.*, 758 N.E.2d 931, 942–44 (Ind. Ct. App. 2001); *Heiar v. Crawford Cnty. Wis.*, 746 F.2d 1190, 1203–04 (7th Cir. 1984)).

---

[2] This case has spawned a spate of related litigation—in total, thirteen filings in Indiana, Washington D.C., and Maryland. In addition to the attorney fees recounted above, Singota has submitted documentation of attorney fees it has incurred in these various related cases, including attorney fees and costs incurred in responding to Ms. Attariwala's bankruptcy proceedings. We decline Singota's request to include such fees and costs in our award here.

Ms. Attariwala characterizes this amount of attorney fees and litigation expenses sought here by Singota as excessive and therefore unreasonable, arguing that Singota over litigated this case at every turn and that its counsel exercised no restraint in running up their billings. The fees and expenses are far beyond what was necessary to resolve this action and any amount she has the ability to pay. Ms. Attariwala proposes instead that the Court award Singota $62,324.96 in attorney fees and litigation expenses, the amount it incurred up to March 2, 2019, the date on which her then-counsel sent Singota's counsel, Christopher Murray, a letter recounting how Mr. Murray had "ignored and wholly disregarded" several attempts to resolve the matter and stating that "[i]f the issue of attorneys' fees ever arises in this matter, this letter and the facts contained herein will be used to show any proposed award is unreasonable because, had you simply communicated in any meaningful way, the entire need to litigate could have been avoided." Dkt. 610-1. Ms. Attariwala contends that all fees and expenses incurred by Singota after that date were self-inflicted obligations and not directed toward resolution of the case; thus, she maintains, she should not be required to pay them.

Courts may award reasonable attorney fees and litigation expenses to a prevailing party under the federal and Indiana trade secret laws, if the trade secret misappropriation was found to have been willful and malicious. IND. CODE § 24-2-3-5; *accord* 18 U.S.C. § 1836(b)(3)(D). Having previously ruled that Ms. Attariwala's trade secret misappropriation was willful and malicious and that Singota is entitled to its reasonable attorney fees and litigation expenses, we now seek to determine an appropriate amount to award.

"In determining the amount of a reasonable attorneys' fee, the Court utilizes the 'lodestar' method, which entails multiplying the hours reasonabl yexpended on the litigation by the reasonable hourly rate." *Walton v. First Merchants Bank*, No. 1:17-cv-01888-SEB-MPB, 2023 WL 4269962, at *2 (S.D. Ind. June 29, 2023) (citing *Johnson v. GDF, Inc.*, 668 F.3d 927, 929 (7th Cir. 2012)). Under the lodestar method for collecting attorney's fees, "[t]he fee claimant bears the burden of substantiating the hours worked and the rate claimed." *Strange v. Monogram Credit Card Bank of Ga.*, 129 F.3d 943, 946 (7th Cir. 1997). This requires the claimant first to identify a reasonable number of hours worked and then to multiply those hours by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Once the lodestar amount has been calculated, it is presumptively the correct fee award." *Citizens for Appropriate Rural Roads, Inc. v. Lahood*, No. 1:11-cv-01031-SEB-DML, 2014 WL 1342808, at *1 (S.D. Ind. Apr. 4, 2014) (citing *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

However, "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" *Hensley*, 461 U.S. at 434. Where, as here, the plaintiff's claims for relief involved a common core of facts and related legal theories, in considering the "results obtained" by the plaintiff "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. When reduction of a fee is appropriate to reflect partial success, the district court has discretion to identify specific hours to be eliminated or "simply

7

reduce the award across the board to account for the limited success." *Bryant v. City of Chi.*, 200 F.3d 1092, 1102 (7th Cir. 2000) (quoting *Spanish Action Comm. v. City of Chi.*, 811 F.2d 1129, 1133 (7th Cir. 1987)).  Ultimately, the question the Court must answer is whether the plaintiff's "expenditure on attorney's fees was reasonable in relation to the difficulty, stakes, and outcome of the case." *Partington v. Broyhill Furniture Indus., Inc.*, 999 F.2d 269, 273 (7th Cir. 1993) (citations omitted); *accord Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995) ("The standard is whether the fees are reasonable in relation to the difficulty, stakes, and outcome of the case.") (citation omitted).

Applying these legal principles to the circumstances before us, we conclude that Singota's expenditures on attorney fees far exceeded the scope and value of the dispute embodied in the litigation and any potential for recovery from Ms. Attariwala.  It is, of course, true that Singota was successful in litigating its primary claims, to wit, its breach of contract and trade secret misappropriation claims.  However, Singota eventually abandoned the remaining eight legal claims it had brought against Ms. Attariwala when it failed to address them in any meaningful manner at trial or in its post-trial briefing.  We consider this abandonment one indicator of the conspicuous overzealousness with which it pursued this litigation.  Moreover, we find that the relief Singota ultimately obtained on its trade secret and breach of contract claims to have been extremely limited in relationship to the overall relief sought.  Specifically, Singota's original prayers for relief were in the amounts of $1,756,878.50 as compensatory damages and $3,513,757.00 as exemplary damages, for a total of $5,270,635.50 in monetary relief.  We have awarded

8

only $586,315.48 in compensatory damages and have included no exemplary damages award.

As previously recounted in our findings of fact and conclusions of law, when this litigation commenced Ms. Attariwala was poised to begin working for Singota's competitor (Emergent) in a similar position to the one she occupied with Singota and the full extent of the ESI she had wrongfully taken from Singota was unknown, including its location and the persons to whom she may have unauthorizedly disclosed it.  However, once Emergent terminated Ms. Attariwala's employment on December 19, 2019, which occurred approximately five months after this litigation commenced, any potential irreparable harm to Singota from her misappropriation was greatly reduced, given that she was no longer employed by a competitor and/or in a position to use Singota's proprietary documents and systems against Singota's competitive interests.  While Singota's legitimate competitive concerns reportedly remained, primarily due to the belligerent refusals of Ms. Attariwala and her husband to disclose the details of what she had wrongfully taken, thereby causing ongoing uncertainties and worries regarding the scope of her theft and the present whereabouts of Singota's trade secret information as well as whether she might ever attempt to use whatever was still in her possession to secure employment with another of Singota's competitors, the stakes by that point were nonetheless much lower.  As early as April 10, 2020—approximately one year into this litigation—this shift in circumstances had become obvious, prompting the Court's admonition to Singota that it "cannot seriously contend that it currently faces the same risks of irreparable harm that it did in December 2019, by Ms. Attariwala using its

9

proprietary information for her new employer's competitive gain," advising Singota to shift its "focus now [to] litigating its claim for legal remedies." Dkt. 188 at 3.

Rather than follow this directive, Singota doubled down on what we have previously described as its "scorched earth" litigation strategy, unsuccessfully seeking to amend its complaint to add Ms. Attariwala's former employer, Emergent, as well as her dessert business, Honey Ji's, as additional defendants. As noted above, after those efforts failed, Singota filed separate lawsuits against those entities (as well as a number of other related actions), which remain pending. Throughout this litigation, Singota also filed multiple, lengthy motions seeking sanctions against Ms. Attariwala for her failure to comply with various court orders, despite our repeated instructions that it should first move to enforce those court orders before seeking sanctions. Even after Emergent informed Singota on August 3, 2022, that an independent search of its devices and accounts had revealed no Singota ESI, further lessening the risk of any additional misuse or disclosure of Singota's confidential information and trade secrets, Singota made no effort to narrow the scope of this litigation as it moved toward trial, despite repeated recommendations by the Court that it do so. The parties' frustrating tit-for-tat motions practice finally prompted the Magistrate Judge on June 7, 2023, to "put[] the parties on notice that [the Court] will not tolerate further frivolous conduct or motions," expressing the concern that "both parties are using the levers of the judicial system for purposes of harassment rather than legitimate pursuits." Dkt. 509 at 1.

In view of all these factors, we hold that Singota could have spent significantly less attorney time and effort without jeopardizing its prospects of winning on its breach

10

of contract and trade secret misappropriation claims but for its obdurate refusal to factor in the changing stakes and narrowing scope of potential recovery as the litigation progressed, particularly once Ms. Attariwala was fired from Emergent and filed for bankruptcy.  Our conclusion is buttressed by the fact that, after nearly four years of litigation, the evidence of Ms. Attariwala's misdeeds adduced by Singota at the August 2023 bench trial was essentially the same evidence on which it relied in December 2019 to secure preliminary injunctive relief against her, first in the state court and then in our court.  Ms. Attariwala is, of course, far from blameless here; her extended lack of cooperation and her persistent refusal to deal with honesty and forthrightness in the resolution of this litigation contributed significantly to its duration and scope and complexity.  However, Singota's lack of reasonable, prudent restraint in its pursuit of what was otherwise a garden variety trade secrets case against a *pro se* defendant has resulted in an outlandish investment of time, money, and personnel by Singota in the litigation of this case.  Its quixotic effort to uncover evidence connecting Ms. Attariwala's trade secret misappropriation to any actual diversion of its customers to Emergent ultimately proved to be both fruitless and expensive to such an extent that one suspects that a vindictive motive by Singota unrelated to the merits of its legal claims drove its strategic decision-making.  We decline to pore over the more than 1,000 pages of time records (reflecting entries from Singota's law firm's whopping *sixty-one* separate timekeepers) in an effort to identify specific hours to be excluded from Singota's accountings.  Considering Ms. Attariwala's persistent lack of cooperation as well as the other factors discussed above, including the difficulty, stakes, and outcome of this

litigation, we conclude that Singota's reasonable attorney fees, litigation expenses, and costs should be commensurate with the amount of compensatory damages we have awarded to Singota. Accordingly, in our discretion, we shall reduce the award covering Singota's attorney fees, litigation expenses, and costs to an amount equal to 25% of its total request, to wit, $623,197.45.

### III. Conclusion

As detailed above, Plaintiff is entitled to recover from Defendant $586,315.48 in compensatory damages, plus $623,197.45 in attorney fees, litigation expenses, and costs, for a total award of $1,209,512.93. A permanent injunction shall also be entered in accordance with our prior order. Final judgment shall issue accordingly.

IT IS SO ORDERED.

Date: 3/26/2024

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JASPREET ATTARIWALA
1390 Kenyon St., NW Apt. 323
Washington, DC 20010

Justin A Allen
Ogletree Deakins Nash Smoak & Stewart, P.C.
justin.allen@ogletree.com

Jason Donald Clark
MCNEELY LAW LLP
JClark@McNeelyLaw.com

J. Lee McNeely
McNeely Law LLP
LMcNeely@McNeelyLaw.com

Christopher C. Murray
Ogletree Deakins
christopher.murray@ogletree.com

Meghan Eileen Ruesch
LEWIS WAGNER, LLP
mruesch@lewiswagner.com